1 MARK F. SULLIVAN, State Bar No. 111011
LAMDIEN T. LE, State Bar No. 185331
2 SULLIVAN TAKETA LLP
31351 Via Colinas, Suite 205
3 Westlake Village, California 91362-3755
Telephone: (818) 889-2299
4 Facsimile: (818) 889-4497
E-mail:     mark.sullivan@calawcounsel.com
5           dien.le@calawcounsel.com

6 DENNIS L. KENNELLY, State Bar No. 064916
LAW OFFICES OF DENNIS L. KENNELLY
7 1030 Curtis Street, Suite 200
Menlo Park, California 94025
8 Telephone: (650) 853-1291
Facsimile: (650) 854-7839
9 E-mail:     secretarymim@aol.com

10 Attorneys for Plaintiffs

11

12 **UNITED STATES DISTRICT COURT**

13 **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

14

15 JOSÉ AYALA, DEANDRE **CASE NO:**
WHITTEN, LEROY PHILLIPS,
GONZALO TORRES, JOSE
16 LINAREZ, KIMANI STAFFORD, **COMPLAINT FOR: CV 08 0119**
AND JOSEPH LAWTON,
17 individuals,

18         Plaintiffs,

19 vs.

20 PACIFIC MARITIME
ASSOCIATION, a California
21 corporation; INTERNATIONAL
LONGSHORE AND WAREHOUSE
22 UNION, a labor organization; and
INTERNATIONAL LONGSHORE
23 AND WAREHOUSE UNION,
LOCAL 13, a labor organization; and
24 DOES 1 through 10,

25         Defendants.

**(1) BREACH OF COLLECTIVE BARGAINING AGREEMENT; VIOLATION OF LABOR MANAGEMENT RELATIONS ACT (29 U.S.C. § 185 et seq.);**

**(2) VIOLATION OF LABOR-MANAGEMENT REPORTING AND DISCLOSURE ACT (29 U.S.C. § 411 et seq.); AND**

**(3) INJUNCTION TO PRESERVE SENIORITY RIGHTS**

**DEMAND FOR JURY TRIAL**

26

27

28

1
COMPLAINT

1    Plaintiffs José Ayala, Deandre Whitten, Leroy Phillips, Gonzalo Torres, José
2  Linarez, Kimani Stafford, and Joseph Lawton ("Plaintiffs"), complain against
3  Defendants Pacific Maritime Association ("PMA"), International Longshore and
4  Warehouse Union (the "ILWU" or the "International Union"), and International
5  Longshore and Warehouse Union, Local 13, ("Local 13") as follows:

### NATURE OF CASE

7    1.    Plaintiffs José Ayala (1998), Deandre Whitten (2002), Leroy Phillips
8  (1997), Gonzalo Torres (2000), José Linarez (2000), Kimani Stafford (2000), and
9  Joseph Lawton (1998), are individuals who began their careers as longshoreman in the
10  in the Port of San Francisco-Oakland. Like most longshoremen, they first worked as
11  "casuals" until they completed an initiation period of one to two years depending on the
12  work flow. As casuals, Plaintiffs paid union dues but only for the days when they
13  worked. In the year listed above after each Plaintiff's name, each Plaintiff was elevated
14  from casual status and added to the list of registered longshoremen in the Port of San
15  Francisco and Oakland. In the Port of San Francisco and Oakland, the terms and
16  conditions of working as a longshoreman are governed by the Pacific Coast Labor
17  Contract Document ("PCLCD"). In each port covered by the PCLCD, there is labor-
18  management Joint Port Labor Relations Committee ("JPLRC") established by the
19  ILWU, the local port ILWU local union, and the Pacific Maritime Association
20  ("PMA"), the collective bargaining representative of the shipping companies,
21  warehousing companies and stevedoring companies that employ longshoreman. This
22  JPLRC controls the lists of registered longshoremen and is charged with protecting
23  seniority rights in the dispatching of longshoremen.

24    2.    Plaintiffs have completed the on-the-job experience and formal training
25  required by PMA and the ILWU for elevation to the status of being "fully registered"
26  longshore workers, often referred to as being an "A man," "holding an A Book," or
27  being a "Class A longshoremen" to distinguish trained and experienced longshoremen
28

1  from junior or apprentice workers who have "limited registration" which is often
2  referred to as being a "B man," "holding a B Book," or being a "Class B
3  longshoremen." As fully registered Class A longshoreman, Plaintiffs are entitled by the
4  express provisions of the PCLCD, to receive a first preference in dispatching. Further,
5  under the constitution of the International Union and under the PCLCD, fully registered
6  Class A longshoremen like Plaintiffs have "coastwise registration" and the right to
7  transfer with their seniority to other ports governed by the PCLCD.

8  3.  For approximately five years or more, each of the Plaintiffs has been
9  seeking a transfer from the Port of San Francisco-Oakland, which is within the
10  jurisdiction of the hiring hall operated by the PMA and Local 10 of the ILWU to the
11  Port of Los Angeles and Long Beach which is within the jurisdiction of the hiring hall
12  operated by the PMA and Local 13. Notwithstanding a right to such a transfer under
13  the constitution of the International Union and the PCLCD, with the acquiescence of the
14  International Union and of PMA, Local 13 has continuously blocked Plaintiffs' right to
15  make such a transfer. This denial has continued while the Port of Los Angeles-Long
16  Beach has had labor shortages and has elevated to limited registration status a large
17  number of casual workers (believed to be in excess of 1,000 new additions) who are not
18  fully qualified to operate the cranes and other equipment that Plaintiffs are fully
19  certified to work. Because they have been denied transfers, Plaintiffs have only been
20  able to work in the Port of Los Angeles-Long Beach as "visitors" which is a status that
21  affords Plaintiffs dispatch rights inferior to those granted Local 13's newly-added Class
22  B longshoremen. This denial of seniority and the blocking of Plaintiffs' right to transfer
23  is a breach of the PCLCD, and it denies Plaintiffs their rights to equal treatment by the
24  ILWU contrary to § 101 of the Labor-Management Reporting and Disclosure Act, 29
25  U.S.C. § 411 et seq.
26  ///
27  ///
28  ///

