ROBERT S. REMAR (SBN 100124)
PHIL A THOMAS (SBN 248517)
LEONARD, CARDER, LLP
1188 Franklin St., Suite 201
San Francisco, CA 94109
Tel: (415) 771-6400 / Fax: (415)771-7010

*Attorneys for Defendant*
INTERNATIONAL LONGSHORE AND WAREHOUSE UNION


STEVEN R. HOLGUIN (SBN 115768)
JOHN KIM (SBN 232957)
HOLGUIN & GARFIELD, LLP
800 West Sixth St., Suite. 950
Los Angeles, CA 90048
Tel: (213) 623-0170 / Fax: (213) 623-0171

*Attorneys for Defendant*
INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 13


CLIFFORD D. SETHNESS (SBN 212975)
JASON M. STEELE (SBN 223189)
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel: (213) 612-2500 / Fax: (213) 612-2501

*Attorneys for Defendant*
PACIFIC MARITIME ASSOCIATION


## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOSE AYALA, DEANDRE WHITTEN, LEROY PHILLIPS, GONZALO TORRES, JOSE LINAREZ, KIMANI STAFFORD and JOSEPH LAWTON, individuals,

Plaintiffs,

v.

PACIFIC MARITIME ASSOCIATION, a California corporation,; INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, a labor organization; and INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 13, a labor organization; and DOES 1 though 10

Defendants

Case No. CV-08-0119 TEH

**NOTICE OF MOTION AND MOTION TO COMPEL EXHAUSTION OF CONTRACTUAL GRIEVANCE ARBITRATION PROCESS AND TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

Date:        April 21, 2008
Time:        10:00 AM
Courtroom:   19

Hon. Thelton E. Henderson

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on April 21st at 10:00 AM or as soon thereafter as counsel can be heard, before Hon. Judge Thelton E. Henderson of the United States District Court for the Northern District of California, in Courtroom 19 located at 450 Golden Gate Ave. San Francisco, CA, 94102, Defendants will and hereby do move this Court for an Order (1) dismissing Plaintiffs' claims for breach of the collective bargaining agreement between Defendants ILWU and PMA, on the grounds that Plaintiffs failed to exhaust their remedies under that agreement, and (2) compelling Plaintiffs to submit those claims to the contractual grievance and arbitration procedure. Defendants also move to dismiss Plaintiffs' claims under the Labor Management Reporting and Disclosure Act, for failure to state a claim upon which relief may be granted.

This motion is based on this Notice of Motion and Motion to Compel Arbitration, the Declaration of Ray Ortiz, Jr., in support thereof, the pleadings in this case and all arguments presented.

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ........................................................................................................... 3

II.   FACTS ........................................................................................................................... 3

    1.   Labor and Management Parties to this Action ............................................... 3

    2.   The Collective Bargaining Agreement ("CBA") Governing Plaintiffs' Employment 4

    3.   Registration of Longshore Workers under the CBA ...................................... 4

    4.   Dispatching Procedures under the CBA ........................................................ 6

    5.   Transfer Rights under the CBA ..................................................................... 7

    6.   Discrimination Prohibited under the CBA .................................................... 8

    7.   Grievance Procedures under the CBA ........................................................... 9

    8.   Plaintiffs' Failure to Exhaust Contractual Grievance Procedures ............. 10

III.   ARGUMENT ............................................................................................................. 12

   A.   Plaintiffs' First and Third Causes of Action, for Breach of Collective Bargaining Agreement and Injunction to Preserve Seniority Rights, are Barred by Plaintiffs' Failure to Exhaust Contractual Remedies, and are Subject to Mandatory Arbitration ........................ 12

   B.   Plaintiffs' Second Cause of Action, for Violation of the Labor-Management Reporting and Disclosure Act, Must Be Dismissed for Failure to State a Claim Upon Which Relief May Be Granted ..................................................................................................... 15

IV.   CONCLUSION ......................................................................................................... 17

NOTICE OF MOTION AND MOTION TO COMPEL EXHAUSTION OF CONTRACTUAL REMEDIES
CASE NO. CV-08-0119 TEH

# TABLE OF AUTHORITIES

CASES

Ackley v. Western Conference of Teamsters
958 F.2d 1463 (9th Cir. 1992) ................................................................................. 17

AT & T Technologies, Inc. v. Communications Workers of America
475 U.S. 643, 649 (1986) ........................................................................................ 12

Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 v. Interstate Distributor Co.
832 F.2d 507, 510-511 (9th Cir. 1987) .................................................................. 12

