MARK F. SULLIVAN, State Bar No. 111011
LAMDIEN T. LE, State Bar No. 185331
SULLIVAN TAKETA LLP
31351 Via Colinas, Suite 205
Westlake Village, California 91362-3755
Telephone: (818) 889-2299
Facsimile: (818) 889-4497
E-mail:     mark.sullivan@calawcounsel.com
            dien.le@calawcounsel.com

DENNIS L. KENNELLY, State Bar No. 064916
LAW OFFICES OF DENNIS L. KENNELLY
1030 Curtis Street, Suite 200
Menlo Park, California 94025
Telephone: (650) 853-1291
Facsimile: (650) 854-7839
E-mail:     secretarymim@aol.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSÉ AYALA, DEANDRE WHITTEN, LEROY PHILLIPS, GONZALO TORRES, JOSE LINAREZ, KIMANI STAFFORD, AND JOSEPH LAWTON, individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>PACIFIC MARITIME ASSOCIATION, a California corporation; INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, a labor organization; and INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 13, a labor organization; and DOES 1 through 10,<br><br>Defendants. | Case No.: CV-08-0119-TEH<br>[Complaint Filed: January 7, 2008]<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL EXHAUSTION OF CONTRACTUAL GRIEVANCE ARBITRATION PROCESS AND TO DISMISS FOR FALURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Declarations of Jose Ayala, Deandre Whitten, Leroy Phillips, and Sharyn Casaly Filed Concurrently Herewith]<br><br>DATE:      April 21, 2008<br>TIME:      10:00 a.m.<br>CTRM:      19 |

# **TABLE OF CONTENTS**

I.  INTRODUCTION ............................................................................................. 1

    A.  Summary of Facts. ............................................................................... 1

        1.  Plaintiffs' informal efforts in getting transfer. .................................. 1

        2.  Approval of Plaintiffs' transfer by Local 10. ................................... 2

        3.  Plaintiffs' attempts to get on the meeting agenda of the Los Angeles Port Committee. ......................................................... 3

        4.  Plaintiffs' appeal to the Coast Committee because of the Los Angeles Port Committee's lack of response. ....................................... 4

    B.  Factual Inaccuracies & Other Problems with the Ortiz Declaration Submitted by Defendants in Support of Their Motion. .................................... 5

II.  ISSUES TO BE DECIDED ............................................................................... 8

III.  ARGUMENT ................................................................................................... 8

    A.  Plaintiffs' First and Third Causes of Action Are Properly Before the Court. ................................................................................................... 8

        1.  Plaintiffs have attempted to exhaust all their contractual grievance procedures. ....................................................................... 8

        2.  Alternatively, Plaintiffs should be excused from any further exhaustion. ..................................................................................... 11

            (a)  Exhaustion is excused if Defendants repudiate their own procedures. ........................................................................... 11

            (b)  Exhaustion is excused if Defendants control grievance procedures. ........................................................................... 12

            (c)  Exhaustion is excused if Defendants breach their duty of fair representation. .............................................................. 13

            (d)  Exhaustion is excused if union officials are hostile. .............. 15

            (e)  Exhaustion is excused if internal grievance procedures are inadequate. ....................................................................... 16

            (f)  Exhaustion is excused if completing grievance procedures would lead to unreasonable delay. ....................... 16

    B.  Plaintiffs' Second Cause of Action Has Properly Stated a Claim Against Defendants for Violation of the Labor-Management Reporting and Disclosure Act. ................................................................ 17

IV.  CONCLUSION ................................................................................................ 20

i

# TABLE OF AUTHORITIES

**Federal Cases**

Beriault v. Local 40, Super Cargoes & Checkers of the Int'l Longshoremen's &
Warehousemen's Union,
501 F.2d 258 (9th Cir. 1974)..................................................................... 11

Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6,
493 U.S. 67 (1989) ..................................................................................... 17

Castaneda v. Dura-Vent Corp.,
648 F.2d 612 (9th Cir. 1981)...................................................................... 14

Clayton v. International Union, United Auto., Aerospace & Agric. Implement
Workers of Am.,
451 U.S. 679 (1981) ............................................................................ 9, 15, 16

Dean v. Trans World Airlines, Inc.,
924 F.2d 805 (9th Cir. 1991)...................................................................... 12

Diaz v. International Longshore & Warehouse Union, Local 13,
474 F.3d 1202 (9th Cir. 2007)..................................................................... 14

Donovan v. Hotel, Motel & Restaurant Employees & Bartenders Union, Local 19,
Hotel & Restaurant Employees & Bartenders Int'l Union, AFL-CIO,
700 F.2d 539 (9th Cir. 1983)...................................................................... 20

Fontanilla v. City & County of San Francisco,
987 F. Supp 1206 (N.D. Cal. 1997) ........................................................... 14

Gavin v. Structural Iron Workers Local No. 1 of Int'l Ass'n of Bridge, Structural &
Ornamental Iron Workers,
553 F.2d 28 (7th Cir. 1977)........................................................................ 18

Glover v. St. Louis-S.F. Railway Co.,
393 U.S. 324 (1969) ............................................................................... 9, 12

Herman v. United Bhd. of Carpenters & Joiners of Am., Local Union No. 971,
60 F.3d 1375 (9th Cir. 1995)......................................................... 8, 13, 14, 15

Hughes v. Local No. 11 of Int'l Ass'n of Bridge, Structural & Ornamental
Ironworkers, AFL-CIO,
287 F.2d 810 (3d Cir. 1961).................................................................... 17

Lerwill v. Inflight Motion Pictures, Inc.,
582 F.2d 507 (9th Cir. 1978)...................................................................... 9

Moore v. Local 569 of Int'l Bhd. of Elec. Workers,
53 F.3d 1054 (9th Cir. 1995)..................................................................... 20

Parish v. Legion,
450 F.2d 821 (9th Cir. 1971)............................................................... 17, 18

Pile Drivers, Divers, Carpenters, Bridge, Wharf & Dock Builders Local Union 34 v.
Northern Cal. Carpenters Reg'l Council,
992 F. Supp. 1138 (N.D. Cal. 1997) ......................................................... 11

Seay v. McDonnell Douglas Corp.,
427 F.2d 996 (9th Cir. 1970)....................................................................... 9

Stevens v. Moore Business Forms, Inc.,
18 F.3d 1443 (9th Cir. 1994)..................................................................... 15


**Federal Statutes**

29 U.S.C. § 401 ......................................................................................... 19

29 U.S.C. § 402 ......................................................................................... 20


**State Cases**

In re American Nat'l Ins. Co., 242 S.W.3d 831 (Tex. App. 2007)........................... 12, 13

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL EXHAUSTION & TO DISMISS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendants contend that Plaintiffs have not exhausted their grievance procedures under the collective bargaining agreement – the Pacific Coast Longshore Contract Document ("Longshore Contract").

