ROBERT S. REMAR (SBN 100124)
PHIL A THOMAS (SBN 248517)
LEONARD, CARDER, LLP
1188 Franklin St., Suite 201
San Francisco, CA 94109
Tel: (415) 771-6400 / Fax: (415)771-7010

*Attorneys for Defendant*
INTERNATIONAL LONGSHORE AND WAREHOUSE UNION

STEVEN R. HOLGUIN (SBN 115768)
JOHN KIM (SBN 232957)
HOLGUIN, GARFIELD, & MARTINEZ LLP
800 West Sixth St., Suite. 950
Los Angeles, CA 90048
Tel: (213) 623-0170 / Fax: (213) 623-0171

*Attorneys for Defendant*
INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 13

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE AYALA, DEANDRE WHITTEN, LEROY PHILLIPS, GONZALO TORRES, JOSE LINAREZ, KIMANI STAFFORD and JOSEPH LAWTON, individuals,<br><br>Plaintiffs,<br><br>v.<br><br>PACIFIC MARITIME ASSOCIATION, a California corporation,; INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, a labor organization; and INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 13, a labor organization; and DOES 1 though 10<br><br>Defendants | Case No. CV-08-0119 TEH<br><br>**REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL EXHAUSTION OF CONTRACTUAL GRIEVANCE ARBITRATION PROCESS AND TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**<br><br>Date:       April 21, 2008<br>Time:      10:00 AM<br>Courtroom: 19<br><br>Hon. Thelton E. Henderson |

## I. INTRODUCTION

Plaintiffs' Opposition confirms that the terms of the Pacific Coast Longshore Contract Document (PCLCD) govern their claims to transfer their longshore registration from the Port of San Francisco/Oakland, represented by plaintiffs' current union, Local 10 ILWU, to the Port of Los Angeles/Long Beach, represented by defendant Local 13, which has never admitted plaintiffs to membership. In particular, plaintiffs acknowledge that the contractual transfer procedures have long been in dispute, noting that the Local 10 leadership has over the years held discussions with Local 13 officers "about facilitating the transfer of Local 10 members to Los Angeles, but their efforts have not borne fruit." (Opp. 5:11-14). Plaintiffs' Opposition further alleges that plaintiffs have been "expecting that their grievance would be addressed by the Los Angeles Port Committee according to section 17.41 of Longshore Contract." (Opp. 4:15-17).

Plaintiffs further admit that defendant ILWU International, through legal counsel, promptly responded, by letter dated October 17, 2007, to plaintiffs' request for processing of their transfer grievance by referring plaintiffs to the Los Angeles Joint Port Labor Relations Committee ("JPLRC") as the first step of the grievance process under the PCLCD. Plaintiffs assert that they "waited" for three months to hear from the Los Angeles JPLRC and then filed their Complaint. (Opp. 10:26 – 11:9). Plaintiffs implicitly admit that they had no further contact with Defendant ILWU about the three months wait.

Even so, plaintiffs argue that they should not now be "penalized for trusting the ILWU" by their waiting three months for the Los Angeles JPLRC to act on their grievance. While Defendants ILWU and Local 13 dispute plaintiffs' characterizations, the Defendants do agree that there was confusion among the parties as to who was responsible for initiating a

hearing before the Los Angeles JPLRC. Giving plaintiffs the benefit of the doubt here for purposes of this motion only, defendants ILWU and Local 13 are persuaded under the unique circumstances outlined in Plaintiffs' Opposition, that all parties would be best served by having plaintiffs' transfer grievance promptly submitted to the Coast Arbitrator for a final and binding ruling as required under section 17.43 of the PCLCD.

## II. PLAINTIFFS MUST BE ORDERED TO BRING THEIR CLAIMS BEFORE THE COAST ARBITRATOR.

While most of their complaints concern the inaction of the Los Angeles JPLRC, it appears that plaintiffs also resist Coast Arbitration. However, plaintiffs' objections to completion of the contractual grievance process (i.e., Coast Arbitration) lack merit as a matter of the facts they allege and the governing law that they mostly fail to cite.

### 1. Section 17.4 Procedures Govern Plaintiffs' Transfer Grievance.

Sections 13 and 17.4 of the PCLCD make clear that individual grievants may prosecute discrimination grievances to final and binding arbitration before the Coast Arbitration. (See, section 17.43.) Using selective and incomplete quotations from provisions of section 13, governing discrimination claims, Plaintiffs assert that "the right to obtain an arbitration that is extended to race, gender, religious discrimination, etc. grievants is not extended to transfer applicants." (Opp. 7:2-4). However, plaintiffs' underlying claim that they have been wrongly denied transfer to Los Angeles because of their membership in Local 10 or their non-membership in Local 13 is exactly the type of grievance covered by section 13.3's prohibition of discrimination based on "membership or nonmembership in the Union." By its terms, section 13.3 provides that such claims are to be processed "under the grievance procedures in section 17.4 of the PCLCA."

