IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE AYALA et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>PACIFIC MARITIME ASSOCIATION, et al.,<br><br>        Defendants. | NO. C 08-0119 TEH<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL EXHAUSTION OF CONTRACTUAL GRIEVANCE ARBITRATION PROCESS AND TO DISMISS |

    This matter came before the Court on April 21, 2008, on Defendants' Motion to Compel Exhaustion of Contractual Grievance Arbitration Process and to Dismiss for Failure to State a Claim. Plaintiffs are registered longshoreman at the port of San Francisco-Oakland, who have sought transfer under their labor contract to the port of Los Angeles-Long Beach. They claim that defendants Pacific Maritime Association, International Longshore and Warehouse Union ("ILWU") and ILWU Local 13 have blocked their transfer, in violation of their right to equal treatment under federal labor laws and in breach of the collective bargaining agreement. Defendants move to dismiss for failure to exhaust and failure to state a claim. For the reasons set out below, the Court finds that Plaintiffs have adequately exhausted grievance procedures set out in the collective bargaining agreement, and so DENIES the motion to dismiss the First and Third Causes of Action. The Court GRANTS the motion to dismiss the Second Cause of Action, with leave to amend to state a claim under the LMRDA.

**FACTUAL BACKGROUND**

**A.  The Collective Bargaining Agreement**

The employment of longshoremen in California is governed by a coast-wide collective bargaining agreement, the "Pacific Coast Longshore Contract Document" or "PCLCD," (itself part of a broader agreement, the "Pacific Coast Longshore and Clerks Agreement"). The employer shipping, stevedoring and marine terminal companies are represented by defendant Pacific Maritime Association ("PMA"). The employee longshoremen are represented by defendant International Longshore and Warehouse Union ("ILWU" or "International Union"); ILWU Local 10 represents workers in the Port of San Francisco, and defendant Local 13 represents workers in the Port of Los Angeles-Long Beach.

The PCLCD governs how longshoremen are selected for work. PCLCD § 8.[1] Longshoremen are dispatched to jobs through exclusive hiring halls run by the local unions. Class "A" longshoremen (those with the most experience and formal training) are given first preference, Class "B" second preference, and unregistered or "casual" longshoremen are dispatched only after available work has been offered to Class "A" and "B" registrants. *Id.* §§ 8.14, 8.41. The Joint Port Labor Relations Committee ("Joint Port LRC") is a joint labor-management committee that, *inter alia,* administers each port's list of casuals and promotions to Class A and B status, and investigates and adjudicates grievances. PCLCD § 17.1. The Joint Port LRC is subject to the ultimate control of the Joint Coast Labor Relations Committee ("Joint Coast LRC"), a labor-management committee comprised of highest-level representatives of the ILWU and employers. PCLCD § 8.31.

The PCLCD also provides that registered longshoreman have "joint coastwise registration," § 8.32, which gives them the right to "visit" another port and "be given work opportunity equal to that of fully registered men at the port visited." PCLCD Supplement I, § 2.1. They also have the right to transfer to another port, provided that

---

[1] As discussed more fully in the Legal Standard section below, because Defendants' motion to dismiss for failure to exhaust is considered a "matter in abatement," as discussed more fully below, the Court may consider the PCLCD and other evidence outside the pleadings.

2

> The Joint Port Labor Relations Committee at the former home port determines that a transfer is warranted on the basis of work opportunity or that there are compelling reasons for letting him transfer despite the need for him at that port and that there is an opening available for him at the port to which he seeks to be transferred.

PCLCD Supplement I § 1.11. The PCLCD prohibits various forms of discrimination, including discrimination "in favor of or against any person because of membership or nonmembership in the Union...." PCLCD § 13.1.

**B.    Plaintiffs' Allegations of Discrimination**

Plaintiffs José Ayala, Deandre Whitten, Leroy Phillips, Gonzalo Torres, José Linarez, and Kimani Stafford are "Class A" longshoreman in the Port of San Francisco-Oakland. They allege that Defendants discriminated against them in job assignments and transfer because they are not members of Local 13. According to the Complaint, at some point prior to 2004, each Plaintiff needed, for personal or family reasons, to move to Southern California. For approximately five years or more, each has been seeking work at and requesting transfer to the Port of Los Angeles and Long Beach. They started seeking transfer during a period when there was a labor shortage in the Los Angeles-Long Beach area. By fall 2004, the labor shortage was so acute that the PMA authorized creation of 3,000 new casual jobs, relaxed hiring standards, and elevated over 1,000 casual workers to "B Man" status. After the mass elevation of Class B longshoremen in 2004, Plaintiffs could no longer receive steady work as visitors in Los Angeles-Long Beach.

