1  MARK F. SULLIVAN, State Bar No. 111011
2  LAMDIEN T. LE, State Bar No. 185331
   SULLIVAN TAKETA LLP
3  31351 Via Colinas, Suite 205
   Westlake Village, California 91362-3755
4  Telephone: (818) 889-2299
   Facsimile: (818) 889-4497
5  E-mail:    mark.sullivan@calawcounsel.com
            dien.le@calawcounsel.com

6  DENNIS L. KENNELLY, State Bar No. 064916
7  LAW OFFICES OF DENNIS L. KENNELLY
   1030 Curtis Street, Suite 200
8  Menlo Park, California 94025
   Telephone: (650) 853-1291
9  Facsimile: (650) 854-7839
   E-mail:    secretarymim@aol.com

10  Attorneys for Plaintiffs

11

12                    UNITED STATES DISTRICT COURT

13             FOR THE NORTHERN DISTRICT OF CALIFORNIA

14
    JOSÉ AYALA, DEANDRE              CASE NO:  CV-08-0119-TEH
15  WHITTEN, LEROY PHILLIPS,
    GONZALO TORRES, JOSE            [Complaint Filed: January 7, 2008]
16  LINAREZ, KIMANI STAFFORD,
    AND JOSEPH LAWTON,
17  individuals,                     FIRST AMENDED COMPLAINT FOR:

18              Plaintiffs,
                                     (1) BREACH OF COLLECTIVE
19  vs.                                  BARGAINING AGREEMENT;
                                         VIOLATION OF LABOR
20  PACIFIC MARITIME                     MANAGEMENT RELATIONS
    ASSOCIATION, a California            ACT (29 U.S.C. § 185 et seq.);
21  corporation; INTERNATIONAL
    LONGSHORE AND WAREHOUSE        (2) VIOLATION OF LABOR-
22  UNION, a labor organization; and     MANAGEMENT REPORTING
    INTERNATIONAL LONGSHORE           AND DISCLOSURE ACT (29
23  AND WAREHOUSE UNION,               U.S.C. § 411 et seq.); AND
    LOCAL 13, a labor organization; and
24  DOES 1 through 10,               (3) INJUNCTION TO PRESERVE
                                         SENIORITY RIGHTS
25              Defendants.
                                     DEMAND FOR JURY TRIAL
26

27

28

                                  1
                    FIRST AMENDED COMPLAINT
                    Case No. CV-08-0119-TEH

1    Plaintiffs José Ayala, Deandre Whitten, Leroy Phillips, Gonzalo Torres, José

2  Linarez, Kimani Stafford, and Joseph Lawton ("Plaintiffs"), complain against

3  Defendants Pacific Maritime Association ("PMA"), International Longshore and

4  Warehouse Union (the "ILWU" or the "International Union"), and International

5  Longshore and Warehouse Union, Local 13, ("Local 13") as follows:

6                               **NATURE OF CASE**

7    1.    Plaintiffs José Ayala (1998), Deandre Whitten (2002), Leroy Phillips

8  (1997), Gonzalo Torres (2000), José Linarez (2000), Kimani Stafford (2000), and

9  Joseph Lawton (1998), are individuals who began their careers as longshoreman in the

10  in the Port of San Francisco-Oakland.  Like most longshoremen, they first worked as

11  "casuals" until they completed an initiation period of one to two years depending on the

12  work flow.  As casuals, Plaintiffs paid union dues but only for the days when they

13  worked.  In the year listed above after each Plaintiff's name, each Plaintiff was elevated

14  from casual status and added to the list of registered longshoremen in the Port of San

15  Francisco and Oakland.  In the Port of San Francisco and Oakland, the terms and

16  conditions of working as a longshoreman are governed by the Pacific Coast Labor

17  Contract Document ("PCLCD").  In each port covered by the PCLCD, there is labor-

18  management Joint Port Labor Relations Committee ("JPLRC") established by the

19  ILWU, the local port ILWU local union, and the Pacific Maritime Association

20  ("PMA"), the collective bargaining representative of the shipping companies,

21  warehousing companies and stevedoring companies that employ longshoreman.  This

22  JPLRC controls the lists of registered longshoremen and is charged with protecting

23  seniority rights in the dispatching of longshoremen.

24    2.    Plaintiffs have completed the on-the-job experience and formal training

25  required by PMA and the ILWU for elevation to the status of being "fully registered"

26  longshore workers, often referred to as being an "A man," "holding an A Book," or

27  being a "Class A longshoremen" to distinguish trained and experienced longshoremen

28

1  from junior or apprentice workers who have "limited registration" which is often

2  referred to as being a "B man," "holding a B Book," or being a "Class B

3  longshoremen."  As fully registered Class A longshoreman, Plaintiffs are entitled by the

4  express provisions of the PCLCD, to receive a first preference in dispatching.  Further,

5  under the constitution of the International Union and under the PCLCD, fully registered

6  Class A longshoremen like Plaintiffs have "coastwise registration" and the right to

7  transfer with their seniority to other ports governed by the PCLCD.