3
**COMPLAINT**

## PARTIES

4. Defendant PMA is a corporation incorporated under the laws of the State of California. PMA is the agent which negotiates and administers the PCLCD, the governing collective bargaining agreement, on behalf of its ship owners, stevedoring companies and other shipping-related concerns who are all engaged in the business of carrying cargo by sea to or from the ports on the Pacific Coast of the United States, including inland and river ports that load and unload ocean-going vessels. PMA acts as the employers' collective bargaining representative supervising, directing and paying longshore and warehouse workers dispatched to various member shippers' ships and warehouses and other facilities or sites to perform loading, unloading and related services.

5. Defendant International Union is a voluntary association and a labor organization representing employees in an industry affecting commerce within the meaning of § 301 Labor Management Relations Act, 29 U.S.C. § 185 et seq. Defendant International Union is the entity which negotiated the PCLCD with the PMA and, at all times material hereto, Defendant International Union has been the collective bargaining agent representing the interests of longshore and warehouse workers working under the PCLCD at all West Coast ports, including longshore and warehouse workers working in the Port of San Francisco (ILWU Local 10) and in the Port of Los Angeles and Long Beach (ILWU Local 13).

6. Defendant Local 13 is one of the International Union's component local unions and, as such, is a voluntary association and a labor organization representing employees in an industry affecting commerce within the meaning of § 301 Labor Management Relations Act, 29 U.S.C. § 185. At all times material hereto, Defendant Local 13 has been the collective bargaining agent representing the interests of longshore

4
**COMPLAINT**

1 and warehouse workers working under the PCLCD in the Los Angeles and Long Beach
2 Harbor.

3    7.   The true names and capacities, whether individual, corporate, associate, or
4 otherwise, of Defendants sued herein as DOES 1 through 10, inclusive, are currently
5 unknown to Plaintiffs, who therefore sue Defendants by such fictitious names.
6 Plaintiffs are informed and believe, and based thereon allege, that each of the
7 Defendants designated herein as a DOE is legally responsible in some manner for the
8 unlawful acts referred to herein. Plaintiffs will seek leave of Court to amend this
9 Complaint to reflect the true names and capacities of the Defendants designated
10 hereinafter as DOES when such identities become known.

11    8.   Plaintiffs are informed and believe, and based thereon allege, that each
12 Defendant acted in all respects pertinent to this action as the agent of the other
13 Defendants, carried out a joint scheme, business plan, control, or policy in all respects
14 pertinent hereto, and the acts of each Defendant are legally attributable to the other
15 Defendants. Plaintiffs are informed and believe, and on that basis allege that
16 Defendants have joint or shared operational control over Plaintiffs.

17                 **JURISDICTION**

18    9.   This action arises under § 301 of the Labor Management Relations Act
19 ("§ 301 LMRA"), 29 U.S.C. § 185 et seq., and under § 101 of the Labor-Management
20 Reporting and Disclosure Act ("§ 101 LMRDA"), 29 U.S.C. § 411 et seq.

21    10.  This Court has jurisdiction over this action under § 301 LMRA and § 101
22 LMRDA because it presents a federal question within the meaning of 28 U.S.C. § 1331.

23                  **VENUE**

24    11.  The denial by Defendant Local 13 of Plaintiffs' attempts to exercise their
25 rights under the PCLCD to transfer from the Port of San Francisco-Oakland (ILWU
26 Local 10) to the Port of Los Angeles-Long Beach (ILWU Local 13) has denied
27 Plaintiffs their seniority rights under the PCLCD, most importantly, their right to be
28

**COMPLAINT**

1  dispatched to work in the Port of Los Angeles and Long Beach with the preference due
2  Class A longshoreman. Plaintiffs have, instead, been relegated to the status of being
3  dispatched to longshore jobs as visitors. As visitors, Plaintiffs are dispatched after
4  Local 13's Class B longshoremen and only if there arc jobs left unfilled by the Local 13
5  members. The headquarters and offices of the decision-makers of the PMA (located at
6  555 Market Street, San Francisco) and of the decision-makers of the International Union
7  (located at 1188 Franklin Street, San Francisco) who have maintained this policy of
8  blocking transfers into the Port of Los Angeles and Long Beach are within the
9  geographical jurisdiction or venue of this Court.

10      12.  The ultimate decision to block Plaintiffs' PCLCD transfer requests was
11  made within the geographical jurisdiction or venue of this Court by the Joint Coast
12  Labor Relations Committee ("JCLRC"). The JCLRC is a joint labor-management
13  committee which Defendant PMA and Defendant International Union established to be
14  the final decision authority on matters involving the operation of dispatch halls and
15  issues about union members' registration status and rights. The JCLRC has its meetings
16  (located at the PMA's or the International Union's headquarters in San Francisco)
17  within the geographical jurisdiction or venue of this Court, and Plaintiffs are informed
18  and believe, and thereon allege, that the ultimate decision to ignore Plaintiffs' properly
19  presented transfer requests was made at those headquarters offices in San Francisco.