Calhoun v. Harvey
379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964) ............................................. 16

Carr, et. al v. Pacific Maritime Association
904 F.2d 1313, 1317 (9th Cir. 1990), cert. denied, 498 U.S. 1084 (1991)............. 12, 14, 15, 16

Darby v. International Brotherhood of Electrical Workers
442 US 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979) ............................................. 16

Frederick Meiswinkel, Inc. v. Laborers' Union Local 261
744 F.2d 1374, 1377 (9th Cir.1984) ....................................................................... 12

General Drivers, Warehousemen & Helpers, Local No. 89 v. Riss & Co.
372 U.S. 517 (1963) ................................................................................................ 13

Humphrey v. Moore
375 U.S. 335, 342 (1964) ........................................................................................ 13

Kemner v. District Council of Painting & Allied Trades No. 36
768 F.2d 1115, 1120 (9th Cir. 1985) ...................................................................... 13

Local 1052 v. L.A. County Council of Carpenters
944 F.2d 610, 615 (9th Cir.1991) ........................................................................... 17

Local Freight Drivers v. Braswell Motor Freight Lines, Inc.
422 F.2d 109, 114 (9th Cir. 1970) .......................................................................... 13, 14

New England Mechanical, Inc. v. Laborers Local Union 294
909 F.2d 1339, 1345 (9th Cir.1990) ....................................................................... 12

Ritza v. ILWU
837 F.2d 365 (9th Cir. 1988) .................................................................................. 12

Sergeant v. Inlandboatmen's Union of the Pacific
346 F.3d 1196, 1201 (9th Cir. 2003) ........................................................................ 17

Southern Cal. Dist. Council of Laborers v. Berry Constr. Inc.
984 F.2d 340, 343 (9th Cir. 1993) ........................................................................... 12

Stelling v International Brotherhood of Electrical Workers
587 F.2d 1379, 1384 ................................................................................................. 16

United Brotherhood of Carpenters & Joiners of America, Local No 1780 v Desert Palace, Inc.
94 F.3d 1308, 1312 (9th Cir. 1996) ......................................................................... 12

United Steelworkers of America v. Warrior & Gulf Nav. Co.
363 U.S. 574, 578 (1960) ......................................................................................... 12

UPS v. Mitchell
451 U.S. 56, 60-61 (1981) ........................................................................................ 13

## STATUTES

Labor-Management Reporting and Disclosure Act, 29 U.S.C. §411(a)(1) ........................ 16-17

Labor-Management Relations Act, 29 U.S.C. §185 ………………………………………*passim*

## I.    INTRODUCTION

Plaintiffs are seven Registered longshore workers who work in the San Francisco Bay Area under the jurisdiction of ILWU Local 10.  Plaintiffs allege that under the collective bargaining agreement in effect between Defendants ILWU and PMA, they have a contractual right to transfer to the jurisdiction of ILWU Local 13 at the ports of Los Angeles and Long Beach.  Plaintiffs allege that they have applied for transfers under the procedures set forth in the ILWU/PMA collective bargaining agreement, and that these transfers have been denied.  Plaintiffs further contend that that Defendants' alleged denial of their requests to transfer amounts to discrimination against them in violation of the ILWU/PMA collective bargaining agreement.

As will be shown, Plaintiffs' claims that their rights under the ILWU/PMA collective bargaining agreement have been violated are not ripe for review by this Court, as Plaintiffs have failed to exhaust their contractual remedies.  This Court must dismiss Plaintiffs' claims for failure to exhaust contractual remedies, and order Plaintiffs to submit their grievances to the proper internal body.

## II.    FACTS

1.    <u>Labor and Management Parties to this Action</u>:

Defendant Pacific Maritime Association ("PMA") is a non-profit collective bargaining representative for shipping, stevedoring and marine terminal companies which operate in ports throughout California, Oregon and Washington.  (Ortiz Decl. ¶2).  Defendant International Longshore and Warehouse Union ("ILWU") is the collective bargaining representative of all longshore workers employed by PMA-member companies in the ports of California, Oregon and Washington.  (Ortiz Decl. ¶2).  Defendant ILWU Local 13 ("Local

13") has its offices in Long Beach, California and is affiliated with Defendant ILWU, which is headquartered in San Francisco, California. (Ortiz Decl. ¶2). In the ports of Long Beach and Los Angeles, longshore workers are represented by Local 13. (Ortiz Decl. ¶2). In the ports of the San Francisco Bay area, longshore workers are represented by ILWU Local 10, which is not a party to this action. (Ortiz Decl. ¶2).