## A.    Summary of Facts.

### 1.    Plaintiffs' informal efforts in getting transfer.

Plaintiffs' exhaustion efforts regarding their request for transfer started as early as 2003.  On or about November 27, 2003, Plaintiff Leroy Phillips was awaiting an audience with the Local 13 Executive Board at the Local 13 Hall in Wilmington, California.  See Phillips Decl., ¶ 5 filed concurrently herewith.  While the Executive Board was meeting behind closed doors, Plaintiff Phillips was waiting outside of their meeting place with a number of fellow "visitors", including Plaintiff Jose Ayala.  See id.  Even though the doors were closed, Plaintiff Phillips could clearly hear the discussions that the Executive Board members were having.  See id.  When the subject of what to do about the requests that a number of Local 10 members had made to transfer to the Port of Los Angeles-Long Beach under Supplement I came up, Plaintiff Phillips heard a voice he knew to be Local 13's then-Vice President and Executive Board member Tim Perdue speak up.  See id.  Plaintiff Phillips clearly heard Mr. Perdue say that he would "Flood the Hall before I [Perdue] allowed a Local 10 man to transfer to Local 13. This is our Port."  See id.  Plaintiff Phillips understood Mr. Perdue's comment to mean that he would create enough new members of Local 13 through the elevation of "Casuals" to "B" men to prevent there being any work left for the transferred men.  See Phillips Decl., ¶ 6.

In September 2005, Plaintiffs sent a joint letter (via certified mail with return

1  receipt requested) to the International Longshore and Warehouse Union ("ILWU")

2  Coast Committee members and other officers, stating that they have been requesting

3  transfer, have followed all the procedures for transfer, but have not received any

4  official response to the request. See Ayala Decl., ¶ 8 & Exh. "3" filed concurrently

5  herewith. Copies of this letter, signed by Plaintiffs on September 15 and 16, 2005,

6  were also sent (via certified mail with return receipt requested) to officers of Local 10

7  and Local 13. See id. Nothing happened for the next two years. See Ayala Decl. ¶ 11.

8      In March 2007, after waiting eighteen months for a response to the September

9  2005, letter, Plaintiffs began the formal process of following Longshore Contract,

10  Supplement I, as literally as possible. See id.

## 2.    Approval of Plaintiffs' transfer by Local 10.

12      Plaintiffs first requested the approval of Local 10 and of the San Francisco-

13  Oakland Joint Port Labor Relations Committee ("San Francisco Port Committee") for

14  transfer to the Port of Los Angeles-Long Beach. See id. Plaintiffs received the

15  necessary approval from the San Francisco Port Committee, as stated in the minutes of

16  March 29, 2007. See Ayala Decl., ¶ 12 & Exh. "4." The specific request and approval

17  is set out in detail at page 2 of Exhibit "4." Local 10 indicated that they would be

18  forwarding the transfer approval of the San Francisco Port Committee to Local 13. See

19  id.

20      Plaintiffs heard nothing further and, on May 24, 2007, at Plaintiffs' request, Local

21  10's Secretary-Treasurer, Farless F. Dailey, III, forwarded all of Plaintiffs' names to the

22  Local 13 Secretary-Treasurer Frank Ponce de Leon as having been approved for

23  transfer. See Ayala Decl., ¶ 13 & Exh. "5"; Exh. "A" (on third page) to Plaintiffs'

24  Complaint. This letter was very direct in requesting consideration by the Port of Los

25  Angeles – Long Beach Joint Port Labor Relations Committee ("Los Angeles Port

26  Committee"). See id. It specifically states: "Please address this issue at your next LRC

27  Meeting." See id.

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL EXHAUSTION & TO DISMISS

### 3. **Plaintiffs' attempts to get on the meeting agenda of the Los Angeles Port Committee.**

In an effort to get on the meeting agenda of the Los Angeles Port Committee, Plaintiff Ayala attempted to contact Mike E. Freese, who is the Local 13 representative sitting on the Los Angeles Port Committee. See Ayala Decl., ¶ 14. Unsuccessful in reaching Mr. Freese, Plaintiff Jose Ayala then left a message with Mr. Freese's secretary regarding getting on the Los Angeles Port Committee agenda. See id.

On or about June 6, 2007, Plaintiff Ayala received a voicemail message from Mr. Freese, essentially stating that he was the gatekeeper in terms of getting issues put on the agenda, and that it would do Mr. Ayala no good to go around Mr. Freese by speaking to his secretary. See id.; Casaly Decl., ¶ 2 filed concurrently herewith. Mr. Freese states that "[w]e will address this issue . . .", but the tone is sarcastic if not intimidating, conveying the "get lost" message that was borne out by the subsequent inaction that had been the fate of all prior requests for a transfer.[1] See id.

After receiving this voicemail, Plaintiff Ayala called Mr. Freese back and asked him if he was denying Ayala the right to go to the Los Angeles Port Committee. See Ayala Decl., ¶ 15. Mr. Freese was silent and did *not* give any further response to this question. See id. Other than this communication, Plaintiffs never received any other response from the Los Angeles Port Committee concerning their transfer request. See Ayala Decl., ¶ 14.