Indeed, plaintiffs admit that they were "expecting" at the outset that their grievance

3
REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL EXHAUSTION OF CONTRACTUAL REMEDIES
CASE NO. CV-08-0119 TEH

"would be addressed by the Los Angeles Port Committee according to section 17.41 of the Longshore Contract." (Opp. 4:15-17.) Nor can there be any dispute that the final step after section 17.41 provides for arbitration before the Coast Arbitrator under section 17.43. See, *Carr v. PMA*, 904 F.2d 1313 (9th Cir. 1990) (finding that LRC decision "is further appealable to the Coast Arbitrator" under section 17.43 of the PCLCD), and *Ritza v. ILWU,* 837 F.2d 365 (9th Cir. 1988) (same).

### 2. Section 17.4 Allows Plaintiffs To Prosecute Their Grievance Before The Coast Arbitrator Regardless of Any Defendant's Position.

Plaintiffs rest most of their argument against arbitration on their claim that the Union "controls" any further processing of their grievance. (Opp. 9:3-14; 12:16 – 13:27). However, section 17.4, on its face, and as conclusively construed by the Ninth Circuit, states otherwise and specifically allows plaintiffs to prosecute their own grievance before the Coast Arbitrator, with or without the support of the Union. In *Carr v PMA*, the court explicitly noted that under the PCLCD, "the grievants can utilize the contractual remedy process without the help or approval of the union." 904 F.2d at 1319-120; see also, *Ritza v ILWU, supra*. Accordingly, just as in *Carr* and *Ritza*, plaintiffs' independent right to arbitrate their claims under the PCLCD makes the present case "distinguishable from those where the union has assumed sole responsibility of preparing and presenting the grievant's claim", 904 F.2d at 1320, which cases plaintiffs cite extensively in their Opposition. (Opp. 9:3-14; 12:10-13:21.)

### 3. Plaintiffs' Right to Arbitration "Cures" Their Claims Of Bias, Delay and Deficiencies By The Los Angeles JPLRC

Defendant ILWU shares plaintiffs' frustrations concerning the difficulty and confusion resulting in the delays of their grievance before the Los Angeles JPLRC. However, as a matter of law, "the plaintiff's ability to have a neutral arbitrator review the port LRC's

decision here cures whatever bias there may have been in the port LRC's decision-making process." *Carr v. PMA*, at 904 F.2d at 1319; *see also*, *Ritza v. ILWU*, 837 F.2d at 370 ("any hostility that may exist at the joint coast level is cheered by the availability of neutral arbitration.").

### 4. **Plaintiffs' Claim Of Unfair Union Representation Does Not Excuse Their Duty To Arbitrate Their Claims Under The PCLCD.**

Plaintiffs assert that "exhaustion is excused if the union breaches its duty of fair representation," which plaintiffs allege here. (Opp. 13:26-27.) Inexplicably, however, plaintiffs fail to cite to the two Ninth Circuit rulings -- *Carr v PMA, supra*, and *Ritza v ILWU, supra* –discussed in defendants' moving papers. *Carr* and *Ritza* explicitly hold that because individual grievants can process their grievance to coast arbitration under the PCLCD, "without the help or approval of the Union," any alleged breach of the duty of fair representation would not excuse the duty to arbitrate. 904 F.2d at 1319-1320.

Moreover, because the ILWU does not "control" nor have "sole responsibility of preparing and presenting" plaintiffs' transfer grievance, submitting the dispute to coast arbitration under section 17.43 of the PCLCD would not be "futile" as asserted by plaintiffs. And since plaintiffs still have the right – indeed the contractual duty – to arbitrate under the PCLCD, any wrongful action or inaction by defendants here has not "completely extinguished" their contract claims, which is a prerequisite for excusing exhaustion of contract remedies. *Dutrisac v. Caterpillar Co.*, 749 F.2d 1270, 1274 (9th Cir. 1983). *See also Peterson v. Kennedy*, 771 F.2d 1244, 1253-1255 (9th Cir. 1985) (collecting cases). By contrast, cases cited by Plaintiffs in support of their refusal-to-process argument involve remedies that were foreclosed by a union's failure to perform a ministerial act: *Herman v. Carpenters Local 971*, 60 F.3d 1375 (9th Cir. 1995) (termination, summary judgment for

defendants overturned); *Castaneda v. Dura-Vent Corp.*, 648 F.2d 612 (9th Cir. 1981) (backpay, summary judgment for defendants overturned).