Plaintiffs allege that ILWU Local 13, with the acquiescence of the International Union and the PMA, has "continuously rebuffed" transfer inquiries from them and blocked their right to transfer, telling them "they should not even try to request a transfer because any such request will never make it through the Local 13 Executive Board" to be considered by the union membership. Complaint ¶¶ 3, 22. They contend they were "improperly denied the right to transfer despite the shortage of longshoremen in the Port of Los Angeles and Long Beach" because "officers and other persons in control of Local 13 were parceling out registration status in Local 13 either for cash or other consideration or on the basis of nepotistic preferences for friends and family." *Id.* ¶ 23-24. In addition, Plaintiffs allege that

3

when they complained about the inability to transfer, Local 13 retaliated by making it even more difficult for them to be dispatched as "visiting" workers, refusing to honor their seniority and sending them to the least desirable jobs. As a result, Plaintiffs lost wages and seniority. Plaintiffs allege that Local 13's exclusionary policy continues to this day, and that the PMA conspires with Local 13 to manipulate the seniority of southern California casuals.

**C.   The PCLCD's Exhaustion Requirements and Plaintiffs' Efforts to Exhaust**

The PCLCD provides that

> A request for transfer may be denied by the Joint Port Labor Relations Committee of the port to which the man seeks transfer. Any denial of transfer, except because there is no opening available on its list, shall be subject to review in accordance with the procedure and rules that are applicable.

PCLCD Supplement I, § 1.4. Grievances that a "contractual provision or rule is discriminatory as written or applied, as well as discrimination claims seeking elevation, registration or selection for casual status, and discrimination claims based on ... membership or non-membership in the Union, or activity for or against the Union or absence thereof" go before the Joint Port LRC – the same entity that approves or denies transfer requests. PCLCD § 13.3.[2]   Procedure is governed by Section 17 of PCLCD. The worker must file a complaint with the Joint Port LRC "setting forth the grievance and the facts as to the alleged discrimination." PCLCD § 17.41; *see also* § 13.3 (must use the grievance procedures in § 17.4). The Joint Port LRC investigates the grievance at a regular or special meeting, where the complainant may appear and present oral and written evidence and argument. *Id.* § 17.41. The employers, the union, or the employee can appeal "by letter addressed to the Joint Coast Labor Relations Committee." *Id.* § 17.42. The employee, employer, or the union can appeal the decision of the Joint Coast LRC to the Coast Arbitrator, *id.* § 17.43, selected by the Joint Coast LRC. *Id.* § 17.5. The PCLCD requires Plaintiffs to exhaust this grievance procedure. *Id.* § 17.5.

---

[2] Other grievances, alleging, for example, discrimination on the basis of race, sex or age, are processed under a different grievance procedure. PCLCD § 13.2.

4

Plaintiffs submitted evidence that they began informally seeking transfer in 2003. In September 2005, Plaintiffs Ayala, Lawton, Phillips, and Whitten, together with several other longshoremen, wrote the Joint Coast LRC complaining that they had been denied transfer wrongfully. They received no response.

By letter dated May 24, 2007, Local 10 (the San Francisco Local) formally requested that Local 13 transfer Plaintiffs to southern California, and asked Local 13 to "address this issue at your next LRC Meeting." May 24, 2007 Letter, Complaint Exh. A, Declaration of José Ayala in Opposition to Motion ("Ayala Decl.") Exh. 5; *see also* Ayala Decl. Exh. 4 (minutes of March, 2007 meeting of Local 10 showing Plaintiffs are cleared for Transfer).