8      3.    For approximately five years or more, each of the Plaintiffs has been

9  seeking a transfer from the Port of San Francisco-Oakland, which is within the

10 jurisdiction of the hiring hall operated by the PMA and Local 10 of the ILWU to the

11 Port of Los Angeles and Long Beach which is within the jurisdiction of the hiring hall

12 operated by the PMA and Local 13.  Notwithstanding a right to such a transfer under

13 the constitution of the International Union and the PCLCD, with the acquiescence of the

14 International Union and of PMA, Local 13 has continuously blocked Plaintiffs' right to

15 make such a transfer.  This denial has continued while the Port of  Los Angeles-Long

16 Beach has had labor shortages and has elevated to limited registration status a large

17 number of casual workers (believed to be in excess of 1,000 new additions) who are not

18 fully qualified to operate the cranes and other equipment that Plaintiffs are fully

19 certified to work.  Because they have been denied transfers, Plaintiffs have only been

20 able to work in the Port of Los Angeles-Long Beach as "visitors" which is a status that

21 affords Plaintiffs dispatch rights inferior to those granted Local 13's newly-added Class

22 B longshoremen.  This denial of seniority and the blocking of Plaintiffs' right to transfer

23 is a breach of the PCLCD, and it denies Plaintiffs their rights to equal treatment by the

24 ILWU contrary to § 101 of the Labor-Management Reporting and Disclosure Act, 29

25 U.S.C. § 411 *et seq.*

26 ///

27 ///

28 ///

**PARTIES**

4.     Defendant PMA is a corporation incorporated under the laws of the State of California.  PMA is the agent which negotiates and administers the PCLCD, the governing collective bargaining agreement, on behalf of its ship owners, stevedoring companies and other shipping-related concerns who are all engaged in the business of carrying cargo by sea to or from the ports on the Pacific Coast of the United States, including inland and river ports that load and unload ocean-going vessels.  PMA acts as the employers' collective bargaining representative supervising, directing and paying longshore and warehouse workers dispatched to various member shippers' ships and warehouses and other facilities or sites to perform loading, unloading and related services.

5.     Defendant International Union is a voluntary association and a labor organization representing employees in an industry affecting commerce within the meaning of § 301 Labor Management Relations Act, 29 U.S.C. § 185 *et seq.*  Defendant International Union is the entity which negotiated the PCLCD with the PMA and, at all times material hereto, Defendant International Union has been the collective bargaining agent representing the interests of longshore and warehouse workers working under the PCLCD at all West Coast ports, including longshore and warehouse workers working in the Port of San Francisco (ILWU Local 10) and in the Port of Los Angeles and Long Beach (ILWU Local 13).

6.     Defendant Local 13 is one of the International Union's component local unions and, as such, is a voluntary association and a labor organization representing employees in an industry affecting commerce within the meaning of § 301 Labor Management Relations Act, 29 U.S.C. § 185.  At all times material hereto, Defendant Local 13 has been the collective bargaining agent representing the interests of longshore

1 and warehouse workers working under the PCLCD in the Los Angeles and Long Beach

2 Harbor.

3       7.    The true names and capacities, whether individual, corporate, associate, or

4 otherwise, of Defendants sued herein as DOES 1 through 10, inclusive, are currently

5 unknown to Plaintiffs, who therefore sue Defendants by such fictitious names.

6 Plaintiffs are informed and believe, and based thereon allege, that each of the

7 Defendants designated herein as a DOE is legally responsible in some manner for the

8 unlawful acts referred to herein.  Plaintiffs will seek leave of Court to amend this

9 Complaint to reflect the true names and capacities of the Defendants designated

10 hereinafter as DOES when such identities become known.

11       8.    Plaintiffs are informed and believe, and based thereon allege, that each

12 Defendant acted in all respects pertinent to this action as the agent of the other

13 Defendants, carried out a joint scheme, business plan, control, or policy in all respects

14 pertinent hereto, and the acts of each Defendant are legally attributable to the other

15 Defendants.  Plaintiffs are informed and believe, and on that basis allege that

16 Defendants have joint or shared operational control over Plaintiffs.

17 **JURISDICTION**

18       9.    This action arises under § 301 of the Labor Management Relations Act

19 ("§ 301 LMRA"), 29 U.S.C. § 185 *et seq.*, and under § 101 of the Labor-Management

20 Reporting and Disclosure Act ("§ 101 LMRDA"), 29 U.S.C. § 411 *et seq.*

21       10.    This Court has jurisdiction over this action under § 301 LMRA and § 101