20      **FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

21      13.  In the years stated in paragraph 1, above, Plaintiffs were initially registered
22  as longshoremen by working in the Ports of San Francisco and Oakland, ports served by
23  a dispatch hall at Fisherman's Wharf in San Francisco jointly operated by the PMA, the
24  International Union and by its local union, Local 10. Plaintiffs have all completed the
25  on-the-job experience and formal training required by and jointly conducted by PMA
26  and the ILWU for elevation to the status of being "fully registered" longshore workers,
27
28

6
**COMPLAINT**

1  and they have all been registered as "Class A longshoremen" by the Port of San
2  Francisco and Oakland JPLRC.

3      14.   Section 8 of the PCLCD, the governing collective bargaining agreement, is
4  entitled "Dispatching, Registration, And Preference." Under the terms of subsections
5  8.1 and 8.41 of the PCLCD, longshoremen seeking work in the Port of San Francisco
6  and Oakland are dispatched by the exclusive, central hiring hall at Fishermen's Wharf in
7  San Francisco, which is jointly maintained and operated by the PMA, the International
8  Union and ILWU Local 10. Similarly, longshoremen seeking work in the Port of Los
9  Angeles and Long Beach, are dispatched by the exclusive, central hiring hall in
10  Wilmington, California, which is jointly maintained and operated by the PMA, the
11  International Union and ILWU Local 13. A longshore worker does not need to be a
12  member of the ILWU, or of any of its affiliated local unions to be dispatched for work,
13  but preference in dispatching is required to be given to fully registered Class A
14  members of the ILWU qualified to do the work at hand over B Men, and preference is
15  similarly required to be given to all registered longshore workers, A Men and B Men,
16  over casual workers.

17      15.   Under the terms of subsection 8.43 of the PCLCD, "[t]here shall be no
18  favoritism or discrimination in the hiring or dispatching or employment of any
19  longshoremen qualified and eligible under the Agreement."

20      16.   Under the terms of subsection 8.32 of the PCLCD, "[a]ny longshoreman
21  registered by a Joint Port Labor Relations Committee in accordance with [the PCLCD]
22  shall thereby acquire joint coastwise registration under [the PCLCD.]" This means that
23  a longshoreman once registered at one West Coast port retains his status as a registered
24  member and, as such, has a priority for dispatch at any West Coast port over any non-
25  registered "casual" worker with the assurance of acceptance in the receiving port of
26  his/her "A Man" status.

27
28

7<br>COMPLAINT

1    17.   The benefits of "coastwise registration" under the PCLCD are detailed in

2  Supplement I to the PCLCD, entitled "Coastwise Registration And Transfer." This

3  Supplement creates two relevant rights: a right to a right to visit, and a right to transfer

4  to other ports.

5                              THE RIGHT TO VISIT

6    18.   The right to visit is supposed to be a liberally applied privilege. Under the

7  terms of Supplement I, Section 2.1, of the PCLCD, "[f]ully registered men shall be

8  freely accorded visiting privileges subject to the manpower needs of their home port and

9  the port to be visited . . . ." Further, under the terms of Supplement I, Section 3.2, of the

10  PCLCD, "[a]ny fully registered longshoreman having visitor status hereunder shall be

11  given work opportunity equal to that of fully registered men at the port visited."

12                      THE RIGHT TO TRANSFER

13    19.   The right to transfer is the other right expressly addressed in Supplement I,

14  Section 1.1, of the PCLCD. The criteria and procedure for a fully registered member of

15  the International Union to obtain a transfer to a new home port is specifically described,

16  namely:

17            1.1   A longshoreman having fully registered status as a

18            Class A longshoreman may transfer to another port, and as a

19            fully registered Class A longshoreman at such other port,

20            provided;

21            1.11  The Joint Port Labor Relations Committee at the

22            former home port determines that a transfer is warranted on the

23            basis of work opportunity or that there are compelling reasons

24            for letting him transfer despite the need for him at that port and

25            that there is an opening available for him at the port to which he

26            seeks to be transferred.

27

28

8<br>**COMPLAINT**

1.12  Transfers shall not be permitted if contrary to policies established by the Joint Coast Labor Relations Committee; and

1.13  The Joint Port Labor Relations Committee to which transfer is made, by applying the usual rules finds there is an opening available for him on the list of such port and approves him for transfer of registration.

1.2  A request for transfer may be denied by the Joint Port Labor Relations Committee of the port from which transfer is sought if the longshoreman is needed at that port or if he has not had a satisfactory record at that port.

1.3  No longshoreman shall be eligible for transfer who within a year of the application has been the subject of major discipline.

1.4  A request for transfer may be denied by the Joint Port Labor Relations Committee of the port to which the man seeks to transfer. Any denial of transfer, except because there is no opening available on its list, shall be subject to review in accordance with the procedure and rules that are applicable.

1.5  No fully registered man shall be entitled to transfer under these provisions until he has held such status for at least 1 year.

1.6  Hereunder, a fully registered longshoreman may transfer only to fully registered status as a longshoreman in another port. The place of the transferred man on the Class A list of the port to which he transfers shall be determined by his total Class A and Class B registered time as compared to such

1       time of those on the Class A list of the port to which he
2       transfers.

3           1.7    Fully registered men having less than 1 year of
4       such status and limited registered men may apply for inclusion
5       on the limited registered list of another port and consideration
6       shall be given to the work and availability record under the
7       Pacific Coast Longshore Agreement in taking action on such
8       applications.

9

10      An application of such a longshoreman for limited registration
11      in the second port shall be considered without discrimination
12      based upon his failure to be a resident of the port to which
13      application is made provided the Joint Port Labor Relations
14      Committee of the port where he has limited registration certifies
15      to the Joint Port Labor Relations Committee of the port where
16      application is made that the applicant has a fully satisfactory
17      record as a longshoreman in the port where registered and that
18      there is no reason to interfere with his transfer that is deemed
19      sufficient by the Joint Port Labor Relations Committee. In
20      considering   the   application   of   a   limited   registered
21      longshoreman from another port, consideration may be given to
22      his employment provided the favorable certification referred to
23      above is submitted by the Joint Port Labor Relations Committee
24      where he has been registered.