2.     The Collective Bargaining Agreement ("CBA") Governing Plaintiffs' Employment:

The wages, hours, and terms and conditions of employment for ILWU-represented longshore workers employed by PMA-member companies are governed by a coast-wide collective bargaining agreement known as the Pacific Coast Longshore and Clerks Agreement ("PCLCA"). (Ortiz Decl. ¶3). The PCLCA is set forth in two documents, (1) the Pacific Coast Clerks Contract Document ("PCCCD"), which governs the terms and conditions of employment for marine clerks employed by PMA member companies, and (2) the Pacific Coast Longshore Contract Document ("PCLCD"), which governs the terms and conditions of employment for longshore workers employed by PMA member companies. (Ortiz Decl. ¶3). A true and correct copy of the PCLCD is attached hereto as Exhibit A and incorporated by this reference.

3.     Registration of Longshore Workers under the CBA:

The PCLCD requires the PMA and each affiliated Longshore Division local union to jointly create and maintain lists of "Registered" and "Identified Casual" workers in each port covered by the Agreement. (Ortiz Decl. ¶4). The list of Registered workers is further divided into "Class A" fully Registered workers and "Class B" limited Registered workers. (Ortiz Decl. ¶4). Longshore workers in each of these categories generally receive daily assignments

through dispatch halls operated jointly by the PMA and the ILWU longshore and clerks local unions in each port. (Ortiz Decl. ¶4). Workers are dispatched to various PMA employers each day, depending on the number and location of ships that happen to be in port. (Ortiz Decl. ¶4). Only Registered longshore workers and Identified Casuals are eligible for dispatch to longshore jobs covered by the PCLCD. (Ortiz Decl. ¶4).

Additions to a port's lists of Identified Casuals, and promotions to Class B and Class A status, are administered by the port's Joint Port Labor Relations Committee ("Joint Port LRC"), a joint labor-management committee comprised of representatives of the PMA and the ILWU-affiliated local union in each port. (Ortiz Decl. ¶5). Such administration is subject to the ultimate control of the Joint Coast Labor Relations Committee, ("Joint Coast LRC"), which is comprised of representatives of ILWU and the PMA-represented longshore employers at the highest level. (Ortiz Decl. ¶5). Registration procedures, as well as the rights and obligations of Registered longshore workers, are set forth in Section 8.3 of the PCLCD. (Ortiz Decl. ¶5). Section 8.3 provides in relevant part:

> **8.31** The Joint Port Labor Relations Committee in any port, subject to the ultimate control of the Joint Coast Labor Relations Committee, shall exercise control over registered lists in that port, including the power to make additions to or subtractions from the registered lists as may be necessary. In each port there shall be maintained a list of longshoremen showing their registration status under this Agreement. When objecting to the registration of any man, members of the Joint Port Labor Relations Committee shall be required to give reason therefor.

> **8.32** Any longshoreman registered by a Joint Port Labor Relations Committee in accordance with this Contract Document shall thereby acquire joint coastwise registration under this Agreement. The rights and obligations of coastwise registration in regard to transfers between ports, visiting and leaves of absence are set forth in Supplement I to this Contract Document. …

Class B longshore workers are promoted to Class A status when they have met certain eligibility requirements and have performed work requirements successfully for a period of

years.  (Ortiz Decl. ¶6).  Identified Casuals are periodically promoted to Class B status when

the needs of the port, as determined jointly by ILWU and the PMA-represented employers,

dictate.  (Ortiz Decl. ¶6).  Promotions to Class B status begin with those Identified Casuals

having recorded the highest number of longshore casual hours worked within the Identified

Casual system.  (Ortiz Decl. ¶6).

The Joint Port LRC makes the determination about whether additions to the Class A,

Class B or Identified Casual lists are necessary on a quarterly basis by reviewing the size of

existing Registration lists and the PMA's Quarterly Manpower Reports.  (Ortiz Decl. ¶7).

Data contained in these reports reflect, among other information, the volume of cargo tonnage

and the average number of longshore hours worked per day at each port covered by the

PCLCD.  (Ortiz Decl. ¶7).  Although the Joint Port LRC evaluates hiring needs on a quarterly

basis, in practice, additions to the Identified Casual lists have occurred only sporadically at

intervals of several years.  (Ortiz Decl. ¶7).