During the first half of 2007, Plaintiff Whitten telephoned the Pacific Maritime Association ("PMA") office in the Los Angeles area. See Whitten Decl., ¶ 2 filed concurrently herewith. In that call, the PMA official who answered told him that PMA could *not* put him on the Los Angeles Port Committee agenda on the subject of a

---

[1] Plaintiffs have transcribed Mr. Freese's voicemail (see Casaly Decl.) and have attached a CD containing the audio recording of the voicemail with the Court's courtesy copy of this Opposition. See Casaly Decl., ¶ 3. All parties have also received a copy of this CD audio recording via overnight mail. See id. Plaintiffs request that the Court hear the audio recording in order to fully appreciate Mr. Freese's tone of voice.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL EXHAUSTION & TO DISMISS**

1  transfer. <u>See</u> <u>id.</u>  Rather, Plaintiff Whitten was told, it was only Local 13 of the ILWU

2  (the local based in Los Angeles-Long Beach) and their officers who could do this. <u>See</u>

3  <u>id.</u>

4       Plaintiff Whitten subsequently talked to Local 13 Secretary-Treasurer Frank

5  Ponce de Leon about being placed on the agenda for the consideration of his transfer

6  request. <u>See</u> Whitten Decl., ¶ 3.  Mr. Ponce de Leon told Plaintiff Whitten that he had

7  to appear before the Local 13 Executive Board for the approval of any transfer request

8  and then he had to seek the approval of the Union Membership at a Union Meeting

9  before his transfer request would be placed on the Los Angeles Port Committee Agenda.

10  <u>See</u> <u>id.</u>  Plaintiff Whitten told Mr. Ponce de Leon that this was a contract issue (i.e., a

11  matter governed by the express terms of Longshore Contract, Supplement I) and not an

12  Executive Board (i.e., discretionary or policy) issue. <u>See</u> <u>id.</u>  Mr. Ponce de Leon

13  responded by accusing Plaintiff Whitten of trying to set up a lawsuit against the Local

14  Union. <u>See</u> <u>id.</u>

15       Then, Plaintiffs sent a letter on July 17, 2007, to ILWU Local 13, expecting that

16  their grievance would be addressed by the Los Angeles Port Committee according to

17  section 17.41 of Longshore Contract. <u>See</u> Ayala Decl., ¶ 16 & Exh. "6."  In this letter,

18  Plaintiffs requested that "the matter be addressed at the next meeting of the Los

19  Angeles-Long Beach Joint Port Labor Relations Committee (Los Angeles-Long Beach

20  JPLRC)." <u>See</u> Exh. "A" of Plaintiffs' Complaint; Exh. "6" of Ayala Decl.  Plaintiffs

21  never received any response from Defendants to this July 17, 2007, letter.

22
23      **4.**    <u>**Plaintiffs' appeal to the Coast Committee because of the Los Angeles**</u>
        <u>**Port Committee's lack of response.**</u>

24       Plaintiffs then had no choice but to seek relief from the next level.  Plaintiffs,

25  through their counsel, sent a letter on September 5, 2007, addressed to the Joint Coast

26  Labor Relations Committee ("Coast Committee") through its designated representatives

27
28

1   (Robert McEllrath, ILWU President, and Jim McKenna, PMA President).  See Exh. "B"

2   of Plaintiffs' Complaint; Ayala Decl., ¶ 17 & Exh. "7."

3         The response that Plaintiffs received from counsel representing the ILWU on

4   October 17, 2007, stated that the Coast Committee will be forwarding Plaintiffs'

5   September 5, 2007, letter to the Los Angeles Port Committee.  See Exh. "D" of Ortiz

6   Decl. in support of Defendants' Motion.

7         Despite this assurance, after this October 17, 2007, letter from the ILWU's

8   counsel, neither Plaintiffs nor their attorneys heard anything further from the Coast

9   Committee, the Los Angeles Port Committee, Local 13 or any other entity or body.  See

10  Ayala Decl., ¶ 19.

11        Plaintiffs are informed that at least three former presidents of Local 10 have had

12  discussions with Local 13 officers over the years about facilitating the transfer of Local

13  10 members to Los Angeles, but their efforts have not borne fruit.  See Ayala Decl.,

14  ¶ 20.

15  **B.    Factual Inaccuracies & Other Problems with the Ortiz Declaration**

16  **        Submitted by Defendants in Support of Their Motion.**

17        The Declaration of Ray Ortiz, Jr. submitted in support of Defendants' Motion to

18  Compel Exhaustion of Contractual Grievance Arbitration Process and to Dismiss for

19  Failure to State a Claim upon Which Relief May Be Granted (the "Motion") has at least

20  two glaringly inaccurate statements and other misleading problems, which are revealing

21  in terms of Defendants' credibility in this case.

22        First, Mr. Ortiz states:  "Although the Joint Port LRC evaluates hiring needs on a

23  quarterly basis, in practice, additions to the Identified Casual lists have occurred only

24  sporadically at intervals of several years."  See Ortiz Decl., ¶ 7.  Nothing could be

25  further from the truth.  Plaintiffs have received copies of Bulletins from Local 13

26  evidencing lists upon lists of casuals (identified by registration numbers) who have been

27  elevated to registered B Man status since January 2005.  See Ayala Decl., ¶ 6 & Exh.

28  "2."  Further, Plaintiffs have received statistics from 2000 through 2007 showing the

1  number of active registrants in Local 13. See id. & Exh. "1." These statistics show a

2  constant increase in the number of active registrants from year to year, which further

3  indicates the increasing trend in elevating casuals. See id. Certainly, these documents

4  show more than "sporadic" additions to the Identified Casual lists.

5      Second, Ortiz's Declaration attaches and quotes from the minutes of a Coast

6  Labor Relations Committee meeting on September 27, 2007: "The remaining four (4)

7  individuals had yet to be released by the San Francisco JPLRC." See Ortiz Decl., ¶ 15

8  & Exh. "C" attached thereto. Again, such statement is completely false, as evidenced

9  by the letter, dated May 24, 2007, from Local 10's Secretary-Treasurer to Local 13's

10  Secretary-Treasurer, stating that all seven members (Plaintiffs) had been cleared to

11  request transfer to Local 13. See Exh. "A" of Plaintiffs' Complaint; Ayala Decl., ¶ 13

12  & Exh. "5." Moreover, Plaintiffs have obtained the Minutes of Regular Class "A"

13  Meeting of the Longshore Labor Relations Committee of San Francisco, dated March

14  29, 2007, stating that Plaintiffs may petition Local 13 for transfer. See Ayala Decl.,

15  ¶ 12, 18 & Exh. "4."