Here, Plaintiffs are not challenging termination of their employment, but rather are seeking a transfer to a different work location and different local union. Plaintiffs' ability to pursue these transfers will not be extinguished by requiring them to exhaust internal remedies. Defendants have moved for an Order to compel Plaintiffs to use the internal remedies that are open to them, up to and including the right to present their own case to the Coast Arbitrator. Granting such an Order is in accord with the national labor policy favoring arbitration of disputes arising under a collective bargaining agreement. *Carr, supra* at 1319. *See also USWA v. Warrior & Gulf*, 363 U.S. 574, 578 (1960); *Carpenters Local 1780 v. Desert Palace, Inc.*, 94 F.3d 1308, 1312 (9th Cir. 1996).

5. **Plaintiffs Have Failed To Establish Repudiation Of Contract Procedures**

In support of their repudiation argument, Plaintiffs cite *Beriault v. ILWU Local 40*, 501 F.2d 258 (9th Cir. 1974), a case in which longshore workers alleged that the PMA, ILWU and ILWU Local 40 had dispatched other workers ahead of them in violation of the PCLCD. In *Beriault*, as in the instant case, the plaintiffs failed to bring their claims to the appropriate JPLRC, and sought to be excused from further attempts at exhaustion. *Id.* at 262. The *Beriault* court held that the plaintiffs made no showing of repudiation, a wrongful refusal to process their grievance, or "any other set of facts tending to excuse their conceded failure to exhaust the contractual grievance and arbitration procedures." *Id.* Plaintiffs also ignore controlling authority defining 'repudiation' of a collective bargaining agreement.[1] The Ninth

---

[1] Plaintiffs citation to *Pile Drivers Local 34 v. N. Cal. Carpenters' Regional Council*, 992 F. Supp. 1138, 1144 n. 8 (N.D. Cal. 1997), for the proposition that a union operating a hiring hall acts in part as an employer, is simply irrelevant. In that case, the Northern District mentioned this rule, originally set forth in *Breininger v. Sheet Metal Workers*, 493 U.S. 67, 88-89 (1989), in its characterization of the plaintiffs' request to apply a higher duty

Circuit has held that it "will not find repudiation simply because the employer refused to follow one or more of the substantive terms of the CBA; rather, we will excuse the requirement for exhaustion based on repudiation only if the employer repudiates the specific grievance procedures provided for in the CBA." *Sidhu v. Flecto Co.*, 273 F.2d 896, 898-899 (9th Cir. 2002). Conduct that might rise to the level of "discouragement" of particular claims does not amount to repudiation when, as here, plaintiffs are allowed to prosecute their claims before a neutral arbitrator. *Carr, supra* at 1319. Accordingly, plaintiffs allegations of delay do not as a matter of law constitute repudiation of the grievance/arbitration procedures.

In any event, the Union has no objection to having the court orders specify a time frame for the scheduling of the coast arbitration hearing.

### III. DESPITE RE-CHARACTERIZING THEIR LMRDA CLAIM AS A CLAIM BASED ON ILWU'S CONSTITUTION, PLAINTIFFS' SECOND CAUSE OF ACTION STILL FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Plaintiffs' Complaint attempted to argue that their claim for a breach of the Union Defendants duty of fair representation brought under Section 301 of the Labor-Management Relations Act (LMRA), 29 U.S.C. §185 also supports a claim for a violation of Section 101 of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. §411. Defendants showed in their Motion that duty of fair representation claims regarding administration of a collective bargaining agreement are not cognizable under the LMRDA. Plaintiffs have not filed an Amended Complaint; instead, in their Opposition Plaintiffs attempted to re-characterize their LMRDA claim as a claim based on rights to which they are allegedly entitled under the ILWU Constitution.

---

of care to the actions of a parent union body vis-à-vis a local union—a request the Court denied.

1. **Plaintiffs' Complaint Neither Claims Transfer Rights Under The ILWU Constitution Nor Alleges Violations Of ILWU's Constitution By Any Defendant**

Nowhere in the Plaintiffs' Second Cause of Action, (Complaint ¶¶ 46-51), do they allege that the Constitution of Defendant International Longshore and Warehouse Union provides them a right to transfer from one work location to another. Instead, Plaintiffs argued that "[t]he denial of seniority and the blocking of Plaintiffs' right to transfer is a breach of the PCLCD and it denies Plaintiffs their rights to equal treatment by the ILWU contrary to the Labor-Management Reporting and Disclosure Act." (Complaint ¶48).

Plaintiffs' Second Cause of Action, like their First and Third, alleges that Defendants have violated transfer rights claimed by Plaintiffs under the PCLCD—the collective bargaining agreement that governs their employment as longshore workers with PMA-member companies. (Complaint ¶¶48-50). In essence, Plaintiffs' Second Cause of Action is an attempt to enforce <u>the same rights</u> (contractual) asserted in their First Cause of Action, but under a different body of law. In Plaintiffs' Opposition, however, they have re-characterized their Second Cause of Action as a claim for rights to which they are allegedly entitled under the ILWU Constitution. (Opp. 18). Plaintiffs are now attempting to enforce <u>a different set of rights</u> (constitutional rather than contractual) in their LMRDA claim than they assert in their Complaint.