In June 2007, Plaintiff Ayala called Mike Freese, a Local 13 officer who represents the union at the Joint Port LRC, and asked that the transfer request be placed on the agenda. Freese left a return message chastising Ayala for trying to put his request on the agenda through the "office staff," but saying that he had spoken to the Local's officers and stating "we will address this issue." Declaration of Sharyn Casaly in Opposition to Motion ("Casaly Decl.") ¶ 2 and Exh. A (transcription of message and audio CD). Ayala called Freese back "asked him if he was denying [Ayala] the right to go to the JPLRC. Mr. Freese was silent and did *not* give [Ayala] any response to this question." Ayala Decl. ¶ 15.

Accordingly, on July 17, 2007, Plaintiffs wrote Frank Ponce De Leon of ILWU Local 13 requesting transfer. That letter noted that Plaintiffs had requested that the Los Angeles-Long Beach Joint Port LRC address their transfer request, and went on to state:

> The PCLCD is the bedrock source of our status and rights as fully registered longshoremen and we believe we are entitled to have our request presented to the Los Angeles-Long Beach JPLRC pursuant to the procedures outlined in Supplement I of the PCLCD.
>
> If our request is not going to be brought before the Los Angeles-Long Beach JPLRC, please provide us with a written statement why we are being denied what we believe to be our right. As we read Supplement I of the PCLCD, unresolved issues of coastwise registration are to be resolved by the Joint Coast Labor Relations Committee. If we have not received a written response to this request within ten calendar days after the next meeting of the Los Angeles-Long Beach JPLRC, reserve the right to present the matter to the Joint Coast Labor Relations Committee ("JCLRC.")

July 17, 2007 Letter, Complaint Exh. A, Ayala Decl. Exh. 6.

5

1    On September 5, 2007, Plaintiffs' counsel wrote the presidents of the PMA and ILWU
2 with the heading "Appeal to Joint Coast Labor Relations Committee," stating that "our
3 clients now appeal to you" as they had received no response to their July 17, 2007 request to
4 the Joint Port LRC, and requesting a hearing.[3]  September 5, 2007 Letter, Complaint Exh. B,
5 Ayala Decl. 7.

6    The Joint Coast LRC considered the request at its September 27, 2007 meeting.  The
7 minutes of the meeting state that

> The Committee reviewed a letter from an attorney asserting representation of seven Local 10 members seeking transfer from the Port of San Francisco to the Port of Los Angeles/Long Beach.  The Committee noted that three (3) of the subject individuals have been released to seek transfer by the San Francisco JPLRC.  The remaining four (4) individuals had yet to be released by the San Francisco JPLRC.[4]
>
> As outlined in Supplement I to the PCLCD, the Committee agreed that the subject transfer requests remained pending at the JPLRC levels in both the Ports of San Francisco and Los Angeles.  Those who have been release by the San Francisco JPLRC may seek approval of the Los Angeles JPLRC.  Those who have not been released to seek transfer must address their request with their homeport JPLRC.

14 Declaration of Ray Ortiz, Jr. in Support of Defendants' Motion ("Ortiz Decl.") Exh. C.  On
15 October 17, 2007, the ILWU followed up with a letter insisting that requests for transfer must
16 be "processed and decided by the local parties involved" and forwarding the request to the
17 Los Angeles-Long Beach Joint Port LRC.  Ortiz Decl. Exh. D.

18    The Joint Port LRC took no further action, and Plaintiffs took no further action to re-
19 raise the matter with the Joint Port LRC.

20    Plaintiffs filed their Complaint in this Court on January 7, 2008.  The First Cause of
21 Action against all Defendants alleges that their denial of seniority and blocking of Plaintiffs'
22 right to transfer breaches the PCLCD, denies Plaintiffs their right to equal treatment under
23 the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 *et seq.,* and constitutes a
24 breach of the Defendants' duty of fair representation.  The Second Cause of Action alleges
25 that the same conduct is unlawful discrimination in violation Plaintiffs' rights under the

---

[3] The letter added, "if this matter will not be heard by the JCLRC, please advise us so that we can document our good faith attempt to exhaust all internal remedies." *Id.*

[4] Plaintiffs argue this is incorrect, as evidenced by the May 24, 2007 letter by Local 10 releasing all seven Plaintiffs.