22 LMRDA because it presents a federal question within the meaning of 28 U.S.C. § 1331.

23 **VENUE**

24       11.    The denial by Defendant Local 13 of Plaintiffs' attempts to exercise their

25 rights under the PCLCD to transfer from the Port of San Francisco-Oakland (ILWU

26 Local 10) to the Port of Los Angeles-Long Beach (ILWU Local 13) has denied

27 Plaintiffs their seniority rights under the PCLCD, most importantly, their right to be

28

1 dispatched to work in the Port of Los Angeles and Long Beach with the preference due

2 Class A longshoreman.  Plaintiffs have, instead, been relegated to the status of being

3 dispatched to longshore jobs as visitors.  As visitors, Plaintiffs are dispatched after

4 Local 13's Class B longshoremen and only if there are jobs left unfilled by the Local 13

5 members.  The headquarters and offices of the decision-makers of the PMA (located at

6 555 Market Street, San Francisco) and of the decision-makers of the International Union

7 (located at 1188 Franklin Street, San Francisco) who have maintained this policy of

8 blocking transfers into the Port of Los Angeles and Long Beach are within the

9 geographical jurisdiction or venue of this Court.

10      12.    The ultimate decision to block Plaintiffs' PCLCD transfer requests was

11 made within the geographical jurisdiction or venue of this Court by the Joint Coast

12 Labor Relations Committee ("JCLRC").  The JCLRC is a joint labor-management

13 committee which Defendant PMA and Defendant International Union established to be

14 the final decision authority on matters involving the operation of dispatch halls and

15 issues about union members' registration status and rights.  The JCLRC has its meetings

16 (located at the PMA's or the International Union's headquarters in San Francisco)

17 within the geographical jurisdiction or venue of this Court, and Plaintiffs are informed

18 and believe, and thereon allege, that the ultimate decision to ignore Plaintiffs' properly

19 presented transfer requests was made at those headquarters offices in San Francisco.

20 **FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

21      13.    In the years stated in paragraph 1, above, Plaintiffs were initially registered

22 as longshoremen by working in the Ports of San Francisco and Oakland, ports served by

23 a dispatch hall at Fisherman's Wharf in San Francisco jointly operated by the PMA, the

24 International Union and by its local union, Local 10.  Plaintiffs have all completed the

25 on-the-job experience and formal training required by and jointly conducted by PMA

26 and the ILWU for elevation to the status of being "fully registered" longshore workers,

27

28

1  and they have all been registered as "Class A longshoremen" by the Port of San

2  Francisco and Oakland JPLRC.

3      14.    Section 8 of the PCLCD, the governing collective bargaining agreement, is

4  entitled "Dispatching, Registration, And Preference." Under the terms of subsections

5  8.1 and 8.41 of the PCLCD, longshoremen seeking work in the Port of San Francisco

6  and Oakland are dispatched by the exclusive, central hiring hall at Fishermen's Wharf in

7  San Francisco, which is jointly maintained and operated by the PMA, the International

8  Union and ILWU Local 10. Similarly, longshoremen seeking work in the Port of Los

9  Angeles and Long Beach, are dispatched by the exclusive, central hiring hall in

10  Wilmington, California, which is jointly maintained and operated by the PMA, the

11  International Union and ILWU Local 13. A longshore worker does not need to be a

12  member of the ILWU, or of any of its affiliated local unions to be dispatched for work,

13  but preference in dispatching is required to be given to fully registered Class A

14  members of the ILWU qualified to do the work at hand over B Men, and preference is

15  similarly required to be given to all registered longshore workers, A Men and B Men,

16  over casual workers.

17      15.    Under the terms of subsection 8.43 of the PCLCD, "[t]here shall be no

18  favoritism or discrimination in the hiring or dispatching or employment of any

19  longshoremen qualified and eligible under the Agreement."

20      16.    Under the terms of subsection 8.32 of the PCLCD, "[a]ny longshoreman

21  registered by a Joint Port Labor Relations Committee in accordance with [the PCLCD]

22  shall thereby acquire joint coastwise registration under [the PCLCD.]" This means that

23  a longshoreman once registered at one West Coast port retains his status as a registered

24  member and, as such, has a priority for dispatch at any West Coast port over any non-

25  registered "casual" worker with the assurance of acceptance in the receiving port of

26  his/her "A Man" status.

27

28

17.    The benefits of "coastwise registration" under the PCLCD are detailed in Supplement I to the PCLCD, entitled "Coastwise Registration And Transfer." This Supplement creates two relevant rights: a right to a right to visit, and a right to transfer to other ports.

<u>THE RIGHT TO VISIT</u>

18.    The right to visit is supposed to be a liberally applied privilege. Under the terms of Supplement I, Section 2.1, of the PCLCD, "[f]ully registered men shall be freely accorded visiting privileges subject to the manpower needs of their home port and the port to be visited . . . ." Further, under the terms of Supplement I, Section 3.2, of the PCLCD, "[a]ny fully registered longshoreman having visitor status hereunder shall be given work opportunity equal to that of fully registered men at the port visited."