25

26   ///

27   ///

28

                                      10
                                 **COMPLAINT**

1

## 2004 MASS ELEVATION OF CASUALS

2    20.    At all times prior to late 2004 and relevant to Plaintiffs' careers as

3  longshoremen, there was a continuing and increasingly serious shortage of longshore

4  labor, particularly trained longshore labor, in the Port of Los Angeles and Long Beach.

5  By late 2004, this shortage had become so acute that the PMA authorized creating 3,000

6  new casual jobs with no requirement of prior experience in longshore work.

7  Concurrently, ILWU and Local 13 relaxed standards and elevated to registered B Man

8  status over 1,000 casuals. Plaintiffs are informed and believe, and thereon allege, that

9  many of these new B Man registrations were parceled out on the basis of favoritism or

10  nepotism or for monetary consideration to friends, relatives or other acquaintances of

11  individual officers or former officers of Local 13. Additionally, Plaintiffs are informed

12  and believe, and thereon allege, that since that 2004 expansion of the casual labor pool,

13  on the basis of nepotism or favoritism or in return for covert transfers of consideration,

14  individual officers or former officers of Local 13 have conspired with agents or

15  employees of PMA to inflate or falsify work records of certain casuals to accelerate the

16  elevation of those persons to B Man status.

17    21.    Prior to the mass elevation of casuals to B Men in late 2004 described

18  above, each of the Plaintiffs has developed a personal or family need to move from the

19  San Francisco Bay Area to the Los Angeles area. Plaintiffs have moved their residences

20  to Southern California or are commuting from Northern California to Southern

21  California at substantial expense and loss of personal free time as they have tried to

22  obtain transfers to Local 13.

23    22.    Notwithstanding the clearly stated right to a transfer under PCLCD

24  Supplement I, and the assurance of equal and fair treatment of all fully registered Class

25  A longshoremen stated in the constitution of the International Union, Local 13's officers

26  and agents have continuously rebuffed transfer inquiries from the Plaintiffs, and each of

27  them, telling Plaintiffs that they need to prove a "legitimate personal reason" to want a

28

11
**COMPLAINT**

1    transfer without specifying which family or personal needs would be "legitimate" or the
2    authority to require such a showing from Plaintiffs. In addition, Plaintiffs have been
3    repeatedly told that they should not even try to request a transfer because any such
4    request will never make it through the Local 13 Executive Board, a committee of local
5    union officers, and therefore would never be presented to or considered by the local Port
6    of Los Angeles and Long Beach union membership.

7        23.    At the time these transfer requests from Plaintiffs were being denied (i.e.,
8    prior to the 2004 mass elevation of casuals in the Port of Los Angeles and Long Beach),
9    there was a chronic shortage of qualified longshoremen in the Port of Los Angeles and
10    Long Beach. Plaintiffs are informed and believe, and thereon allege, that they were
11    improperly denied the right to transfer despite the shortage of longshoremen in the Port
12    of Los Angeles and Long Beach, because including but not limited to: officers and other
13    persons in control of Local 13 were parceling out registration status in Local 13 either
14    for cash or other consideration or on the basis of nepotistic preferences for friends and
15    family in violation of Plaintiffs' seniority rights.

16        24.    This practice by Local 13 of discouraging or blocking transfers into Local
17    13 is specifically intended to discriminate in favor of the individuals favored by Local
18    13's controlling officers and former officers, and it achieves the intended result by
19    affording the favored persons who have no seniority or less seniority than Plaintiffs in
20    the International Union a greater, indeed unique, opportunity to move from being mere
21    casuals to becoming registered members by eliminating competition for available work
22    by more senior and fully registered members from other ports such as the Plaintiffs.

23        25.    Although they were continuously denied permanent transfers to Local 13,
24    until approximately early 2003, Plaintiffs' status as fully registered Class A
25    longshoremen was recognized by Local 13 which allowed them to check in at the Local
26    13 dispatch hall where Plaintiffs and similarly situated visiting longshoremen were
27    dispatched to jobs in the Port of Los Angeles – Long Beach immediately after Local
28

12
**COMPLAINT**

1  13's Class A longshoremen.  After a member of Local 10 filed a suit and otherwise
2  formally protested the denial by Local 13 of a right under the PCLCD to transfer
3  permanently from Local 10 to Local 13, this practice of honoring Plaintiffs' seniority as
4  Class A longshoremen was abruptly terminated and Plaintiffs were able to obtain work
5  in the Port of Los Angeles and Long Beach only by being dispatched after Local 13's
6  Class B longshoremen.  In this junior dispatch position, Plaintiffs frequently did not
7  receive dispatch to the premium jobs that they would have otherwise been qualified to
8  take by virtue of their training and experience.  After the late 2004 mass elevation of
9  casuals to Class B status in the Port of Los Angeles and Long Beach, this new practice
10 of dispatching Plaintiffs after Local 13's B men often resulted in Plaintiffs having no
11 work.  Further, even when Plaintiffs were dispatched, they were sent to the least
12 desirable, junior man jobs incurring losses of pay and benefits and, more importantly,
13 incurring a loss of the opportunity to perform "skill jobs" acquiring additional
14 experience in those heavy equipment operating jobs which is essential to being hired as
15 a steady worker by the individual shipping and stevedoring companies in the Port of Los
16 Angeles and Long Beach which are member-employers of PMA.