4.    Dispatching Procedures under the CBA:

Class A workers have priority in dispatch to all available jobs for which they are

qualified, followed by Class B registrants.  (Ortiz Decl. ¶8).  Identified Casual longshore

workers are hired for a day only after all the available Registered longshore workers have

been dispatched, and only if needed to alleviate the staffing shortages caused by the

fluctuating demand for waterfront labor.  (Ortiz Decl. ¶8).  Dispatch procedures are governed

by Section 8.4 of the PCLCD, which provides in relevant part:

> **8.41** First preference of employment and dispatch shall be given to fully
> registered longshoremen who are available for employment covered by Section
> 1 of this Contract Document in accordance with the rules and regulations
> adopted by the Joint Port Labor Relations Committee.  A similar second
> preference shall be so given to limited registered men.  The Joint Coast Labor

Relations Committee shall be authorized to effectuate such preferences in such manner and for such times and places as it determines in its discretion.

**8.42** Dispatching of men and gangs shall be under the principle of low-man, low-gang, first-to-be-dispatched, except where local dispatching rules provide otherwise for dispatching of special skilled men and gangs.

**8.43** There shall be no favoritism or discrimination in the hiring or dispatching or employment of any longshoremen qualified and eligible under the Agreement.

**8.44** Any longshoreman or dispatching hall employee found guilty by the Joint Port Labor Relations Committee of favoritism or discrimination or bribery shall immediately be discharged and dropped from the registered list.

5.      Transfer Rights under the CBA:

Under Supplement I to the PCLCD, Registered longshore workers have a limited right

to transfer to ports other than the port where they were initially Registered.  (Ortiz Decl. ¶9).

Supplement I provides in relevant part:

**COASTWISE REGISTRATION AND TRANSFER**
The Joint Port Labor Relations Committee in any port, subject to the ultimate control of the Joint Coast Labor Relations Committee, shall exercise control over registration lists in that port, including the power to make additions to or subtractions from the registered lists as may be necessary.  Any longshoreman or clerk who is properly registered by a Joint Port Labor Relations Committee acting under their agreement and this Supplement I has coastwise registration under the Pacific Coast Longshore and Clerks' Agreement.  The rights and obligations of coastwise registration shall be under the control of the Joint Coast Labor Relations Committee and subject to the provisions set forth herein below.

**1. TRANSFERS OF LONGSHOREMEN BETWEEN PORTS**
**1.1** A longshoreman having fully registered status as a Class A longshoreman may transfer to another port, and as a fully registered Class A longshoreman at such other port, provided;

**1.11** The Joint Port Labor Relations Committee at the former home port determines that a transfer is warranted on the basis of work opportunity or that there are compelling reasons for letting him transfer despite the need for him at that port and that there is an opening available for him at the port to which he seeks to be transferred.

**1.12** Transfers shall not be permitted if contrary to policies established by the Joint Coast Labor Relations Committee; and

**1.13** The Joint Port Labor Relations Committee to which transfer is made, by applying the usual rules finds there is an opening available for him on the list of such port and approves him for transfer of registration.

**1.2** A request for transfer may be denied by the Joint Port Labor Relations Committee of the port from which transfer is sought if the longshoreman is needed at that port or if he has not had a satisfactory record at that port.

**1.3** No longshoreman shall be eligible for transfer who within a year of the application has been the subject of major discipline.

**1.4** A request for transfer may be denied by the Joint Port Labor Relations Committee of the port to which the man seeks to transfer. Any denial of transfer, except because there is no opening available on its list, shall be subject to review in accordance with the procedure and rules that are applicable.

**1.5** No fully registered man shall be entitled to transfer under these provisions until he has held such status for at least 1 year.

**1.6** Hereunder, a fully registered longshoreman may transfer only to fully registered status as a longshoreman in another port. The place of the transferred man on the Class A list of the port to which he transfers shall be determined by his total Class A and Class B registered time as compared to such time of those on the Class A list of the port to which he transfers.

Supplement I also governs procedures under which Registered longshore workers may work in another port temporarily. (Ortiz Decl. ¶10). These procedures, known as "visiting," are set forth in Sections 2 and 3 of Supplement I, found on pages 193 to 196 of the PCLCD. (Ortiz Decl. ¶10).