16      Third, Ortiz's Declaration states that section 13 of the Longshore Contract

17  contains procedures for resolving allegations of discrimination. See Ortiz Decl., ¶ 11.

18  However, this paragraph, which quotes from sections 13.1-13.3 of the Longshore

19  Contract, is misleading at best. At first glance, one would think that section 13.2 is

20  applicable to all grievances and complaints alleging incidents of discrimination as stated

21  therein. However, a careful reading of section 13.3 of the Longshore Contract reveals

22  that such "discrimination claims seeking elevation, registration or selection for casual

23  status, and discrimination claims based on … membership or non-membership in the

24  Union, or activity for or against the Union or absence thereof, are **not to be filed under**

25  **the Special Section 13.2 Grievance Procedures, but instead are to be filed and**

26  **processed with the Joint Port Labor Relations Committee (JPLRC) under the**

27  **grievance procedures in Section 17.4 of the PCLCA."** See Ayala Decl., ¶ 10.

28

1    Therefore, Ortiz's citation and quotation to sections 13.1 and 13.2 are irrelevant to the

2    analysis here and are misleading window dressing because the right to obtain an

3    arbitration that is extended to race, gender, religious discrimination, etc. grievants is *not*

4    extended to transfer applicants. The latter must clear the gatekeepers of the local union

5    to the Los Angeles Port Committee and then, if denied by the Los Angeles Port

6    Committee, grieve back to the same Los Angeles Port Committee.

7         Fourth, Ortiz's quotation of section 17.41 of the Longshore Contract is also

8    misleading because of what he has omitted from his declaration. See Ortiz Decl., ¶ 12.

9    Although section 17.41 does provide for the filing and processing of a grievance in the

10    case of a denial of a transfer, what Ortiz has omitted as indicated by the ellipsis is the

11    following: **"Such grievance shall be timely if presented within 10 days of the**

12    **occurrence of the alleged discrimination."** The reason why this sentence is important

13    here it clearly shows how, both procedurally and substantively, the grievance procedure

14    under section 17.41 is simply an exercise in ad hoc discretion by the union officers.

15    Given the habitual delay by Defendants in processing transfers or responding to

16    complaints, any grievance is virtually certain to always be late and, if it is, relief is a

17    matter solely within the discretion of the Los Angeles Port Committee (section 17.411).

18         Fifth, Mr. Ortiz's Declaration fails to reference the next provision of

19    Longshore Contract, Supplement I, paragraph 1.7, which, in its second sub-paragraph

20    makes it clear that the duty to give consideration to an applicant for transfer is

21    *mandatory* and *not* purely discretionary, even in the case of junior A Men and newly

22    elevated B Men:

> 1.7 Fully registered men having less than 1 year of such status and limited registered men may apply for inclusion on the limited registered list of another port and consideration shall be given to the work and availability record under the Pacific Coast Longshore Agreement in taking action on such applications.
>
>     An application of such longshoreman for limited registration in the second port *shall be considered without*

7

> *discrimination* based upon his failure to be a resident of the
> port to which application is made provided the Joint Port Labor
> Relations Committee of the port where he has limited
> registration certifies to the Joint Port Labor Relations
> Committee of the port where application is made that the
> applicant has a fully satisfactory record as a longshoreman in
> the port where registered and that there is no reason to interfere
> with his transfer that is deemed sufficient by the Joint Port
> Labor Relations Committee . . . .

(Emphasis added.). <u>See</u> Ayala Decl., ¶ 4.

## II.   <u>ISSUES TO BE DECIDED</u>

1.    Have Plaintiffs attempted to exhaust their grievance procedures under the Longshore Contract, or alternatively, are Plaintiffs excused from exhaustion based on futility?

2.    Have Plaintiffs properly stated a claim for which relief may be granted under the Labor-Management Reporting and Disclosure Act ("LMRDA")?

## III.   <u>ARGUMENT</u>

**A.    Plaintiffs' First and Third Causes of Action Are Properly Before the Court.**

**1.    <u>Plaintiffs have attempted to exhaust all their contractual grievance procedures.</u>**

Defendants contend that Plaintiffs have failed to exhaust their contractual grievance procedures before filing suit. But employees are required, *not to exhaust,* but to *attempt to exhaust.*

"Generally, an employee seeking a remedy for a breach of a collective bargaining agreement must *attempt to exhaust* any grievance and arbitration procedures established by that agreement prior to bringing suit." <u>Herman v. United Bhd. of Carpenters & Joiners of Am., Local Union No. 971</u>, 60 F.3d 1375, 1380 (9th Cir. 1995) (emphasis

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL EXHAUSTION & TO DISMISS

1  added) (citing <u>Clayton v. International Union, United Auto., Aerospace & Agric.</u>

2  <u>Implement Workers of Am.</u>, 451 U.S. 679, 680-82 (1981)).

3         Where a union controls grievance procedures, an employee who makes repeated

4  complaints to his union and whose complaints are ignored satisfies the "attempt to

5  exhaust" requirement.  <u>See Lerwill v. Inflight Motion Pictures, Inc.</u>, 582 F.2d 507, 511

6  (9th Cir. 1978) (where "[t]here was substantial evidence that various employees made

7  oral and written complaints to the Union, and no action was taken[, t]his fully satisfied

8  any requirement that the employees seek assistance from the Union."); <u>Seay v.</u>

9  <u>McDonnell Douglas Corp.</u>, 427 F.2d 996, 1002 (9th Cir. 1970) (citing <u>Glover v. St.</u>

10 <u>Louis-S.F. Ry. Co.</u>, 393 U.S. 324, 330-331 (1969) ("Where a union would be required

11 "to pass on claims by the very employees whose rights they have been charged with

12 neglecting and betraying … the attempt to exhaust contractual remedies, required under

13 Maddox, is easily satisfied by petitioners' repeated complaints to company and union

14 officials, and no time-consuming formalities should be demanded of them.")).