Defendants showed in their Motion that Plaintiffs have no cognizable legal theory on which they can bring a duty-of-fair-representation claim under the LMRDA; this alone is grounds for dismissal of their Second Cause of Action. *See, e.g. Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (dismissal proper when "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory"). By asserting a

different set of rights and a different legal theory in their Opposition, Plaintiffs have attempted to amend their Complaint *sub rosa* and deny Defendants their full range of procedural responses. This Court must deny Plaintiffs' underhanded attempt to correct their defective Complaint, and dismiss their Second Cause of Action for failure to state a claim upon which relief may be granted.

**2. Plaintiffs Have Not Exhausted Internal Remedies For Claims Under The Union's Constitution.**

Even if Plaintiffs' claim under the ILWU Constitution has been properly pleaded, their Second Cause of Action must still be dismissed for failure to exhaust internal remedies. Article IX of the ILWU Constitution sets forth the procedures Union members must use if they wish to challenge an action or decision of the International Union or any of its constituent local unions. While plaintiffs allege bringing their transfer grievance under the collective bargaining agreement governing their employment, nowhere does their Complaint assert that they have ever attempted to commence, much less exhaust, the procedures for addressing violations of rights set forth in the ILWU Constitution.[2]

Under Section 101(a)(4) of the LMRDA, union members "may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations …" 29 U.S.C. §411(a)(4). This Court has discretion in determining whether to require Plaintiffs to exhaust internal remedies. *NLRB v. Marine & Shipbuilding Workers I.U.*, 391 U.S. 418, 426 (1968). Courts have declined to order plaintiffs to exhaust internal remedies only when "to do so would be futile or when the available remedy would be inadequate." *Cooke v. Painters Dist. Council 48*, 529 F.2d 815, 820 (9th Cir. 1976); *see also Ornellas v.*

---

[2] Significantly, while Plaintiffs included excerpts from the ILWU Constitution as Exhibit 8 to the Declaration of Plaintiff Ayala, Plaintiffs omitted Article IX, the Appeals Procedure.

LEONARD CARDER, LLP
ATTORNEYS
1188 FRANKLIN STREET, SUITE 201
SAN FRANCISCO, CALIFORNIA 94109
TELEPHONE: (415) 771-6400    FAX (415) 771-7010

*Oakley,* 618 F.2d 1351, (9th Cir. 1980). For the reasons stated in Section II above, Plaintiffs have shown neither futility nor the inadequacy of remedies available under the ILWU Constitution. Accordingly, this Court must order them to utilize the internal procedures available to them for addressing their constitutional claims before bringing an action based on these claims.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request an order compelling Plaintiffs to submit their claims for alleged breaches of the PCLCD to the Coast Arbitrator, and dismissing their claims under the LMRDA.

Dated: April 7, 2008

Respectfully submitted,

LEONARD CARDER LLP

By: Phil A Thomas
Attorneys for Defendant International Longshore and Warehouse Union

HOLGUIN, GARFIELD, & MARTINEZ LLP

By: John Kim
Attorneys for Defendant Local 13,
International Longshore and Warehouse Union

## CERTIFICATE OF SERVICE

The undersigned declares under penalty of perjury that the following is true and correct. Declarant is employed in the City and County of San Francisco, State of California. Declarant is over the age of eighteen years and is not a party to the within action. Declarant's business address is 1188 Franklin Street, Suite 201, San Francisco, California 94109. On April 7, 2008, served the within **REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL EXHAUSTION OF CONTRACTUAL GRIEVANCE ARBITRATION PROCESS AND TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED** on the undernoted by placing a true copy thereof in a sealed envelope with postage thereon fully prepaid, in a U.S. Post Office mail box at San Francisco, addressed as follows:

MARK F. SULLIVAN, ESQ.
LAMDIEN T. LE
SULLIVAN TAKETA LLP
31351 VIA COLINAS, SUITE 205
WESTLAKE VILLAGE, CA 91362-3755

DENNIS L. KENNELLY, ESQ.
LAW OFFICES OF DENNIS L. KENNELLY
1030 CURTIS STREET, SUITE 200
MENLO PARK , CA 94025

JASON M. STEELE, ESQ.
MORGAN LEWIS & BOCKIUS LLP
300 SOUTH GRAND AVENUE, 22ND FLOOR
LOS ANGELES  CA 90071-3132

Executed at San Francisco, California on April 7, 2008.

*Mathilda Mendonca*
Mathilda Mendonca