6

1  Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 411 *et seq.* and breaches the
2  duty of fair representation.  The Third Cause of Action seeks injunctive relief that will assist
3  Plaintiffs in "regaining the rightful place that, but for the unlawful denial of their transfer and
4  seniority rights, they would have held in the longshore labor pool in the Port of Los Angeles
5  and Long Beach," or, if the Court cannot craft such a remedy, damages for losses they
6  incurred as a result of being unlawfully forced to work at that Port as visitors.  *Id.* ¶¶ 52-53.

7  Defendants ILWU, ILWU Local 13, and Pacific Maritime Association now move to
8  dismiss the First and Third Causes of Action for failure to exhaust, and seek an Order
9  compelling Plaintiffs to submit to the grievance and arbitration procedure set out in the
10 PCLCD.  They also move to dismiss the Second Cause of Action for failure to state a claim.

**LEGAL STANDARD**

13 Defendants' Motion to dismiss for failure to exhaust nonjudicial remedies that are not
14 jurisdictional is treated as a "matter in abatement," which is "subject to an unenumerated
15 Rule 12(b) motion rather than a motion for summary judgment." *Wyatt v. Terhune,* 315 F.3d
16 1108, 1119 (9th Cir. 2003), *citing Ritza v. Int'l Longshoremen's & Warehousemen's Union*,
17 837 F.2d 365, 368 (9th Cir.1988) (per curiam).  The court may look beyond the pleadings
18 and decide disputed issues of fact; *id.* at 1119-20; such motions are "governed by the general
19 motion provisions in the federal rules, including Rule 43(e), which permits the hearing of
20 motions based on facts outside the record on affidavits submitted by the parties." *Ritza*, 837
21 F.2d at 369.  "The trial court may proceed as it never could under Rule 12(b)(6) or Fed. R.
22 Civ. Pro. 56 ... [N]o presumptive truthfulness attaches to plaintiff's allegations, and the
23 existence of disputed material facts will not preclude the trial court from evaluating for itself
24 the merits of jurisdictional claims." *Id.*, quoting *Thornhill Publishing Co. v. General Tel. &*
25 *Elecs. Corp*, 594 F.2d 730, 733 (9th Cir. 1979).  If the Court concludes the plaintiff has not
26 exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without
27 prejudice.  *Wyatt*, 315 F.3d at 1120.  The appellate court will review this Court's factual

7

1  determinations for clear error and its application of the substantive law *de novo.  Ritza*, 837
2  F.2d at 369.

3  In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. Pro.
4  12(b)(6), the court must assume the facts alleged in the complaint to be true unless the
5  allegations are controverted by exhibits attached to the complaint, matters subject to judicial
6  notice, or documents necessarily relied on by the complaint and whose authenticity no party
7  questions.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).  In addition, a
8  court need not "accept as true allegations that are merely conclusory, unwarranted deductions
9  of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988
10 (9th Cir. 2001), *amended on other grounds by* 275 F.3d 1187 (9th Cir. 2001).  A court should
11 not grant dismissal unless the plaintiff has failed to plead "enough facts to state a claim to
12 relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974
13 (2007).  Moreover, dismissal should be with leave to amend unless it is clear that amendment
14 could not possibly cure the complaint's deficiencies.  *Steckman v. Hart Brewing, Inc.*, 143
15 F.3d 1293, 1296 (9th Cir. 1998).

## ANALYSIS

### I. Motion to Dismiss Claims for Breach of PCLCD and for Order Compelling Plaintiffs To Submit Them to Grievance Procedure

Defendants move to dismiss Plaintiffs' First and Third Causes of Action, alleging violations of the PCLCD, on the ground that Plaintiffs failed to exhaust the grievance procedures set out in the PCLCD.  *See generally Carr v. Pacific Maritime Association*, 904 F.2d 1313, 1317 (9th Cir. 1990)(longshoremen must exhaust by bringing grievance to Port LRC).