<u>THE RIGHT TO TRANSFER</u>

19.    The right to transfer is the other right expressly addressed in Supplement I, Section 1.1, of the PCLCD. The criteria and procedure for a fully registered member of the International Union to obtain a transfer to a new home port is specifically described, namely:

    1.1    A longshoreman having fully registered status as a Class A longshoreman may transfer to another port, and as a fully registered Class A longshoreman at such other port, provided;

    1.11    The Joint Port Labor Relations Committee at the former home port determines that a transfer is warranted on the basis of work opportunity or that there are compelling reasons for letting him transfer despite the need for him at that port and that there is an opening available for him at the port to which he seeks to be transferred.

**FIRST AMENDED COMPLAINT**
Case No. CV-08-0119-TEH

1.12  Transfers shall not be permitted if contrary to policies established by the Joint Coast Labor Relations Committee; and

1.13  The Joint Port Labor Relations Committee to which transfer is made, by applying the usual rules finds there is an opening available for him on the list of such port and approves him for transfer of registration.

1.2  A request for transfer may be denied by the Joint Port Labor Relations Committee of the port from which transfer is sought if the longshoreman is needed at that port or if he has not had a satisfactory record at that port.

1.3  No longshoreman shall be eligible for transfer who within a year of the application has been the subject of major discipline.

1.4  A request for transfer may be denied by the Joint Port Labor Relations Committee of the port to which the man seeks to transfer. Any denial of transfer, except because there is no opening available on its list, shall be subject to review in accordance with the procedure and rules that are applicable.

1.5  No fully registered man shall be entitled to transfer under these provisions until he has held such status for at least 1 year.

1.6  Hereunder, a fully registered longshoreman may transfer only to fully registered status as a longshoreman in another port. The place of the transferred man on the Class A list of the port to which he transfers shall be determined by his total Class A and Class B registered time as compared to such

time of those on the Class A list of the port to which he transfers.

1.7    Fully registered men having less than 1 year of such status and limited registered men may apply for inclusion on the limited registered list of another port and consideration shall be given to the work and availability record under the Pacific Coast Longshore Agreement in taking action on such applications.

An application of such a longshoreman for limited registration in the second port shall be considered without discrimination based upon his failure to be a resident of the port to which application is made provided the Joint Port Labor Relations Committee of the port where he has limited registration certifies to the Joint Port Labor Relations Committee of the port where application is made that the applicant has a fully satisfactory record as a longshoreman in the port where registered and that there is no reason to interfere with his transfer that is deemed sufficient by the Joint Port Labor Relations Committee. In considering the application of a limited registered longshoreman from another port, consideration may be given to his employment provided the favorable certification referred to above is submitted by the Joint Port Labor Relations Committee where he has been registered.

///
///

## 2004 MASS ELEVATION OF CASUALS

20.    At all times prior to late 2004 and relevant to Plaintiffs' careers as longshoremen, there was a continuing and increasingly serious shortage of longshore labor, particularly trained longshore labor, in the Port of Los Angeles and Long Beach. By late 2004, this shortage had become so acute that the PMA authorized creating 3,000 new casual jobs with no requirement of prior experience in longshore work. Concurrently, ILWU and Local 13 relaxed standards and elevated to registered B Man status over 1,000 casuals.  Plaintiffs are informed and believe, and thereon allege, that many of these new B Man registrations were parceled out on the basis of favoritism or nepotism or for monetary consideration to friends, relatives or other acquaintances of individual officers or former officers of Local 13.  Additionally, Plaintiffs are informed and believe, and thereon allege, that since that 2004 expansion of the casual labor pool, on the basis of nepotism or favoritism or in return for covert transfers of consideration, individual officers or former officers of Local 13 have conspired with agents or employees of PMA to inflate or falsify work records of certain casuals to accelerate the elevation of those persons to B Man status.

21.    Prior to the mass elevation of casuals to B Men in late 2004 described above, each of the Plaintiffs has developed a personal or family need to move from the San Francisco Bay Area to the Los Angeles area.  Plaintiffs have moved their residences to Southern California or are commuting from Northern California to Southern California at substantial expense and loss of personal free time as they have tried to obtain transfers to Local 13.

22.    Notwithstanding the clearly stated right to a transfer under PCLCD Supplement I, and the assurance of equal and fair treatment of all fully registered Class A longshoremen stated in the constitution of the International Union, Local 13's officers and agents have continuously rebuffed transfer inquiries from the Plaintiffs, and each of them, telling Plaintiffs that they need to prove a "legitimate personal reason" to want a

11

**FIRST AMENDED COMPLAINT**
Case No. CV-08-0119-TEH

1    transfer without specifying which family or personal needs would be "legitimate" or the

2    authority to require such a showing from Plaintiffs.  In addition, Plaintiffs have been

3    repeatedly told that they should not even try to request a transfer because any such

4    request will never make it through the Local 13 Executive Board, a committee of local

5    union officers, and therefore would never be presented to or considered by the local Port

6    of Los Angeles and Long Beach union membership.