17      26.    Plaintiffs will show at trial that longshoremen employed as steady workers
18 in the Port of Los Angeles and Long Beach typically and on average earn significantly
19 more over their careers than longshoremen dispatched from the Local 13 hiring hall.
20 Thus, being denied their Class A status continuously retarded Plaintiffs' earning
21 capacities as longshoremen.

22      27.    After the mass elevation of Class B longshoremen in late 2004, Plaintiffs
23 have frequently not been able to obtain any work in the Port of Los Angeles and Long
24 Beach because they are not dispatched until after the most junior of the newly-elevated
25 workers.  Thus, Plaintiffs' coastwise seniority has been seriously undermined and
26 diluted.

27

28

13
COMPLAINT

28. Because they could no longer receive steady work as visitors after the 2004 mass elevation of Class B longshoremen, Plaintiffs inquired repeatedly about formally transferring. Various officers of Local 13 told one or more of Plaintiffs not to make any more requests and reminded them that working in Local 13's jurisdiction is a privilege which can be denied at any time, not a right, and that should be remembered before making any issue about a permanent transfer.

29. Plaintiffs perceived the foregoing comments about not being able to work in the Port of Los Angeles and Long Beach to be threats of retaliation, and Plaintiffs allege that these comments were intended to be taken as threats of retaliation.

30. Plaintiffs continued to press Local 13 for transfers, and Plaintiffs are informed and believe, and thereon allege, that retaliatory action was taken against them to discourage them from pursuing their transfer rights. Among other things, the Local 13 hiring hall adversely changed the long-standing procedures which had allowed visitors like Plaintiffs to check in to the hiring hall as a visitor for thirty days. In a change that most directly affected Plaintiffs (and which appears to have been targeted at Plaintiffs), they were required to go through a cumbersome daily process of "volunteering off the floor" of the hiring hall. This new procedure reduced Plaintiffs' assurance of obtaining work even further making them the functional equivalent of casual workers who have no standing in the International Union and no seniority.

31. The aforementioned adverse changes in the hiring hall dispatching procedures occurred shortly after Plaintiffs had complained about being denied their transfer rights and shortly after they were told not to press for their rights. On that basis, Plaintiffs have concluded that the adverse changes in the hiring hall dispatching procedures were intended to be retaliatory.

32. Having been so denied their rightful places and seniority rights, Plaintiffs began pursuing formal transfer applications under the terms of the PCLCD, Supplement I. Specifically, each of the Plaintiffs received permission from Local 10 to seek a

14
**COMPLAINT**

1 | transfer as outlined in the PLLCD Supplement I. The Plaintiffs then sought approval
2 | from Local 13 to transfer their membership. Local 13 denied that approval with no
3 | explanation.

4 |     33.   Plaintiffs then appealed Local 13's failure to process their transfer requests
5 | to the JPLRC in Los Angeles-Long Beach. The Los Angeles JPLRC neither
6 | acknowledged nor acted upon their request. A copy of that request, dated July 17, 2007,
7 | is attached hereto as Exhibit "A."

8 |     34.   Upon getting no response from the Los Angeles-Long Beach JPLRC,
9 | Plaintiffs then attempted jointly and through counsel to appeal the denial of their right to
10 | transfer to the JCLRC. A copy of that request, dated September 5, 2007, is attached
11 | hereto as Exhibit "B." Plaintiffs are aware of no other administrative options or
12 | remedies that they can exercise or pursue.

13 |     35.   Plaintiffs are informed and believe and on that basis allege that the same
14 | exclusionary policies that had been applied to them prior to the 204 mass elevation of
15 | Class B longshoremen is still being applied in the Port of Los Angeles and Long Beach.

16 |     36.   At the present time, Plaintiffs are informed and believe, and thereon allege,
17 | that employees of PMA are conspiring with Local 13 to inflate the hours worked by
18 | select casuals at PMA represented employers. The effect of the creation of these
19 | phantom hours is to speed the advancement of these select casuals up the eligibility
20 | structure for advancement to registered status. This scheme is a further violation of the
21 | contractual seniority rights of Plaintiffs and others similarly situated.

22 |     37.   From the beginning of the Plaintiffs' attempts to transfer into Local 13,
23 | Local 10 in San Francisco has consistently supported the validity of the proposed
24 | transfers, treating the position taken by Local 13 and by acquiescence PMA and the
25 | International as a continuation of Local 13's longstanding and parochial exclusionary
26 | policy antithetical to the well established seniority rights of longshoremen from other
27 | ports working under the PCLCD.

28 |

1     38.   PMA has acquiesced in Local 13's and the International Union's denial of
2 Plaintiffs' rights by not allowing consideration of Plaintiffs' challenge to Local 13's
3 rejection of their transfer request at both the JPLRC and the JCLRC levels.

4                            **FIRST CAUSE OF ACTION**

5            **For Breach of Collective Bargaining Agreement;**

6   **Violation of Labor Management Relations Act (29 U.S.C. § 185 et seq.)**

7                     *(Against All Defendants)*

8     39.   Plaintiffs reallege and incorporate paragraphs 1 through 38 as though fully
9 set forth herein.

10     40.   Plaintiffs and Defendants are governed by Pacific Coast Labor Contract
11 Document ("PCLCD"), which is the applicable collective bargaining agreement for
12 longshoremen. Defendants are strictly obligated to act in accordance with the PCLCD.