6.    <u>Discrimination Prohibited under the CBA</u>:

Many forms of discrimination are expressly prohibited by Section 13 of the PCLCD. (Ortiz Decl. ¶11). Section 13 also contains procedures for resolving allegations of discrimination. (Ortiz Decl. ¶11). Section 13 provides in relevant part:

**NO DISCRIMINATION**

**13.1** There shall be no discrimination in connection with any action subject to the terms of this Agreement (including at work sites, joint dispatch halls, training sites, and other locations, when reasonably related to employment covered by this Agreement) either in favor of or against any person because of membership or nonmembership in the Union, activity for or against the Union or absence thereof, race, creed, color, sex (including gender, pregnancy, sexual orientation), age (forty or over), national origin, religious or political beliefs, disability, protected family care or medical leave status, veteran status, political affiliation or marital status. …

**13.2** All grievances and complaints alleging incidents of discrimination or harassment … based on race, creed, color, sex (including gender, pregnancy, sexual orientation), age (forty or over), national origin, or religious or political beliefs, or alleging retaliation of any kind for filing or supporting a complaint of such discrimination or harassment, shall be processed solely under the Special Grievance/Arbitration Procedures For The Resolution of Complaints Re Discrimination and Harassment Under The Pacific Coast Longshore & Clerk's Agreement … with the exception of those types of grievances and complaints described in Section 13.3.

**13.3** Grievances and complaints alleging that a contractual provision or rule is discriminatory as written or as applied, as well as discrimination claims seeking elevation, registration or selection for casual status, and discrimination claims based on … membership or non-membership in the Union, or activity for or against the Union or absence thereof, are not to be filed under the Special Section 13.2 Grievance Procedures, but instead are to be filed and processed with the Joint Port Labor Relations Committee (JPLRC) under the grievance procedures in Section 17.4 of the PCLCA.

7.    <u>Grievance Procedures under the CBA</u>:

Section 17 of the PCLCD sets forth the rules and procedures for filing and processing a grievance under the contract.  (Ortiz Decl. ¶12).  Section 17.15 requires that the available grievance procedures be exhausted before resort to other remedies.  (Ortiz Decl. ¶12).  Section 17.4 details the procedures to be followed in resolving a claim for, *inter alia*, discrimination because of membership or non-membership in the Union.  (Ortiz Decl. ¶12).  Section 17.4 provides in relevant part:

**17.4** When any longshoreman (whether a registered longshoreman or an applicant for registration or a casual longshoreman) claims that he has been

discriminated against in violation of Section 13 of this Agreement, he may at his option and expense, or either the Union or the Association may at its option and at their joint expense, have such complaint adjudicated hereunder, which procedure shall be the exclusive remedy for any such discrimination.

**17.41** Such remedy shall be begun by the filing of a grievance with the Joint Port Labor Relations Committee setting forth the grievance and the facts as to the alleged discrimination. … Such grievance shall be investigated by the Joint Port Labor Relations Committee at a regular or special meeting of the Committee at which the individual involved shall be permitted to appear to state his case, at which time he may present oral and written evidence and argument. …

**17.42** Either the Employers, the Union or the man involved may appeal the decision of the Joint Port Labor Relations Committee.  Such appeal shall be to the Joint Coast Labor Relations Committee by letter addressed to the Joint Coast Labor Relations Committee. …

**17.43** An appeal from the decision of the Joint Coast Labor Relations Committee can be presented to the Coast Arbitrator (or by agreement of the Joint Coast Labor Relations Committee to an Area Arbitrator) by the individual involved, the Employers or the Union.  …

The Coast Arbitrator is selected by the Joint Coast LRC under the procedures provided

in Section 17.5 of the PCLCD.  (Ortiz Decl. ¶13).

8.    <u>Plaintiffs' Failure to Exhaust Contractual Grievance Procedures</u>:

On or about September 10, 2007, the Joint Coast LRC received a letter from Plaintiffs'

counsel, a true and correct copy of which is attached as Exhibit B to the Declaration of Ray

Ortiz.  (Ortiz Decl. ¶14).  The letter reads in relevant part:

My firm and co-counsel Dennis L. Kennelly … represent the seven fully registered Class A longshoremen … who each signed the enclosed July 17, 2007 request for a PCLCD, Supplement I, transfer from ILWU, Local 10 to ILWU Local 13.  To date, there has been no response to that request.  We conclude from this lack of response that the Los Angeles-Long Beach Joint Port Labor Relations Committee will not be considering their request.

Our clients now appeal to you in your respective roles as members of the Joint Coat (sic) Labor Relations Committee.  We remain optimistic that these individuals can and will receive due process under the auspices of the

PCLCD.  Please set this matter for hearing/consideration by the JCLRC.  If this matter will not be heard by the JCLRC, please advise us so that we can document our good faith attempt to exhaust all internal administrative remedies.