15       Here, Plaintiffs repeated and ignored complaints to the Los Angeles Port

16 Committee have satisfied the requirement that they attempt to exhaust grievance

17 procedures before filing suit.  On July 17, 2007, Plaintiffs wrote to Local 13 asking it to

18 place Plaintiffs' transfer requests on the agenda of the next meeting of the Los Angeles

19 Port Committee.  <u>See</u> Ayala Decl., ¶¶ 8, 11-20.  Almost two months passed *without*

20 communication from the Los Angeles Port Committee.  <u>See id.</u>  On September 5, 2007,

21 Plaintiffs treated the Los Angeles Port Committee's silence as a refusal, and wrote a

22 letter appealing the decision to the Coast Committee.  <u>See id.</u>

23       On October 17, 2007, the ILWU's counsel wrote to Plaintiffs, stating that the

24 Coast Committee would be forwarding Plaintiffs' September 5, 2007, letter to the Los

25 Angeles Port Committee.  <u>See</u> Exh. "D" of Ortiz Decl. in support of Defendants'

26 Motion.  Plaintiffs patiently waited for the Los Angeles Port Committee to process their

27

28

1    grievance, but heard nothing for three more months. See Ayala Decl., ¶ 19; Whitten

2    Decl., ¶ 4.

3       Defendants raise a number of spurious objections, none of which are convincing.

4       First, Defendants object that Plaintiffs July 17, 2007, letter did not constitute a

5    communication with the Los Angeles Port Committee, because it was addressed to

6    Local 13. But section 17.41 of the Longshore Contract, which requires that Plaintiffs

7    file a discrimination grievance with the appropriate Port Committee, does *not* specify

8    how such grievance should be filed or who it should be addressed to. Moreover, the

9    Los Angeles Port Committee is comprised of ILWU, Local 13 and the PMA. See Ayala

10    Decl., ¶¶ 9-11. In fact, Defendants admit in their Motion that the Los Angeles Port

11    Committee is "a joint labor-management committee comprised of representatives of the

12    PMA and the ILWU-affiliated local union in each port." See Defendants' Motion at p.

13    5. As such, it was reasonable for Plaintiffs to attempt to contact the Los Angeles Port

14    Committee by writing to ILWU Local 13 and by expressly requesting that Local 13

15    place the requests on the agenda of the next meeting of the Los Angeles Port

16    Committee. See Ayala Decl., ¶ 16. Prior to this point, Plaintiffs were never informed

17    by Local 13 or by anyone else that this was not the proper way to contact the Los

18    Angeles Port Committee. See Ayala Decl., ¶ 17.

19       Second, Defendants argue that Plaintiffs skipped a step in the grievance process

20    by going to the Coast Committee. But Defendants completely disregard both Local 10's

21    letter of May 24, 2007, to Local 13 requesting Los Angeles Port Committee approval of

22    the transfer, and Plaintiffs' July 17, 2007, letter also requesting such approval.

23    Moreover, the subsequent return of the grievance to the Los Angeles Port Committee

24    (as stated in Defendants' counsel's letter of October 17, 2007) resolved any procedural

25    problem.

26       Third, Defendants argue that, after being told that they should resolve the matter

27    before the Los Angeles Port Committee, Plaintiffs did nothing. But the ILWU's

28

October 17, 2007, letter assured Plaintiffs that the ILWU would itself transmit the matter to the Los Angeles Port Committee. For three months, Plaintiffs waited to hear from the Los Angeles Port Committee concerning their grievance. See Ayala Decl., ¶ 19; Whitten Decl., ¶ 4. Under section 17.411 of the Longshore Contract, six months would be the outside time limit after the "discrimination" in which to obtain judicial review. Plaintiffs justifiably feared that waiting further would only invoke a limitations/late filing claim by Local 13. Therefore, Plaintiffs should not now be penalized for trusting the ILWU to fulfill its promise and for waiting for the Los Angeles Port Committee to further process their grievance.

### 2. Alternatively, Plaintiffs should be excused from any further exhaustion.

There are exceptions to the exhaustion rule, which also would apply in this case.

#### (a) Exhaustion is excused if Defendants repudiate their own procedures.

First, exhaustion is excused when the conduct of the employer amounts to a repudiation of the contractual remedial procedures (i.e., the employer is estopped by its own conduct). See Beriault v. Local 40, Super Cargoes & Checkers of the Int'l Longshoremen's & Warehousemen's Union, 501 F.2d 258, 262 (9th Cir. 1974). Under such circumstances, an employee may obtain judicial review despite the failure to pursue contractual remedies. See id. As affirmed by **Chief Judge Thelton Henderson**, when a union operates a hiring hall, it occupies a double role as a representative and employer. See Pile Drivers, Divers, Carpenters, Bridge, Wharf & Dock Builders Local Union 34 v. Northern Cal. Carpenters Reg'l Council, 992 F. Supp. 1138, 1144 n.8 (N.D. Cal. 1997).

Here, Plaintiffs have been prevented from exhausting their contractual remedies based on the improper handling of their grievance from day one, as evidenced by the lack of any timely response from Defendants. Defendants have essentially repudiated their own contractual obligations and procedures under the Longshore Contract, and

1    should therefore be estopped from now requiring Plaintiffs to return to the same process

2    that they themselves ignored. It is obvious that Defendants decided not to take any

3    action concerning Plaintiffs' grievance and only now suggest, by filing this Motion, that

4    there may really be a remedy. It is clear from Defendants' inaction and gatekeeping

5    posture in this case, that they control the grievance procedures and have no intention of

6    letting the Local 10 members get to or past the Port of Los Angeles-Long Beach Los

7    Angeles Port Committee. See Ayala Decl., ¶¶ 8, 11-20; Whitten Decl., ¶¶ 2-3; Phillips

8    Decl., ¶¶ 3-6.

9              **(b)**    *Exhaustion is excused if Defendants control grievance procedures.*

10            Second, "repeated complaints to the union suffice to excuse exhaustion when the

11   *union controls grievance procedures.*" Dean v. Trans World Airlines, Inc., 924 F.2d

12   805, 810 (9th Cir. 1991) (emphasis added) (citing Glover v. St. Louis-S.F. Railway Co.,

13   393 U.S. 324, 330-31 (1969)). In Dean, because defendant consistently ignored

14   plaintiff's complaints, plaintiff received no meaningful response, and plaintiff's initial

15   attempts to pursue administrative remedies were unsuccessful, the court held the

16   plaintiff's failure to exhaust excused because it would have been futile for plaintiff to

17   purse these remedies further. See id. at 811.