"Generally, an employee seeking a remedy for a breach of a collective bargaining agreement must *attempt to* exhaust any grievance and arbitration procedures established by that agreement prior to bringing suit."  *Herman v. United Broth. of Carpenters and Joiners of America, Local Union No. 971,* 60 F.3d 1375, 1380 (9th Cir. 1995), *citing Clayton v. International Union*, 451 U.S. 679, 680-82 (1981)(emphasis added).  Evidence that Plaintiffs

8

attempted to exhaust grievance procedures but "[t]heir objections went unheeded" is sufficient to show exhaustion; "[a]n employee is not required to do more than that." *Seay v. McDonnell Douglas Corp.,* 427 F.2d 996, 1001-1002 (9th Cir. 1970), *citing Glover v. St. Louis-S.F. Ry. Co.*, 393 U.S. 324, 330-331 (1969)(where the union or company would be required "to pass on claims by the very employees whose rights they have been charged with neglecting and betraying ... the attempt to exhaust contractual remedies ... is easily satisfied by petitioners' repeated complaints to company and union officials, and no time-consuming formalities should be demanded of them."); *see also see also Dean v. Trans World Airlines, Inc.,* 924 F.2d 805, 810 (9th Cir. 1991)("Repeated complaints to the Union suffice to excuse exhaustion when the union controls grievance procedures"); *Roeder v. American Postal Workers Union, AFL-CIO,* 180 F.3d 733, 738 (6th Cir. 1999)("well established principle" that an employee does not have to exhaust if "any effort to exhaust the remedies would be futile"); *Mitchell v. Continental Airlines, Inc.,* 481 F.3d 225, 231 (5th Cir. 2007)(same).

Another way to view the issue presented is that employees are also not required to exhaust where, as here, they bring a "hybrid" action under section 301 of the LMRA against the employer and the union which alleges that the employer breached the collective bargaining agreement and the union breached the duty of fair representation. *See Vaca*, 386 U.S. at 185-86; *Herman,* 60 F.3d at 1381; *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 165 (1983)(describing hybrid actions). This exception applies, for example, "where the grievance process fundamentally malfunctions because of the manner in which the union has handled the grievance, or where a union's conduct in processing, or its failure to process, grievances has made it futile to try to exhaust grievance procedures. *Castaneda v. Dura-Vent Corp.,* 648 F.2d 612, 617-618 (9th Cir. 1981)(citations omitted).

It is clear that Plaintiffs repeatedly tried to exhaust the grievance procedures set out in the PCLCD. Local 10 sent a letter on their behalf in May, 2007, requesting that the Joint Port LRC consider their transfer request. Plaintiffs sent another letter requesting a decision by the Joint Port LRC in July 2007, but received no response. They sent an "appeal" to the Joint Coast LRC in September, 2007, which was resubmitted to the Joint Port LRC in

1 October 2007, but they still received no response. Just as in *Herman*, the union let Plaintiffs'
2 grievance "languish in limbo," despite "continual prodding" from Plaintiffs and their
3 attorney, and "failed to offer any explanation" – a course of conduct the Ninth Circuit has
4 found "highly arbitrary." *Herman*, 60 F.3d at 1380. There is no question that Plaintiffs have
5 adequately exhausted the grievance procedures set out in the PCLCD. Plaintiffs are not
6 required to make any more attempts to exhaust than they have already made.

7 Defendants first argue that Plaintiffs' July 17, 2007 letter was not an appeal to the Joint
8 Port LRC because it was addressed to Local 13, not the Joint Port LRC. But, as Defendants
9 acknowledge, the Joint Port LRC is a joint committee of ILWU Local and the PMA. The
10 PCLCD does not specify how a grievance to the Joint Port LRC should be addressed or
11 where it should be filed. PCLCD § 17.41.[5] The July 17, 2007 was an appeal to the Joint Port
12 LRC. Even if it was not, Plaintiffs' September 5, 2007 letter, entitled "Appeal" and
13 redirected to the Joint Port LRC by the Joint Coast LRC, certainly was. Plaintiffs received
14 no response to either.

15 In Reply, ILWU and Local 13 argue that the Ninth Circuit has held that "grievants can
16 utilize the contractual remedy process" set out in the PCLCD "without the help or approval
17 of the union," *Carr*, 904 F.22d at 1319-20, and because the union did not control the
18 grievance process, its failure to act does not excuse exhaustion. *See id.* But Plaintiffs have
19 submitted evidence that the Union *did* control the grievance process – Mr. Freese, the
20 representative of Local 13 at the Joint Port LRC, informed Plaintiffs that Local 13 officers
21 had to approve any request for the Joint Port LRC to act, and that Plaintiffs could not
22 circumvent Local 13's officers.