7        23.    At the time these transfer requests from Plaintiffs were being denied (i.e.,

8    prior to the 2004 mass elevation of casuals in the Port of Los Angeles and Long Beach),

9    there was a chronic shortage of qualified longshoremen in the Port of Los Angeles and

10    Long Beach.  Plaintiffs are informed and believe, and thereon allege, that they were

11    improperly denied the right to transfer despite the shortage of longshoremen in the Port

12    of Los Angeles and Long Beach, because including but not limited to: officers and other

13    persons in control of Local 13 were parceling out registration status in Local 13 either

14    for cash or other consideration or on the basis of nepotistic preferences for friends and

15    family in violation of Plaintiffs' seniority rights.

16        24.    This practice by Local 13 of discouraging or blocking transfers into Local

17    13 is specifically intended to discriminate in favor of the individuals favored by Local

18    13's controlling officers and former officers, and it achieves the intended result by

19    affording the favored persons who have no seniority or less seniority than Plaintiffs in

20    the International Union a greater, indeed unique, opportunity to move from being mere

21    casuals to becoming registered members by eliminating competition for available work

22    by more senior and fully registered members from other ports such as the Plaintiffs.

23        25.    Although they were continuously denied permanent transfers to Local 13,

24    until approximately early 2003, Plaintiffs' status as fully registered Class A

25    longshoremen was recognized by Local 13 which allowed them to check in at the Local

26    13 dispatch hall where Plaintiffs and similarly situated visiting longshoremen were

27    dispatched to jobs in the Port of Los Angeles – Long Beach immediately after Local

28

1  13's Class A longshoremen.   After a member of Local 10 filed a suit and otherwise

2  formally protested the denial by Local 13 of a right under the PCLCD to transfer

3  permanently from Local 10 to Local 13, this practice of honoring Plaintiffs' seniority as

4  Class A longshoremen was abruptly terminated and Plaintiffs were able to obtain work

5  in the Port of Los Angeles and Long Beach only by being dispatched after Local 13's

6  Class B longshoremen.  In this junior dispatch position, Plaintiffs frequently did not

7  receive dispatch to the premium jobs that they would have otherwise been qualified to

8  take by virtue of their training and experience.  After the late 2004 mass elevation of

9  casuals to Class B status in the Port of Los Angeles and Long Beach, this new practice

10 of dispatching Plaintiffs after Local 13's B men often resulted in Plaintiffs having no

11 work.  Further, even when Plaintiffs were dispatched, they were sent to the least

12 desirable, junior man jobs incurring losses of pay and benefits and, more importantly,

13 incurring a loss of the opportunity to perform "skill jobs" acquiring additional

14 experience in those heavy equipment operating jobs which is essential to being hired as

15 a steady worker by the individual shipping and stevedoring companies in the Port of Los

16 Angeles and Long Beach which are member-employers of PMA.

17        26.    Plaintiffs will show at trial that longshoremen employed as steady workers

18 in the Port of Los Angeles and Long Beach typically and on average earn significantly

19 more over their careers than longshoremen dispatched from the Local 13 hiring hall.

20 Thus, being denied their Class A status continuously retarded Plaintiffs' earning

21 capacities as longshoremen.

22        27.    After the mass elevation of Class B longshoremen in late 2004, Plaintiffs

23 have frequently not been able to obtain any work in the Port of Los Angeles and Long

24 Beach because they are not dispatched until after the most junior of the newly-elevated

25 workers.  Thus, Plaintiffs' coastwise seniority has been seriously undermined and

26 diluted.

27

28

**FIRST AMENDED COMPLAINT**
**Case No. CV-08-0119-TEH**

28.     Because they could no longer receive steady work as visitors after the 2004 mass elevation of Class B longshoremen, Plaintiffs inquired repeatedly about formally transferring.  Various officers of Local 13 told one or more of Plaintiffs not to make any more requests and reminded them that working in Local 13's jurisdiction is a privilege which can be denied at any time, not a right, and that should be remembered before making any issue about a permanent transfer.

29.     Plaintiffs perceived the foregoing comments about not being able to work in the Port of Los Angeles and Long Beach to be threats of retaliation, and Plaintiffs allege that these comments were intended to be taken as threats of retaliation.