13     41.   Among the purposes and policies of the Labor Management Relations Act,
14 29 U.S.C. § 185 et seq. is to prescribe the legitimate rights of employees and to protect
15 the rights of individual employees in their relations with labor organizations. These
16 rights and protections include, inter alia, the right of employees to organize and bargain
17 collectively, by encouraging practices fundamental to the friendly adjustment of
18 industrial disputes arising out of differences as to wages, hours, or other working
19 conditions, and by restoring equality of bargaining power between employers and
20 employees for the purpose of negotiating the terms and conditions of their employment
21 or other mutual aid or protection.

22     42.   The denial of seniority and the blocking of Plaintiffs' right to transfer is a
23 breach of the PCLCD and it denies Plaintiffs their rights to equal treatment by the
24 ILWU contrary to the PCLCD and the Labor Management Relations Act.

25     43.   By failing to fully and fairly represent Plaintiffs in the exercise and
26 enforcement of their PCLCD transfer rights, the Defendants have breached their duty of
27 fair representation to Plaintiffs.

28

1    44.    As a direct and proximate result of Defendants' failure to comply with their
2    obligation and duties as stated in the PCLCD and in violation of the LMRA, Plaintiffs
3    have suffered and continue to suffer monetary damages. Had PMA referred this matter
4    to the Area Arbitrator or to the Coast Arbitrator as only it could do in light of the breach
5    of duty of fair representation by Defendants, the lost work and lost pay incurred by
6    Plaintiffs would have ended when the Area or Coast Arbitrator enforced the PCLCD
7    requiring Local 13 to honor the transfer requests. Because PMA failed to take the steps
8    necessary to enforce the PCLCD and thereby acquiesced in Local 13's directive to
9    breach the PCLCD, PMA should be jointly and severally liable with the International
10   Union and with Local 13 for such otherwise avoidable damages. Therefore, Plaintiffs
11   are entitled to recover their lost work, lost pay, and lost opportunity damages from
12   Defendants and each of them. Plaintiffs are also entitled to recover their expenses and
13   costs for having to relocate and/or commute from Northern California to Southern
14   California during the time they have tried to obtain transfers.

15   45.    Additionally, the breach by Defendants of their duty of fair representation
16   has caused Plaintiffs to incur attorneys' fees and expenses that they should not have
17   been required to pay, making such fees and expenses additional damages which are the
18   direct and proximate result of these Defendants' unlawful practices alleged herein.

19                          **SECOND CAUSE OF ACTION**

20         **For Violation of Labor-Management Reporting and Disclosure Act**

21                              **(29 U.S.C. § 411 et seq.)**

22                              *(Against All Defendants)*

23   46.    Plaintiffs reallege and incorporate paragraphs 1 through 38 as though fully
24   set forth herein.

25   47.    Among the purposes and policies of he Labor-Management Reporting and
26   Disclosure Act, 29 U.S.C. § 411 et seq. is to protect employees' rights to organize,
27   choose their own representatives, bargain collectively, and otherwise engage in
28

                                    17
                                 COMPLAINT

1  concerted activities for their mutual aid or protection, so that labor organizations,

2  employers, and their officials adhere to the highest standards of responsibility and

3  ethical conduct in administering the affairs of their organizations, particularly as they

4  affect labor-management relations. This Act was also enacted to eliminate or prevent

5  improper practices on the part of labor organizations, employers, labor relations

6  consultants, and their officers and representatives which distort and defeat the policies

7  of the Labor Management Relations Act. Such instances of improper practices include

8  breach of trust, corruption, disregard of the rights of individual employees, and other

9  failures to observe high standards of responsibility and ethical conduct.

10       48.     The denial of seniority and the blocking of Plaintiffs' right to transfer is a

11  breach of the PCLCD and it denies Plaintiffs their rights to equal treatment by the

12  ILWU contrary to the Labor-Management Reporting and Disclosure Act.

13       49.     Such discrimination against fully registered, dues paying members of the

14  International Union is not contemplated by, or authorized in the terms of Supplement I

15  of the PCLCD relating to transfers and deprives dues-paying members like Plaintiffs the

16  benefit of the "joint coast registration" and freedom from discrimination guaranteed by

17  the PCLCD and by § 101 LMRDA. Further, this discrimination against union members

18  in favor of non-member casuals violates the basic tenets of a seniority system.

19       50.     As a direct and proximate result of Defendants' failure to comply with their

20  obligation and duties as stated in the PCLCD and in violation of the LMRDA, Plaintiffs

21  have suffered and continue to suffer monetary damages. Therefore, Plaintiffs are

22  entitled to recover their lost work, lost pay, and lost opportunity damages from

23  Defendants and each of them. Plaintiffs are also entitled to recover their expenses and

24  costs for having to relocate and/or commute from Northern California to Southern

25  California during the time they have tried to obtain transfers.

26       51.     Additionally, the breach by Defendants of their duty of fair representation

27  has caused Plaintiffs to incur attorneys' fees and expenses that they should not have

28

18
COMPLAINT

1  been required to pay, making such fees and expenses additional damages which are the
2  direct and proximate result of these Defendants' unlawful practices alleged herein.

3                          **THIRD CAUSE OF ACTION**

4                    **For Injunction to Preserve Seniority Rights**

5                            *(Against All Defendants)*

6      52.    Plaintiffs reallege and incorporate paragraphs 1 through 38 as though fully
7  set forth herein.

8      53.    Based on Defendants' conduct as alleged above, Plaintiffs will seek
9  injunctive relief from the Court to assist them in regaining the rightful place that, but for
10 the unlawful denial of their transfer and seniority rights, they would have held in the
11 longshore labor pool in the Port of Los Angeles and Long Beach. However, if the Court
12 is unable to fashion an equitable remedy that would grant Plaintiffs complete restoration
13 to their rightful places in the longshore labor pool in the Port of Los Angeles and Long
14 Beach, Plaintiffs will seek as damages compensation for the losses they have
15 individually incurred and will incur as a result of having had their respective careers
16 stunted by a prolonged period of working as visitors in the Port of Los Angeles and
17 Long Beach rather than holding their rightful place as fully registered Class A
18 longshoremen.