In its regularly scheduled meeting on September 27, 2007, the Joint Coast LRC considered Plaintiffs' request.  (Ortiz Decl. ¶15).  The minutes of this meeting, a true and correct copy of which is attached as Exhibit C to the Declaration of Ray Ortiz, state in relevant part:

> The Committee reviewed a letter from an attorney asserting representation of seven Local 10 members seeking transfer from the Port of San Francisco to the Port of Los Angeles/Long Beach.  The Committee noted that three (3) of the subject individuals have been released to seek transfer by the San Francisco JPLRC.  The remaining four (4) individuals had yet to be released by the San Francisco JPLRC.
>
> As outlined in Supplement I to the PCLCD, the Committee agreed that the subject transfer requests remained pending at the JPLRC levels in both the Ports of San Francisco and Los Angeles.  Those who have been released by the San Francisco JPLRC may seek the approval of the Los Angeles JPLRC.  Those who have not yet been released to seek transfer must address their request with their homeport JPLRC.

On or about October 17, 2007, Defendant ILWU, through its counsel Jacob Rukeyser, responded to Plaintiffs' counsel's request.  (Ortiz Decl. ¶16).  ILWU's response, a true and correct copy of which is attached as Exhibit D to the Declaration of Ray Ortiz, reads in relevant part:

> As you know, under Supplement I of the Pacific Coast Longshore Contract Document, requests for transfers between ports are processed and decided by the local parties involved, not the Coast Parties.  The Joint Coast Labor Relations Committee has reaffirmed this principle any number of times.  We are accordingly forwarding your letter to local counsel to the parties to the Los Angeles-Long Beach Joint Port Labor Relations Committee.

Plaintiffs have taken no further action to bring their claims to either the San Francisco or the Los Angeles/Long Beach Joint Port LRCs.  (Ortiz Decl. ¶17).

## III.  ARGUMENT

**A.**    **Plaintiffs' First and Third Causes of Action, for Breach of Collective Bargaining Agreement and Injunction to Preserve Seniority Rights, are Barred by Plaintiffs' Failure to Exhaust Contractual Remedies, and are Subject to the CBA's Mandatory Grievance-Arbitration Procedures.**

As a general rule, individuals working under a collective bargaining agreement must first exhaust contractual grievance procedures before bringing an action for breach of that agreement.  *Carr, et. al v. Pacific Maritime Association,* 904 F.2d 1313, 1317 (9th Cir. 1990), *cert. denied,* 498 U.S. 1084 (1991); *Ritza v. ILWU,* 837 F.2d 365 (9th Cir. 1988).  Failure to do so "bars grievants from pursuing remedies in court."  *Carr, supra* at 1317.  Further, there is a strong federal policy favoring arbitration of labor disputes.  *See United Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 578 (1960); *United Brotherhood of Carpenters and Joiners of America, Local No. 1780 v. Desert Palace, Inc.,* 94 F.3d 1308, 1312 (9th Cir. 1996).  Courts have long recognized a presumption of arbitrability where the contract contains an arbitration clause.  *Southern Cal. Dist. Council of Laborers v. Berry Constr. Inc.,* 984 F.2d 340, 343 (9th Cir. 1993).

Courts will compel arbitration of the dispute where the parties have agreed to arbitrate grievances and where the agreement does not expressly exclude the subject of the dispute from arbitration.  *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 649 (1986).  Further, courts have construed broad arbitration clauses as granting an arbitrator the authority to determine arbitrability, in the first instance. *See, Desert Palace, Inc.,* 94 F.3d at 1310; *New England Mechanical, Inc. v. Laborers Local Union 294,* 909 F.2d 1339, 1345 (9th Cir.1990); *Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 v. Interstate Distributor Co.*, 832 F.2d 507, 510-511 (9th Cir. 1987); *Frederick Meiswinkel, Inc. v. Laborers' Union Local 261,* 744 F.2d 1374, 1377 (9th Cir.1984).

If a collective bargaining agreement requires that disputes arising under it be submitted to a joint labor/management committee, potential plaintiffs must first exhaust this step before suing in court, and a decision by the joint committee is entitled to just as much deference as an award issued by a third-party arbitrator.  In *General Drivers, Warehousemen & Helpers, Local No. 89 v. Riss & Co.,* 372 U.S. 517 (1963), the Supreme Court held that there is no distinction under federal law between final decisions by a joint labor-management committee and final decisions by an arbitrator:

> Thus, if the award at bar is the parties' chosen instrument for the definitive settlement of grievances under the Agreement, it is enforceable under § 301. And if the Joint Area Cartage Committee's award is thus enforceable, it is of course not open to the courts to reweigh the merits of the grievance.