18            Similarly, at least one recent state court of appeal has held that the arbitration

19   provisions in a union's collective bargaining agreement which gave the union absolute

20   control over whether to pursue an individual employee's complaint or claim to

21   arbitration were *not* effective waivers of the employee's right to bring action against the

22   employer. See In re American Nat'l Ins. Co., 242 S.W.3d 831, 835-36 (Tex. App.

23   2007). Accordingly, the court held that the trial court did *not* abuse its discretion by

24   *denying* motion to compel arbitration. See id. at 836.

25                      [I]n this type of **union-controlled grievance procedure**, an
                       employee who wished to sue her union, alleging a statutory
26                     discrimination claim, would be forced to try to persuade that
                       **same union** to pursue the grievance and arbitration procedure
27                     on her behalf, against itself. In any case, if the union
28

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL EXHAUSTION & TO DISMISS**

(predictably) should decide that it did not wish to pursue the employee's claim against **itself**, the employee would be denied access to any forum of relief. That is to say, the employee's only avenue for relief, arbitration, would be foreclosed, if the union refused to pursue the grievance/arbitration procedure to its conclusion.

…

This case therefore pointedly raises the precise concerns the United States Supreme Court expressed in *Alexander* and Chief Justice Posner described in *Pryner* regarding the conflict between a employee's right to pursue a statutory claim and a union's interest in protecting itself, as well as the perceived interests of the majority, within the collective-bargaining unit. In sum, in accordance with the rationale articulated by the United States Supreme Court in *Alexander*, the arbitration provision in the Agent's Agreement **cannot** be used to compel Liano to arbitrate the discrimination claim she has alleged against her employer, as it is **not** an effective waiver of her right to pursue her claim in court.

Id. at 836 (italics in original) (bold emphasis added).

Like the cases cited above, here Defendants (specifically the ILWU and its Local 13) are given largely-unfettered discretion under the terms of Longshore Contract and thus exclusive control Plaintiffs' grievance claim. Here, as in American Nat'l Ins. Co., Plaintiffs would have to grieve to the *same* decision-making body (Los Angeles Port Committee) that receives and decides a transfer request. See Ayala Decl., ¶ 10. Given such situation, the Court should *deny* Defendants' motion to compel here.

Here, the evasive conduct and statements by the union (particularly, from Mr. Freese and Mr. Ponce de Leon) affirmatively establish that it controls the grievance procedure. See Ayala Decl., ¶ 14; Casaly Decl., ¶ 2; Whitten Decl., ¶ 3.

### (c) *Exhaustion is excused if Defendants breach their duty of fair representation.*

Third, exhaustion is excused if the union breaches its duty of fair representation. See Herman, 60 F.3d at 1381; Castaneda v. Dura-Vent Corp., 648 F.2d 612, 617-18 (9th

---

1 Cir. 1981) ("Examples where this exception would apply are where the grievance

2 process fundamentally malfunctions because of the manner in which the union has

3 handled the grievance, or where a union's conduct in *processing*, or its failure to

4 process, grievances has made it futile to try to exhaust grievance procedures." (internal

5 citation omitted) (emphasis added)).

6      A union breaches its duty of fair representation "if its actions in resolving a union

7 member's claim are 'arbitrary, discriminatory, or in bad faith' toward that member."

8 Herman, 60 F.3d at 1380 (9th C. 1995). "This standard may be met when the union

9 'arbitrarily ignores a meritorious grievance or processes it in a perfunctory fashion'", or

10 where its acts or omissions reflect reckless disregard for the rights of the individual

11 employee. Id. In Herman, the court found it "highly arbitrary for Herman's union to

12 ignore her grievance or to simply let it *languish in limbo*. Moreover, the union's

13 treatment of Herman's claim appears to rise above mere negligence because it failed to

14 take action notwithstanding the *continual prodding of Herman and her attorney*, and

15 because it *failed to offer any explanation* for its nonfeasance." Id. (emphasis added).

16      Here, Plaintiffs' grievance, like that in Herman, was left to languish in limbo by

17 Defendants, despite the constant prodding by Plaintiffs and their counsel. See Exhs.

18 "A" & "B" of Plaintiffs' Complaint; Exhs. "3", "6", & "7" of Ayala Decl. To date,

19 Defendants have failed to offer any explanation as to why Plaintiffs' requests and

20 grievance have been continuously ignored.

21      "[A] union's actions are arbitrary only if, in light of the factual and legal

22 landscape at the time of the union's actions, the union's behavior is so far outside a

23 'wide range of reasonableness' … as to be irrational." Fontanilla v. City & County of

24 San Francisco, 987 F. Supp 1206, 1220 (N.D. Cal. 1997). "[I]n order to comply with its

25 duty [of fair representation], a union must conduct some *minimal investigation* of

26 grievances brought to its attention." Diaz v. International Longshore & Warehouse

27 Union, Local 13, 474 F.3d 1202, 1207 (9th Cir. 2007) (emphasis added). In Diaz, the

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL EXHAUSTION & TO DISMISS

1  court held that the exclusion of members from hiring hall list and the failure to

2  *investigate* grievances pertaining to the operation of the hiring hall would breach the

3  duty of fair representation.[2] Id.

4      Here, Plaintiffs have received no indication that Defendants have conducted any

5  investigation, even if minimal, in response to Plaintiffs' request for transfer and their

6  grievance about inaction on the same.  Plaintiffs believe their request is still stuck at the

7  initial administrative processing stage and has never been presented to the Los Angeles

8  Port Committee for consideration.

9      *(d)    Exhaustion is excused if union officials are hostile.*

10      The Supreme Court has recognized that union members need *not* exhaust internal

11  union procedures where "union officials are so hostile to the employee that he could not

12  hope to obtain a fair hearing on his claim." Clayton, 451 U.S. at 689.