23 ILWU and Local 13 also argue that the union's failure to act does not excuse exhaustion
24 because "any wrongful action or inaction by defendants here has not 'completely

---

[5] Moreover, Plaintiff Whitten declares that in the first half of 2007, he spoke to an official of the PMA who told him that PMA could not put Plaintiffs' transfer request on the Joint Port LRC agenda, and that only Local 13 could do so. Declaration of Deandre Whitten in Opposition to Motion. ¶ 2. PMA objects that this statement is without sufficient foundation and too vague for the Court to consider. While this evidence may not be sufficient to show the PMA had an opportunity to consider Plaintiff's transfer request, the statement, made under oath, is sufficient to show that Plaintiffs were instructed to direct their request to Local 13.

10

extinguished'" Plaintiffs' claims under the PCLCD, *citing Dutrisac v. Caterpillar Co.*, 749 F.2d 1270, 1274 (9th Cir. 1983). *Dutrisac* and other cases cited by ILWU held only that a union's negligent and unintentional failure perform a ministerial act does not *breach the duty of fair representation* unless that failure completely extinguished the employee's claims. They did not hold that Plaintiffs are *excused from exhausting* their claims only if their claims are extinguished. In any case, Plaintiffs' efforts to have their complaints heard by the Joint Port LRC and Joint Coast LRC constitute all the exhaustion required.

Plaintiffs raise numerous other arguments for why the Court should not require exhaustion on the facts of this case. But they all amount to variations on the same theme: exhaustion is not required if the Defendants have ignored Plaintiffs' complaints. Whether Plaintiffs' repeated letters are construed as requests for transfer or grievances of the denial of the request to transfer, the Joint Port LRC's utter failure to respond – apparently driven by the union – means Plaintiffs are entitled to allege a violation of the PCLCD directly in federal court.

In reply, Defendants ILWU and Local 13 argue that "under the unique circumstances outlined in Plaintiffs' Opposition" they believe "all parties would be best served by having plaintiffs' transfer grievance promptly submitted to the Coast Arbitrator for a final and binding ruling." ILWU/Local 13 Reply at 3. (At the hearing, defendant PMA also expressed a willingness to allow Plaintiffs to skip to the final stage of the grievance procedure). In support of this option, however, the ILWU defendants offer only the national policy favoring arbitration of disputes arising under a collective bargaining agreement. *See United Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 578 (1960). But there is no cogent rationale, under either the PCLCD or the policy favoring exhaustion, for having Plaintiffs leapfrog to the final stage of the grievance procedure as consolation for the fact their earlier efforts to exhaust were ignored.

Defendant PMA argues that because "Plaintiffs allegedly communicated exclusively with the ILWU and Local 13 over the years about their transfer requests (and not with the employers) and because Local 13 allegedly refused to place the issue on the JPLRC's

11

1  agenda, the employers have had no meaningful opportunity to exercise their contractual duty
2  to decide the request at the JPLRC level." PMA Reply at 2.   But the employers'
3  representatives have not, in fact, been wholly excluded from the grievance process.  As set
4  out in exhibits to the Defendants' own motion, the Joint Coast LRC, including twelve
5  employer representatives, *considered Plaintiffs' appeal letter* at the regularly scheduled
6  September 27, 2007 meeting, and the Joint Coast LRC "agreed that the subject transfer
7  requests remained pending at the JPLRC levels." Ortiz Decl. ¶ 15 and Exh. C (Joint Coast
8  LRC Minutes).

9  Moreover, the exhaustion rules set out above depend on the exhaustion efforts of the
10 complaining employee, not on the role of the employer.  An employee is not required to do
11 more than attempt to exhaust contractual grievance procedures. *Seay,* 427 F.2d at
12 1001-1002.  Even if the PMA was shut out of the grievance process to some degree, PMA
13 points to no authority that requires the Court to send Plaintiffs back to the grievance process
14 under the PCLCD on that ground.

15 Accordingly, the Defendants' motion to dismiss the First and Third Causes of Action
16 and compel exhaustion of the contractual grievance arbitration process is DENIED.