30.     Plaintiffs continued to press Local 13 for transfers, and Plaintiffs are informed and believe, and thereon allege, that retaliatory action was taken against them to discourage them from pursuing their transfer rights.  Among other things, the Local 13 hiring hall adversely changed the long-standing procedures which had allowed visitors like Plaintiffs to check in to the hiring hall as a visitor for thirty days.  In a change that most directly affected Plaintiffs (and which appears to have been targeted at Plaintiffs), they were required to go through a cumbersome daily process of "volunteering off the floor" of the hiring hall.  This new procedure reduced Plaintiffs' assurance of obtaining work even further making them the functional equivalent of casual workers who have no standing in the International Union and no seniority.

31.     The aforementioned adverse changes in the hiring hall dispatching procedures occurred shortly after Plaintiffs had complained about being denied their transfer rights and shortly after they were told not to press for their rights.  On that basis, Plaintiffs have concluded that the adverse changes in the hiring hall dispatching procedures were intended to be retaliatory.

32.     Having been so denied their rightful places and seniority rights, Plaintiffs began pursuing formal transfer applications under the terms of the PCLCD, Supplement I.  Specifically, each of the Plaintiffs received permission from Local 10 to seek a

1  transfer as outlined in the PLLCD Supplement I. The Plaintiffs then sought approval
2  from Local 13 to transfer their membership. Local 13 denied that approval with no
3  explanation.
4      33.    Plaintiffs then appealed Local 13's failure to process their transfer requests
5  to the JPLRC in Los Angeles-Long Beach. The Los Angeles JPLRC neither
6  acknowledged nor acted upon their request. A copy of that request, dated July 17, 2007,
7  is attached hereto as Exhibit "A."
8      34.    Upon getting no response from the Los Angeles-Long Beach JPLRC,
9  Plaintiffs then attempted jointly and through counsel to appeal the denial of their right to
10  transfer to the JCLRC. A copy of that request, dated September 5, 2007, is attached
11  hereto as Exhibit "B." Plaintiffs are aware of no other administrative options or
12  remedies that they can exercise or pursue.
13      35.    Plaintiffs are informed and believe and on that basis allege that the same
14  exclusionary policies that had been applied to them prior to the 204 mass elevation of
15  Class B longshoremen is still being applied in the Port of Los Angeles and Long Beach.
16      36.    At the present time, Plaintiffs are informed and believe, and thereon allege,
17  that employees of PMA are conspiring with Local 13 to inflate the hours worked by
18  select casuals at PMA represented employers. The effect of the creation of these
19  phantom hours is to speed the advancement of these select casuals up the eligibility
20  structure for advancement to registered status. This scheme is a further violation of the
21  contractual seniority rights of Plaintiffs and others similarly situated.
22      37.    From the beginning of the Plaintiffs' attempts to transfer into Local 13,
23  Local 10 in San Francisco has consistently supported the validity of the proposed
24  transfers, treating the position taken by Local 13 and by acquiescence PMA and the
25  International as a continuation of Local 13's longstanding and parochial exclusionary
26  policy antithetical to the well established seniority rights of longshoremen from other
27  ports working under the PCLCD.
28

38.    PMA has acquiesced in Local 13's and the International Union's denial of Plaintiffs' rights by not allowing consideration of Plaintiffs' challenge to Local 13's rejection of their transfer request at both the JPLRC and the JCLRC levels.

## FIRST CAUSE OF ACTION

### For Breach of Collective Bargaining Agreement;

### Violation of Labor Management Relations Act (29 U.S.C. § 185 *et seq.*)

### (*Against All Defendants*)

39.    Plaintiffs reallege and incorporate paragraphs 1 through 38 as though fully set forth herein.

40.    Plaintiffs and Defendants are governed by Pacific Coast Labor Contract Document ("PCLCD"), which is the applicable collective bargaining agreement for longshoremen.  Defendants are strictly obligated to act in accordance with the PCLCD.

41.    Among the purposes and policies of the Labor Management Relations Act, 29 U.S.C. § 185 *et seq.* is to prescribe the legitimate rights of employees and to protect the rights of individual employees in their relations with labor organizations.  These rights and protections include, inter alia, the right of employees to organize and bargain collectively, by encouraging practices fundamental to the friendly adjustment of industrial disputes arising out of differences as to wages, hours, or other working conditions, and by restoring equality of bargaining power between employers and employees for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection.

42.    The denial of seniority and the blocking of Plaintiffs' right to transfer is a breach of the PCLCD and it denies Plaintiffs their rights to equal treatment by the ILWU contrary to the PCLCD and the Labor Management Relations Act.

43.    By failing to fully and fairly represent Plaintiffs in the exercise and enforcement of their PCLCD transfer rights, the Defendants have breached their duty of fair representation to Plaintiffs.