19                             **PRAYER FOR RELIEF**

20     WHEREFORE, Plaintiffs pray for the following relief:

21     1.    For an order of the Court declaring: (i) that Plaintiffs properly completed a
22 transfer to Local 13 under the terms of the PCLCD, Supplement I; (ii) that the failure by
23 Local 13 to submit the Plaintiffs' grievances concerning their transfer requests breached
24 the duty of fair representation owed to Plaintiffs, individually and collectively, by Local
25 13 and the International Union; (iii) that the failure by Local 13 and the International
26 Union to honor Plaintiffs' seniority violated their rights under the constitution of the
27 International Union and therefore violated their rights to equal protection and non-
28

                                   19
                               COMPLAINT

1    discrimination under the LMDRA; and (iv) that the PMA aided, abetted and conspired

2    with Local 13 and the International Union in this violation of the LMDRA;

3         2.    For judgment against the International Union and against Local 13, jointly

4    and severally, for all of the lost wages and benefits that Plaintiffs have incurred and will

5    incur as a result of being denied transfers, together with all of their costs and attorneys'

6    fees incurred in bringing and maintaining this action;

7         3.    For judgment against PMA for that portion of Plaintiffs' lost wages and

8    benefits that would have otherwise been avoided had PMA not acquiesced in the

9    direction by the International Union and by Local 13 to deny Plaintiffs their transfer

10   rights;

11        4.    For judgment against all Defendants for allowable interest and the taxable

12   costs incurred herein; and

13        5.    For such other and further relief as may be just and equitable.

14

15   DATED: January 4, 2008                    SULLIVAN TAKETA LLP

16

17                                       By: _____

18                                              Mark F. Sullivan
                                                Attorneys for Plaintiffs
19

20

21                          **DEMAND FOR JURY TRIAL**

22        Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal

23   Rules of Civil Procedure.

24   DATED: January 4, 2008                    SULLIVAN TAKETA LLP

25

26

27                                       By: _____
                                                Mark F. Sullivan
28                                              Attorneys for Plaintiffs

                              20
                         **COMPLAINT**

# EXHIBIT "A"

Via Overnite Delivery
And U.S. Mail, Certified
Return Receipt Requested

July 17, 2007

Frank Ponce de Leon
ILWU Local #13
231 West "C" Street
Wilmington, CA 90744

RE:    Request for PCLCD, Supplement I Transfers to Local 13

Dear Brother de Leon:

We, the undersigned, are all fully registered Class A longshoremen in good
standing with the ILWU and with Local 10 of the ILWU, San Francisco. For
personal and family reasons, each one of us desires to relocate permanently
to the Los Angeles area. Under Supplement I of the Pacific Coast Longshore
Contract Document ("PCLCD"), we have "coastwise registration" and we are all
seeking to exercise the privileges of such registration to request transfer from
Local 10 to the registered list of Local 13. We know that there is no shortage of
work in the Port of Los Angeles-Long Beach as evidenced by the daily dispatch
not only of hundreds of limited registration (Class B) longshoreman, but also of
unregistered casual personnel.

Enclosed herewith is a copy of a letter written by Local 10 Secretary-Treasurer
Farless F. Darley, III, approving our request to transfer under Supplement I of
the PCLCD and asking that the matter be addressed at the next meeting of the
Los Angeles-Long Beach Joint Port Labor Relations Committee (Los Angeles-

Long Beach JPLRC). This, as you know, is the procedure for a transfer specified in Supplement I of the PCLCD.

Several of us have made informal inquiries about exercising our coastwise registration rights under Supplement I and have either received no response from Local 13 or have been advised that our request is not likely to be honored for reasons not stated in the PCLCD. The PCLCD is the bedrock source of our status and rights as fully registered longshoremen and we believe we are entitled to have our request presented to the Los Angeles-Long Beach JPLRC pursuant to the procedures outlined in Supplement I of the PCLCD.

If our request is not going to be brought before the Los Angeles-Long Beach JPLRC, please provide us with a written statement why we are being denied what we believe to be our right. As we read Supplement I of the PCLCD, unresolved issues of coastwise registration are to be resolved by the Joint coast Labor Relations Committee. If we have not received a written response to this request within ten calendar days after the next meeting of the Los Angeles-Long Beach JPLRC, we reserve the right to present the matter to the Joint Coast Labor Relations Committee ("JCLRC").

All of us look forward to a favorable response to our transfer request. However, if there is disagreement, we want to assure that we have exhausted all administrative remedies under the PCLCD including submission to the JCLRC.

Fraternally,

LEROY PHILLIPS  #9214

JOSEPH LAWTON  #9340

DEANDRE WHITTEN  #9436

KIMANI STANFORD  #9381
DAK/mh

JOSE AYALA  #9326

JOSE LINARES  #9479

GONZALO TORRES  #9414



# International Longshore and Warehouse Union

## Local 10

400 NORTH POINT, SAN FRANCISCO, CA 94133  •  ·(415) 776-8100

PRESIDENT.     Thomas A. Clark
VICE PRESIDENT.     Lawrence J. Thibeaux

Farless F. Dailey, III.
SECRETARY TREASURER

May 24, 2007

Frank Ponce de Leon.
Secretary-Treasurer
ILWU Local #13
231 W "C" Street
Wilmington, CA 90744

Dear Brother De Leon:

ILWU Local #10 is requesting the transfer of the following members to ILWU
Local #13:

| 1  | LEROY PHILLIPS     | 9214 |
|----|--------------------|------|
| 2. | JOSE AYALA         | 9326 |
| 3. | JOSEPH LAWTON      | 9340 |
| 4. | JOSE LINARES       | 9479 |
| 5. | DEANDRE WHITTEN    | 9436 |
| 6. | GONZALO TORRES     | 9414 |
| 7. | KIMANI STANFORD    | 9381 |

These members are all in good standing and are hereby cleared for their request to transfer to
ILWU Local #13. Please address this issue at your next LRC Meeting. For any further
questions, please do not hesitate to call me at (415) 776-8100.