*Id.* at 519.  One year later, the Court again upheld the decision of a joint labor-management committee, holding that "[t]he decision of the committee, reached after proceedings adequate under the agreement, is final and binding upon the parties, just as the contract says it is." *Humphrey v. Moore,* 375 U.S. 335, 342 (1964).  *See also, UPS v. Mitchell*, 451 U.S. 56, 60-61 (1981) (joint labor-management committee with power to issue final and binding awards under labor contract functions as arbitrator under § 301); *Kemner v. District Council of Painting & Allied Trades No. 36*, 768 F.2d 1115, 1120 (9th Cir. 1985) (joint committee's award was final and binding under contract); *Local Freight Drivers v. Braswell Motor Freight Lines, Inc.*, 422 F.2d 109, 114 (9th Cir. 1970) (same).

In the instant case, all of Plaintiffs' claims arise from Defendants' alleged denials of Plaintiffs' requests to transfer their Registration from Local 10 in the San Francisco Bay Area to Local 13 at the ports of Los Angeles and Long Beach.  (Complaint ¶¶ 14-16, 19).  Plaintiffs allege that the fact that they have not been allowed to transfer violates Supplement I of the PCLCD.  (Complaint ¶¶ 19, 24, 42).  Plaintiffs also appear to be arguing that the fact they

have not been allowed to transfer amounts to "discrimination" against them because of their non-membership in Local 13.  *Id.*  Plaintiffs' claims are thus based entirely on rights to which they claim to be entitled under the PCLCD.  The PCLCD provides remedies up to and including binding arbitration for individuals who believe their rights under it have been violated.

In *Carr, supra*, more than one hundred plaintiffs sought to bring claims against the PMA, ILWU, and Local 13 for alleged violations of Section 13 of the PCLCD.  904 F.2d at 1316.  The *Carr* plaintiffs advanced a number of reasons why they believed they should be exempted from the general rule requiring them to first exhaust internal remedies, all of which were rejected by the court.  The court held that to allow the *Carr* plaintiffs to avoid the contractual grievance procedures "would create perverse incentives to avoid grievance procedures that would undermine our traditional deference to private dispute resolution in labor relations."  *Id.* at 1318.

Plaintiffs in the instant case have similarly failed to exhaust internal remedies under the PCLCD.   Section 13 of the PCLCD and Section 1 of Supplement I to the PCLCD clearly state that disputes regarding transfers or alleged discriminatory denials of transfer requests must first be submitted to the Joint <u>Port</u> LRC for resolution.  Plaintiffs allege that they complied with this step by "appeal[ing] Local 13's failure to process their transfer requests to the JPLRC in Los Angeles-Long Beach."  (Complaint ¶33).  However, the very exhibit upon which Plaintiffs rely for this allegation completely undercuts the allegation.  Exhibit A to Plaintiffs' Complaint is a July 17, 2007 letter from Plaintiffs to the Secretary and Treasurer of Local 13 requesting that their transfer requests be processed.  Plainly, this was not a letter to the Joint Port LRC.

Further, Plaintiffs, by their own admission, then took their claims to the Joint <u>Coast</u> LRC, by letter dated September 5, 2007. (Complaint ¶34, Exhibit B to Complaint). Plaintiffs' Complaint fails to mention that the Joint Coast LRC did act on their request, at the September 27, 2007 Joint Coast LRC meeting. (Ortiz Decl. ¶15, Exhibit C to Ortiz Decl.). The Joint Coast LRC determined—correctly—that Plaintiffs had not properly exhausted their remedies before the Joint Port LRCs, and that therefore the matter was not properly before the Joint Coast LRC. *Id.* Plaintiffs were informed of the Joint Coast LRC decision on their request by letter dated October 17, 2007. (Ortiz Decl. ¶16, Exhibit D to Ortiz Decl.). Inexplicably, despite receiving this letter, Plaintiffs took no further action to bring their claims before the Joint Port LRC. (Ortiz Decl. ¶17). Instead, they brought this action.

Plaintiffs now allege that they "are aware of no other administrative options or remedies that they can exercise or pursue." (Complaint ¶34). Plaintiffs' purported ignorance of their options at this point does not excuse their failure to exercise them. Having failed to bring their claims to the Joint Port LRC, even after being informed by the Joint Coast LRC of the necessity of doing so, Plaintiffs are barred from asserting their § 301 claim in this Court. Defendants therefore ask that the Court dismiss Plaintiff's breach of contract claim for failure to exhaust contractual remedies, and that the Court order Plaintiffs to submit their grievances to the Los Angeles-Long Beach JPLRC for resolution.