13      Here, the voicemail from Mr. Freese on June 6, 2007, and subsequent

14  conversation between Plaintiff Ayala and Mr. Freese, is a perfect example of the

15  intimidation and hostility inflicted on Plaintiffs by union officials. See Ayala Decl.,

16  ¶¶ 14-15.  Similarly, Plaintiff Whitten also received hostility and intimidation from a

17  PMA official and Mr. Ponce de Leon. See Whitten Decl., ¶¶ 2-3.  Plaintiff Phillips also

18  overheard the same hostility from officers of Local 13 directed at Plaintiffs regarding

19  their transfer requests. See Phillips Decl., ¶¶ 5-6.  Further, Plaintiffs have witnessed the

20  same hostility directed at Lee Lindenberg in a previous similar case against Defendants.

21  See Ayala Decl., ¶ 7.  Because Plaintiffs were listed as witnesses in this Lindenberg

22  case, which has since been resolved, Plaintiffs would question whether their troubles

23

24  [2] It would be a different case if the union evaluated and investigated the claim and determined it to be
without merit.  In such case, there would probably *not* be a breach of the duty of fair representation.

25  See, e.g., Herman, 60 F.3d at 1380.  Here, Plaintiffs are *not* alleging that Defendants failed to *pursue*
their grievance or that the union made an error in evaluating the *merits* of the grievance, which would

26  necessarily be an act involving the union's *judgment*. See Stevens v. Moore Bus. Forms, Inc., 18 F.3d
1443, 1447 (9th Cir. 1994).  Rather, Plaintiffs are alleging the "procedural or ministerial" acts or

27  inaction by Defendants, which is a breach of the duty of fair representation under the Labor
Management Relations Act. See id.

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL EXHAUSTION & TO DISMISS

with Defendants in this case have any connection. See id.; Phillips Decl., ¶ 4. In fact, Plaintiffs noticed that their privilege to check in as "Visitors" in the Local 13 Hiring Hall was sharply curtailed soon after it became known that they and Mr. Lindenberg were seeking to transfer to Local 13. See Phillips Decl., ¶ 4.

### (e) *Exhaustion is excused if internal grievance procedures are inadequate.*

In Clayton, the Supreme Court held that exhaustion of intra-union remedies is *not* required when an intra-union procedure *cannot* provide the remedy sought under the LMRA. See Clayton, 451 U.S. at 689. In Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148 (2nd Cir. 1994), the court applied this test to excuse a failure to exhaust because "there was no evidence presented that Local Union No. 3 informed any of the prevailing employees of any internal remedial process." Id. at 1154. Here, as in Cruz, Defendants have failed to inform Plaintiffs of what they did wrong and what they need to do in order to comply with the procedures under the Longshore Contract, despite the false promise (in Defendants' counsel's October 17, 2007, letter) of forwarding their grievance to the Los Angeles Port Committee for proper consideration.

### (f) *Exhaustion is excused if completing grievance procedures would lead to unreasonable delay.*

Under Clayton, courts have discretion to excuse exhaustion of internal union procedures if "exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim." Clayton, 451 U.S. at 689.

Here, Plaintiffs waited a total of five months (two months before appealing to the Coast Committee, and three months after being remanded to the Los Angeles Port Committee). The statute of limitations on their current claim is six months. Even if Plaintiffs have not fully exhausted their internal remedies, they justifiably feared that

1  waiting further would only invoke a limitations/late filing claim by Local 13 and

2  prevent them from obtaining judicial review.

3

4  **B.    Plaintiffs' Second Cause of Action Has Properly Stated a Claim Against**
   **Defendants for Violation of the Labor-Management Reporting and**
5  **Disclosure Act.**

6      Defendants argue that nothing in the LMRDA provides a right of action against

7  an employer or a labor organization for a breach of alleged seniority or contract rights

8  set out in a collective bargaining agreement. In other words, Defendants contend that

9  Plaintiffs cannot state a cause of action under the LMRDA.

10     The courts, *not* exclusively the National Labor Relations Board, have jurisdiction

11 over fair representation claims arising out of the operation of union hiring halls.

12 Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6, 493 U.S. 67, 76

13 (1989). If traveling union members complied fully with the provisions of the

14 international union providing for the transfer of a traveler's membership, the traveling

15 members were entitled to rights and privileges guaranteed by the LMRDA. See Parish

16 v. Legion, 450 F.2d 821, 823-27 (9th Cir. 1971) (analyzing Hughes v. Local No. 11 of

17 Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers, AFL-CIO, 287 F.2d 810,

18 815-17 (3d Cir. 1961) (complaint by member of international union, who had in vain

19 sought transfer to another local, for decree granting him transfer and alleging that he had

20 fulfilled all requirements for membership in local and that he was being deprived of

21 equal rights and privileges in local contrary to LMRDA, was sufficient to state claim

22 upon which relief could be granted) (superseded by union constitutional amendment as

23 stated in Gavin)).[3] Unlike the cases cited by Defendants in their Motion, the Parish case

24

25 ─────────────────────────────
   [3]  At the time that the Third Circuit decided Hughes, the constitution of the international union gave
26 the plaintiff an *absolute* right of transfer upon compliance with the requirements of the local. See
   Hughes, 287 F.2d at 815-16. Thereafter, the Seventh Circuit, in reviewing the same international
27 union's constitution, held that because the constitution was amended giving the local discretion to
   reject transfers, the Hughes decision was now superseded by this constitutional amendment. See
28 Gavin v. Structural Iron Workers Local No. 1 of Int'l Ass'n of Bridge, Structural & Ornamental Iron
                                                                              (continued . . .)

1  is directly on point with the instant case, and because the ruling is from the Ninth

2  Circuit, it is binding on this Court.

3      As stated in Parish, it is necessary for the court to examine the constitution of the

4  *international* union to "determine whether it grants a local discretionary power to refuse

5  the rights of membership to travelers seeking to transfer their membership." Id. at 825.