17

18 **II.   Plaintiffs' Second Cause of Action Under the LMRDA**

19 Plaintiffs' Second Cause of Action alleges that the "denial of seniority and the blocking
20 of Plaintiffs' right to transfer" described in the Complaint deprived Plaintiffs of their right to
21 equal treatment by the ILWU, in violation of the Labor-Management Reporting and
22 Disclosure Act (LMRDA).  Defendants move to dismiss on the ground that the LMRDA
23 does not provide a right of action for the breach of seniority or contract rights under a
24 collective bargaining agreement alleged in the Complaint.

25 The Court agrees that the Complaint, as currently formulated, does not allege violation
26 of rights protected by the LMRDA.

27 Section 101(a)(1) of the LMRDA provides:
28 Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor

12

>organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

29 U.S.C. § 411(a)(1). This is a pure nondiscrimination provision; it mandates only that if these rights – the rights to nominate candidates, to vote in elections, to attend membership meetings, and to participate in deliberations or voting at such meetings – are given to any members, they must be given to all equally. *Sergeant v. Inlandboatmen's Union of the Pacific,* 346 F.3d 1196, 1201 (9th Cir. 2003)(§ 101 does not provide substantive rights, such as the right to vote on collective bargaining agreements, but instead "requires equal voting rights: ... that rights given to some members must be given to all, subject only to reasonable rules or regulations"); *Stelling v. International Broth. of Elec. Workers Local Union No. 1547,* 587 F.2d 1379, 1384 (9th Cir. 1978).

Plaintiffs' Complaint does not allege that Plaintiffs have been deprived of these LMRDA rights. It alleges only that Defendants blocked Plaintiffs' transfer and improperly allocated work in violation of their seniority rights, and that

>[s]uch discrimination against fully registered, dues-paying members of the International Union is not contemplated by, or authorized in terms of Supplement I of the PCLCD relating to transfers and deprives dues-paying members like Plaintiffs the benefit of the "joint coast registration" and freedom from discrimination guaranteed by the PCLCD and by § 101 of the LMRDA. Further, this discrimination against union members in favor of non-union casuals violates the basic tenets of a seniority system.

*Id.* ¶ 49. At the hearing on this matter, Plaintiffs confirmed that the rights they sought to enforce with this cause of action were their rights to seniority and their right to "equal treatment."

But these are not rights protected by the LMRDA. The LMRDA does not provide equal rights to all union members in every context; it guarantees only that if the *enumerated* rights are granted to some union members, they are granted to all. Plaintiffs cannot take the "equal rights and privileges" language of § 101(a)(1) out of context. They complain they were denied equal treatment in terms of the ability to get work as visitors and to transfer to Local 13. These are rights stemming from the "joint coast registration" and non-discrimination portions of the PCLCD, not the LMRDA. Accordingly, the Complaint, as it stands, does not state a claim under § 101 the LMRDA.

13

In opposition to Defendants' Motion to Dismiss, Plaintiffs argue that they state an LMRDA claim under the Ninth Circuit's decision in *Parish v. Legion*, 450 F.2d 821 (9th Cir. 1971). While their reasoning is not well articulated, Plaintiffs' argument is, in essence, that the LMRDA, as construed by *Parish*, guarantees them equal treatment with respect to transfer and seniority under certain circumstances and therefore provides a cause of action for union members wrongfully denied transfer. This is a mistaken reading of *Parish* and other cases that consider denial of LMRDA rights in the transfer context.

In *Parish,* plaintiffs were union members from one area working as "travelers" (e.g., visiting) in the geographic area of Local 357. Local 357 refused to allow the visitors to vote in Local 357 elections or to vote at meetings on questions affecting their employment contract. *Id.* at 823. Plaintiffs sued under § 101(a)(1) of the LMRDA. The *Parish* court noted that *Hughes v. Local 11 of the International Association of Bridge, Structural and Ornamental Ironworkers, AFL-CIO*, 287 F.2d 810 (3rd Cir. 1961) held that the "equal rights" guaranteed by the LMRDA were extended to "anyone who has fulfilled all of the requirements of membership" under § 3(o) of the Act, 29 U.S.C. § 402(o). *Parish*, 450 F.2d at 824. Thus, in *Hughes*, the plaintiff seeking to "compel transfer of his membership to another local" stated a discrimination claim under the LMRDA, where he alleged he complied with all membership requirement and the International's Constitution required the local to admit him. *Id.*, *citing Hughes*, 287 F.2d at 819.