44.    As a direct and proximate result of Defendants' failure to comply with their obligation and duties as stated in the PCLCD and in violation of the LMRA, Plaintiffs have suffered and continue to suffer monetary damages. Had PMA referred this matter to the Area Arbitrator or to the Coast Arbitrator as only it could do in light of the breach of duty of fair representation by Defendants, the lost work and lost pay incurred by Plaintiffs would have ended when the Area or Coast Arbitrator enforced the PCLCD requiring Local 13 to honor the transfer requests. Because PMA failed to take the steps necessary to enforce the PCLCD and thereby acquiesced in Local 13's directive to breach the PCLCD, PMA should be jointly and severally liable with the International Union and with Local 13 for such otherwise avoidable damages. Therefore, Plaintiffs are entitled to recover their lost work, lost pay, and lost opportunity damages from Defendants and each of them. Plaintiffs are also entitled to recover their expenses and costs for having to relocate and/or commute from Northern California to Southern California during the time they have tried to obtain transfers.

45.    Additionally, the breach by Defendants of their duty of fair representation has caused Plaintiffs to incur attorneys' fees and expenses that they should not have been required to pay, making such fees and expenses additional damages which are the direct and proximate result of these Defendants' unlawful practices alleged herein.

## SECOND CAUSE OF ACTION

### For Violation of Labor-Management Reporting and Disclosure Act

### (29 U.S.C. § 411 *et seq.*)

### (*Against All Defendants*)

46.    Plaintiffs reallege and incorporate paragraphs 1 through 38 as though fully set forth herein.

47.    Among the purposes and policies of he Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411 *et seq.* is to protect employees' rights to organize, choose their own representatives, bargain collectively, and otherwise engage

1  in concerted activities for their mutual aid or protection, so that labor organizations,

2  employers, and their officials adhere to the highest standards of responsibility and

3  ethical conduct in administering the affairs of their organizations, particularly as they

4  affect labor-management relations. The LMRDA was also enacted to eliminate or

5  prevent improper practices on the part of labor organizations, employers, labor relations

6  consultants, and their officers and representatives which distort and defeat the policies

7  of the Labor Management Relations Act. Such instances of improper practices include

8  breach of trust, corruption, disregard of the rights of individual employees, and other

9  failures to observe high standards of responsibility and ethical conduct.

10      48.    Under Article XVII ("Transfers") of the Constitution of the International

11  Longshore & Warehouse Union (as amended May 2006), there is no provision granting

12  local union autonomy to refuse the acceptance of a transfer where the member has

13  complied fully with the conditions for transfer. Such conditions stated are as follows:

14          SECTION 1. No member shall be allowed to transfer more than

15          once in a year, unless by mutual agreement of the locals

16          involved.

17          SECTION 2. No member shall be allowed to transfer unless

18          he/she has been a member of his/her local for three (3) years or

19          more.

20          SECTION 3. Before any member can be accepted as a transfer

21          he/she must first secure a clearance from his/her own local.

22          He/she shall then submit a letter to the local he/she wishes to

23          transfer to, stating the time he/she has been affiliated with the

24          previous local and the date transfer was issued.

25          SECTION 4. Any member accepted for transfer shall not be

26          required to pay any initiation fee.

27

28

1          SECTION 5.  The rights, rules and procedure for transfer shall

2          be determined by the respective industry divisions of the union.

3     49.    Plaintiffs have satisfied all the conditions set forth above in Article XVII of

4   the ILWU Constitution.  As stated in the minutes, dated March 29, 2007, of the

5   Longshore Labor Relations Committee of San Francisco, Plaintiffs have been approved

6   for transfer to Local 13 and that Local 10 would contact Local 13 about this matter.

7   This was further confirmed in a letter, dated May 24, 2007, from Local 10's Secretary-

8   Treasurer to Local 13's Secretary-Treasurer stating that Plaintiffs "are all in good

9   standing and are hereby cleared for their request to transfer to ILWU Local #13.  Please

10  address this issue at our next LRC Meeting."

11    50.    Article V of the ILWU Constitution provides that "[n]othing in the

12  Constitution or by-laws of any local shall conflict with any of the provisions of this

13  Constitution ...."  Therefore, because Plaintiffs have complied with Article XVII of the

14  ILWU Constitution, Local 13 *must* accept their transfer.  Defendants' denial of seniority

15  and the blocking of Plaintiffs' right to transfer is a breach of Article XVII of the ILWU

16  Constitution, and it denies Plaintiffs the equal rights and privileges (e.g., to nominate

17  candidates, to vote in elections, and to attend, deliberate, and vote at membership

18  meetings) within Local 13 secured to members of labor organizations by section

19  101(a)(1) and other provisions of the LMRDA.

20    51.    Such discrimination against fully registered, dues paying members of the

21  ILWU is *not* contemplated by, or authorized under Article XVII of the ILWU

22  Constitution, or under the terms of Supplement I of the PCLCD relating to transfers, and

23  deprives dues-paying members like Plaintiffs the benefit of the "joint coast registration"

24  and freedom from discrimination guaranteed by the ILWU Constitution, the PCLCD,

25  and by section 101 of the LMRDA.  Further, this discrimination against union members

26  in favor of non-member casuals violates the basic tenets of a seniority system.

27

28

52.    As a direct and proximate result of Defendants' failure to comply with their obligation and duties as stated in the ILWU Constitution, in the PCLCD, and in violation of the LMRDA, Plaintiffs have suffered and continue to suffer monetary damages. Therefore, Plaintiffs are entitled to recover their lost work, lost pay, and lost opportunity damages from Defendants and each of them. Plaintiffs are also entitled to recover their expenses and costs for having to relocate and/or commute from Northern California to Southern California during the time they have tried to obtain transfers.

53.    Further, Plaintiffs are entitled to an order directing that Defendants afford Plaintiffs the equal rights and privileges (e.g., to nominate candidates, to vote in elections, and to attend, deliberate, and vote at membership meetings) within Local 13 secured to members of labor organizations by section 101(a)(1) and other provisions of the LMRDA.

54.    Moreover, the breach by Defendants of their duty of fair representation has caused Plaintiffs to incur attorneys' fees and expenses that they should not have been required to pay, making such fees and expenses additional damages which are the direct and proximate result of these Defendants' unlawful practices alleged herein.

### THIRD CAUSE OF ACTION

**For Injunction to Preserve Seniority Rights**

*(Against All Defendants)*

55.    Plaintiffs reallege and incorporate paragraphs 1 through 38 as though fully set forth herein.

56.    Based on Defendants' conduct as alleged above, Plaintiffs will seek injunctive relief from the Court to assist them in regaining the rightful place that, but for the unlawful denial of their transfer and seniority rights, they would have held in the longshore labor pool in the Port of Los Angeles and Long Beach. However, if the Court is unable to fashion an equitable remedy that would grant Plaintiffs complete restoration to their rightful places in the longshore labor pool in the Port of Los Angeles and Long

1  Beach, Plaintiffs will seek as damages compensation for the losses they have

2  individually incurred and will incur as a result of having had their respective careers

3  stunted by a prolonged period of working as visitors in the Port of Los Angeles and

4  Long Beach rather than holding their rightful place as fully registered Class A

5  longshoremen.

## PRAYER FOR RELIEF

7  WHEREFORE, Plaintiffs pray for the following relief:

8      1.    For an order of the Court declaring: (i) that Plaintiffs properly completed a

9  transfer to Local 13 under the terms of the PCLCD, Supplement I; (ii) that Plaintiffs

10 have satisfied all the transfer requirements under Article XVII of the ILWU

11 Constitution; (iii) that the failure by Local 13 to submit the Plaintiffs' grievances

12 concerning their transfer requests breached the duty of fair representation owed to

13 Plaintiffs, individually and collectively, by Local 13 and the International Union; (iv)

14 that the failure by Local 13 and the International Union to honor Plaintiffs' seniority

15 violated their rights under the ILWU Constitution and therefore violated their rights to

16 equal protection and non-discrimination under the LMRDA; and (v) that the PMA

17 aided, abetted and conspired with Local 13 and the International Union in this violation

18 of the LMRDA;

19     2.    For an order directing that Defendants afford Plaintiffs the equal rights and

20 privileges (e.g., to nominate candidates, to vote in elections, and to attend, deliberate,

21 and vote at membership meetings) within Local 13 secured to members of labor

22 organizations by section 101(a)(1) and other provisions of the LMRDA;

23     3.    For judgment against the International Union and against Local 13, jointly

24 and severally, for all of the lost wages and benefits that Plaintiffs have incurred and will

25 incur as a result of being denied transfers, together with all of their costs and attorneys'

26 fees incurred in bringing and maintaining this action;

27

28

FIRST AMENDED COMPLAINT
Case No. CV-08-0119-TEH

1    4.    For judgment against PMA for that portion of Plaintiffs' lost wages and

2 benefits that would have otherwise been avoided had PMA not acquiesced in the

3 direction by the International Union and by Local 13 to deny Plaintiffs their transfer

4 rights;

5    5.    For judgment against all Defendants for allowable interest and the taxable

6 costs incurred herein; and

7    6.    For such other and further relief as may be just and equitable.

8

9 DATED: May _16_, 2008                SULLIVAN TAKETA LLP

10

11                                By: _____

12                                    Mark F. Sullivan
                                     Attorneys for Plaintiffs
13

14

15                        **DEMAND FOR JURY TRIAL**

16    Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal

17 Rules of Civil Procedure.

18 DATED: May _16_, 2008                SULLIVAN TAKETA LLP

19

20

21                                By: _____

22                                    Mark F. Sullivan
                                     Attorneys for Plaintiffs
23

24

25

26

27

28