Fraternally,

Farless F. Dailey, III.
Secretary-Treasurer
ILWU Local #10

opeiu29/afl-cio:mp

# EXHIBIT "B"

## SULLIVAN TAKETA LLP
LAWYERS
31351 VIA COLINAS, SUITE 205
WESTLAKE VILLAGE, CALIFORNIA 91362
TELEPHONE (818) 889-2299
TELEPHONE (805) 494-4700
FACSIMILE (818) 889-4497



RECEIVED

SEP 1 0 2007

AUTHOR'S E-MAIL:
MARK.SULLIVAN@CALAWCOUNSEL.COM

September 5, 2007

ECEIVE
SEP 1 0 2007
COAST COMMITTEE

VIA U.S. MAIL AND
FACSIMILE TRANSMISSION TO
(415) 348-8392 [PMA] AND (415) 775-1302 [ILWU]

Jim C. McKenna,
President,
Pacific Maritime Association
555 Market Street
San Francisco, CA 94105-2800

Robert McEllrath,
International President, Longshore Division,
International Longshore and Warehouse
Union, AFL-CIO
1188 Franklin Street, 4th Floor
San Francisco, CA 94109

RE: APPEAL TO JOINT COAST LABOR RELATIONS COMMITTEE

Gentlemen:

My firm and co-counsel, Dennis L. Kennelly, 1030 Curtiss Street, Suite 200, Menlo Park, CA 94025, represent the seven fully registered Class A longshoremen, listed below, who each signed the enclosed July 17, 2007 request for a PCLCD, Supplement I, transfer from ILWU, Local 10 to ILWU Local 13. To date, there has been no response to that request. We conclude from this lack of response that the Los Angeles-Long Beach Joint Port Labor Relations Committee will not be considering their request.

Our clients now appeal to you in your respective roles as members of the Joint Coast Labor Relations Committee. We remain optimistic that these individuals can and will receive due process under the auspices of the PCLCD. Please set this matter for hearing/consideration by the JCLRC. If this matter will not be heard by the JCLRC, please advise us so that we can document our good faith attempt to exhaust all internal administrative remedies.

Very truly yours,
SULLIVAN TAKETA LLP

Mark F. Sullivan

MFS:mfs
Enclosures

Appeal to JCLRC

SULLIVAN TAKETA LLP

September 6, 2007
Page 2

Copy: Dennis L. Kennelly, Esq.

Copy to Grievants:

Leroy Phillips #9214
Joseph Lawton #9340
Deandre Whitten #9436
Kimani Stanford #9381
Jose Ayala #9326
Jose Linares #9479
Gonzalo Torres #9414



## SULLIVAN TAKETA LLP

LAWYERS

31351 VIA COLINAS, SUITE 205
WESTLAKE VILLAGE, CALIFORNIA 91362
TELEPHONE (818) 889-9999
TELEPHONE (805) 494-4700
FACSIMILE (818) 889-4497

**RECEIVED**

SEP 1 0 2007

AUTHOR'S E-MAIL:
MARK.SULLIVAN@OALAWCOUNSEL.COM

September 5, 2007

VIA U.S. MAIL AND
FACSIMILE TRANSMISSION TO
(415) 348-8392 [PMA] AND (415) 775-1302 [ILWU]

RECEIVED

SEP 1 0 2007

COAST COMMITTEE

Jim C. McKenna,
President,
Pacific Maritime Association
555 Market Street
San Francisco, CA 94105-2800

Robert McEllrath,
International President, Longshore Division,
International Longshore and Warehouse
Union, AFL-CIO
1188 Franklin Street, 4th Floor
San Francisco, CA 94109

RE:    APPEAL TO JOINT COAST LABOR RELATIONS COMMITTEE

Gentlemen:

My firm and co-counsel, Dennis L. Kennelly, 1030 Curtiss Street, Suite 200, Menlo Park, CA 94025, represent the seven fully registered Class A longshoremen, listed below, who each signed the enclosed July 17, 2007 request for a PCLCD, Supplement I, transfer from ILWU, Local 10 to ILWU Local 13. To date, there has been no response to that request. We conclude from this lack of response that the Los Angeles-Long Beach Joint Port Labor Relations Committee will not be considering their request.

Our clients now appeal to you in your respective roles as members of the Joint Coat Labor Relations Committee. We remain optimistic that these individuals can and will receive due process under the auspices of the PCLCD. Please set this matter for hearing/consideration by the JCLRC. If this matter will not be heard by the JCLRC, please advise us so that we can document our good faith attempt to exhaust all internal administrative remedies.

Very truly yours,
SULLIVAN TAKETA LLP

Mark F. Sullivan

MFS:mfs
Enclosures

Appeal to JCLRC

SULLIVAN TAKETA LLP

September 6, 2007
Page 2

Copy: Dennis L. Kennelly, Esq.

Copy to Grievants:

> Leroy Phillips #9214
> Joseph Lawton #9340
> Deandre Whitten #9436
> Kimani Stanford #9381
> Jose Ayala #9326
> Jose Linares #9479
> Gonzalo Torres #9414

WiretarVDraft\283\283-16245012.doc