**B.** <u>**Plaintiffs' Second Cause of Action, for Violation of the Labor-Management Reporting and Disclosure Act, Must Be Dismissed for Failure to State a Claim Upon Which Relief May Be Granted**</u>

Plaintiffs' Second Cause of Action alleges that the denial of the transfer rights they claim under the PCLCD also deprives "Plaintiffs of their rights to equal treatment by the ILWU contrary to the Labor-Management Reporting and Disclosure Act [LMRDA]."

(Complaint ¶48).  In particular, Plaintiffs allege, "Such discrimination against fully registered, dues-paying members of the International Union is not contemplated by, or authorized in the terms of Supplement I of the PCLCD relating to transfers and deprives dues-paying members like Plaintiffs the benefit of the 'joint coast registration' and freedom from discrimination guaranteed by the PCLCD and by §101 LMRDA." (Complaint ¶49).   In this regard, Plaintiffs explain that "this discrimination against union members in favor of non-member casuals violates the basic tenets of the seniority system." (*Id*.)

This claim fails because nothing in the LRMDA provides a right of action against an employer or a labor organization for a breach of alleged seniority or contract rights set out in a collective bargaining agreement.  The LMRDA right to "equal treatment" asserted by Plaintiffs applies only to the right of members of a labor organization "within such organization" to "[1] nominate candidates, [2] to vote in elections or referendums of the labor organization, [3] to attend membership meetings, and [4] to participate in the deliberations and voting upon the business of such meetings internal Union matters."  29 U.S.C. §411(a)(1).

It is well established that Section 101 of the LMRDA "is no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote" for officers within the union. *Stelling v International Brotherhood of Electrical Workers*, 587 F.2d 1379, 1384, cert denied sub nom, *Darby v. International Brotherhood of Electrical Workers*, 442 US 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979), quoting from *Calhoun v. Harvey*, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964).  The statute does not provide any substantive rights and certainly not as to collective bargaining agreements.  *Id*. (holding that Section 101 of the LMRDA does not provide any substantive right to vote on ratification of a collective bargaining agreement), *see also, Sergeant v. Inlandboatmen's*

*Union of the Pacific*, 346 F.3d 1196, 1201 (9th Cir. 2003) ("subsection 101(a)(1) is not a substantive grant of voting rights….it requires *equal* voting rights: it requires that rights given to some members must be given to all, subject only to reasonable rules or regulations.");

*Local 1052 v. L.A. County Council of Carpenters*, 944 F.2d 610, 615 (9th Cir.1991) (holding that Section 101 of the LMRDA does not provide any substantive right to vote on union mergers). Therefore, Plaintiffs claim of denial of their seniority rights under the PCLCD fails to state a cause of action under the LMRDA.

Moreover, "Section 101(a)(1) is an antidiscrimination provision, pure and simple."

*Ackley v. Western Conference of Teamsters*, 958 F.2d 1463 (9th Cir. 1992)(union's failure to disclose material changes in a collective bargaining agreement before ratification vote did not state a claim for violation of the LMRDA since all members were equally affected by the nondisclosure). Accordingly, "To state a claim under section 101(a)(1), a union member must allege a denial of rights accorded *to other members*." *Id*. (Emphasis added). Here, Plaintiffs allege that Defendants have discriminated against them, not as to other Union members, but rather as to "non-member casuals." On its face, Plaintiffs' theory fails to state a proper claim of discrimination under the LMRDA.

Further, no claim against Defendant PMA can be stated under the LMRDA in any case, because PMA is not a labor organization. Accordingly, Plaintiffs' second cause of action fails to state a proper claim as a matter of law and must, therefore, be dismissed without leave to amend.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request an order compelling Plaintiffs to submit their claims for alleged breaches of the PCLCD to the Los Angeles/Long

1    Beach Joint Port LRC, and dismissing their claims under the LMRDA.

2         Dated:  March 3, 2008          Respectfully submitted,

3                                        LEONARD CARDER LLP

4

5

6                                        By: Phil A Thomas
                                         Attorneys for Defendant International Longshore
7                                        and Warehouse Union

8

9                                        HOLGUIN & GARFIELD, LLP

10

11                                       By: John Kim
                                         Attorneys for Defendant Local 13,
12                                       International Longshore and Warehouse Union

13

14                                       MORGAN LEWIS & BOCKIUS, LLP

15

16                                       By: Jason M. Steele
                                         Attorneys for Defendant Pacific Maritime
17                                       Association

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO COMPEL EXHAUSTION OF CONTRACTUAL REMEDIES
CASE NO. CV-08-0119 TEH