6  In the ILWU Constitution (as amended May 2006), the relevant provisions for this

7  analysis are Article XVII entitled "Transfers" and Article XVIII entitled "Visiting

8  Members, Traveling Cards." See Exh. "8" of Ayala Decl. Like in Parish, 450 F.2d at

9  826, there is nothing in the above Articles of the ILWU Constitution which grants local

10  unions autonomy to refuse the acceptance of a transfer or traveler's card where the

11  member has complied fully with the conditions for transfer.[4] In fact, Article XVIII,

12  Sections 1 and 2 explicitly state that any member is entitled to the privileges (including

13  *work privileges*) in any local of the same geographic division of a similar craft so long

14  as the member is in good standing with an active local for at least one year and has

15  procured a traveling card showing that the member is paid up to date. Further, under

16  Section 3 of Article XVII, "[a]ll locals shall be *required* to accept a *minimum* of visitors

17  of one percent (1%) of their membership at any given time …." (Emphasis added).

18      Here, Plaintiffs have complied with all of these conditions, as evidenced by the

19  minutes of the Longshore Labor Relations Committee of San Francisco, dated March

20  29, 2007, stating that Plaintiffs have been approved for transfer to Local 13 and that

22  (continued …)
   Workers, 553 F.2d 28, 30-31 (7th Cir. 1977). This is *not* the situation in the instant case with regard to

23  the ILWU Constitution.

24

25  [4] Even if Defendants argue that the Local 13 Constitution, Section 6 entitled "Job Rights" (printed
   January 1, 2002) somehow grants them discretion regarding transfers of the nature raised by Plaintiffs,
   such section is irrelevant because as stated in the ILWU Constitution, Article V: "Nothing in the

26  Constitution or by-laws of any local shall conflict with any of the provisions of this Constitution …."
   See Exhs. "8" & "9" of Ayala Decl. In other words, to the extent there is any conflict between Section

27  6 of Local 13's Constitution and Articles XVII and XVIII of the International Constitution, the
   International Constitution is what should govern.

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL EXHAUSTION & TO DISMISS

1    Local 10 would contact Local 13 about this matter. <u>See</u> Ayala Decl., ¶ 12 & Exh. "4";

2    Whitten Decl., ¶ 2. This was further confirmed in a letter, dated May 24, 2007, from

3    Local 10's Secretary-Treasurer to Local 13's Secretary-Treasurer stating that Plaintiffs

4    "are all in good standing and are hereby cleared for their request to transfer to ILWU

5    Local #13. Please address this issue at our next LRC Meeting." <u>See</u> Exh. "A" of

6    Plaintiffs' Complaint; Ayala Decl., ¶ 13 & Exh. "5."

7        Plaintiffs are confused, if not baffled, by the arguments raised by Defendants in

8    their Motion. Defendants claim that: (1) the LMRDA does not provide any substantive

9    rights (<u>see</u> Motion at p. 16); (2) the denial of seniority rights under the Longshore

10   Contract fails to state a cause of action under the LMRDA (<u>see</u> Motion at p. 17); (3)

11   Plaintiffs' claim of discrimination among other "non-member casuals" rather than other

12   union members does not state a proper claim under the LMRDA (<u>see</u> <u>id.</u>); and (4) no

13   claim under the LMRDA can be stated against PMA because PMA is not a labor

14   organization (<u>see</u> <u>id.</u>).

15       With respect to Defendants' first three points above, these issues have been

16   addressed and resolved by the cases cited by Plaintiffs here.

17       Finally, the last argument made by Defendants is easily dismissed because the

18   LMRDA applies to "employers", and the PMA is an employer. The Congressional

19   intent behind the enactment of the LMRDA as stated in 29 U.S.C. § 401(c): "The

20   Congress, therefore, further finds and declares that the enactment of this chapter is

21   necessary to eliminate or prevent improper practices on the part of the labor

22   organizations, *employers*, labor relations consultants, and their officers and

23   representatives which distort and defeat the policies of the Labor Management Relations

24   Act, 1947, as amended ...." (Emphasis added). Section 401(a) also references

25   "employers" and labor organizations together when discussing adherence "to the highest

26   standards of responsibility and ethical conduct in administering the affairs of their

27   organizations, particularly as they affect labor-management relations." "Employer" is

28

defined as any group or association of employers engaged in an industry which may deal with any labor organization concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work. <u>See</u> 29 U.S.C. § 402(e).  So, although it is true that PMA is not a labor organization, PMA then must be an "employer" for purposes of the LMRDA.

As stated on PMA's website (<u>www.pmanet.org</u>), PMA is comprised of 72 member companies, who are cargo carriers, terminal operators and stevedores that operate at West Coast ports.  PMA is in the business of negotiating and administering maritime labor agreements with the ILWU.  Therefore, it must be concluded based on the foregoing that Congress intended the protections afforded to employees under the LMRDA be imposed on employers as well.  <u>See</u> <u>Moore v. Local 569 of Int'l Bhd. of Elec. Workers</u>, 53 F.3d 1054, 1057 (9th Cir. 1995) ("After all, one of Congress' purposes in adopting the LMRDA was to insure that 'labor organizations, *employers*, and their officials adhere to the highest standards of responsibility and ethical conduct ….") (emphasis in original); <u>Donovan v. Hotel, Motel & Restaurant Employees & Bartenders Union, Local 19, Hotel & Restaurant Employees & Bartenders Int'l Union, AFL-CIO</u>, 700 F.2d 539, 547 (9th Cir. 1983) ("The primary purpose of the LMRDA was undoubtedly to remedy perceived abuses by labor unions, although it also imposed requirements on employers.").

## IV.  CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court *deny* Defendants' Motion to Compel Exhaustion of Contractual Grievance Arbitration Process and to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted.

If the Court agrees with the Defendants that the Los Angeles Port Committee should have a further opportunity to consider Plaintiffs' transfer requests despite the

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL EXHAUSTION & TO DISMISS

frustrating history of what appears to have been blatant stonewalling by Local 13, in its

position as gatekeeper, Plaintiffs respectfully request that the Court retain jurisdiction

and set a return date for Local 13 to report the results of any further consideration with a

statement of the reasons if these transfer requests continue to be denied.


Respectfully submitted,

DATED:  March 31, 2008          SULLIVAN TAKETA LLP


By: _____
    Mark F. Sullivan
    Lamdien T. Le
    Attorneys for Plaintiffs