*Parish* went on to examine the constitution of the union to determine whether it gave the union discretionary power to refuse the plaintiffs membership, or whether it required the union to admit them. *Parish*, 450 F.2d at 825-26. The court found that the constitution required the union to accept travelers who met the conditions of membership. *Id.* at 826. Thus, if plaintiffs met conditions of membership in Local 357, they were "entitled to the rights and privileges guaranteed by Section 101(a)(1)." *Id.* at 827. *See also Woods v. Local Union No. 613 of Intern. Broth. of Elec. Workers,* 404 F.Supp. 110, 113 (D.C.Ga. 1975), *citing Hughes, supra, Parish, supra, and Tomko v. Hilbert*, 288 F.2d 625 (3d Cir. 1961)(plaintiff's "allegations that he has not been recognized by Local 613 as one of its

14

members must be deemed to be the equivalent of an assertion that he is not being accorded the equal rights and privileges within Local 613 secured to members of labor organizations by Section 101(a)(1) and other provisions of the LMRDA. If an individual has complied with the membership requirements of a labor organization then such individual is entitled to the rights and privileges guaranteed by Section 101(a)(1) and may bring a cause of action under the LMRDA"); "Union Member's Right to Transfer to Sister Local," 16 A.L.R. Fed. 927 (1973), § 2(a), 7.[6]

Thus, the *Parish* line of cases provides only that *if* an individual is eligible for membership in a local, and the union must accept transfer under the union's constitution or other applicable rules, then that individual must be afforded equal rights and privileges *guaranteed by the LMRDA* – again, the rights to nominate candidates, to vote in elections, and to attend, deliberate, and vote at membership meetings. These cases do not stand for the proposition that the LMRDA itself protects transfer or seniority rights. In fact, Courts have limited the relief in such LMRDA cases to securing the rights specified in the Act (such as the rights to nominate candidates, to vote in elections, attend membership meetings) and have not ordered an actual transfer of membership. *See, e.g., Parish*, 450 F.2d at 829 (relief is limited to "that appropriate to secure to appellants the equal rights and privileges guaranteed by Section 101(a)(1)"); "Union Member's Right to Transfer to Sister Local," 16 ALR Fed. 927, § 7, *citing Ferger v. Local 483 of Intern. Ass'n of Bridge, Structural and Ornamental Iron Workers, AFL-CIO*, 238 F.Supp. 1016, 1023 (D.N.J. 1964), *aff'd per curiam*, 342 F.2d 430 (3rd Cir. 1966).

Plaintiffs may well be able to state a *Parish* style claim - to allege they were eligible for membership in Local 13 under Articles XVII and XVIII of the union's constitution, and that because they were denied transfer, they were denied "the equal rights and privileges within

---

[6] If, on the other hand, the union constitution at issue allows the local union discretion to reject members attempting to transfer, such individuals do not state a claim under the LMRDA. *See, e.g, Gavin v. Structural Iron Workers Local No. 1 of Intern. Ass'n of Bridge, Structural and Ornamental Iron Workers,* 553 F.2d 28 (7th Cir. 1977).

15

Local [13] secured to members of labor organizations by Section 101(a)(1) and other provisions of the LMRDA." *Woods,* 404 F.Supp. at 113. But they have not done so here. Plaintiffs complain that they were denied work, not voting rights. They allege only a violation of their seniority and transfer rights grounded in the PCLCD. The Complaint makes no allegations that Plaintiffs were denied the right to vote, attend meetings, or any other LMRDA right afforded other members of Local 13; nor does it seek an Order directing Defendants to afford them those rights. *Cf. Parish*, 450 F.2d at 829. Moreover, the Complaint makes no mention of the union's constitutional provisions that allegedly give Local 13 no discretion to refuse them transfer.

Accordingly, the Court will dismiss the Second Cause of Action for failure to state a claim, with leave to amend to state a claim under the LMRDA.

**CONCLUSION**

Defendants' Motion to Compel Exhaustion of Contractual Grievance Arbitration Process and To Dismiss the First and Third Causes of Action is DENIED. The Motion to Dismiss the Second Cause of Action is GRANTED and the Second Cause of Action is DISMISSED with leave to amend.

**IT IS SO ORDERED.**

Dated: April 25, 2008

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT