**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOSE AYALA et al.,

              Plaintiffs,

    v.

PACIFIC MARITIME
ASSOCIATION, et al.,

              Defendants.

NO. C 08-0119 TEH

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANT PACIFIC
MARITIME ASSOCIATION'S
MOTION FOR GOOD FAITH
SETTLEMENT
DETERMINATION AND ORDER
BARRING CLAIMS FOR
CONTRIBUTION AND
INDEMNIFICATION

The Court is in receipt of Defendant Pacific Maritime Association's ("PMA") Motion for Good Faith Settlement Determination and Order Barring Claims for Contribution and Indemnification, Defendants' International Longshore and Warehouse Union and ILWU Local 13 ("Unions") Opposition, and PMA's Reply. Having carefully considered these submissions, the Court has concluded that the matter can be resolved on the papers and that a hearing is unnecessary. For the following reasons, PMA's Motion is GRANTED IN PART and DENIED IN PART.

**FACTUAL AND PROCEDURAL BACKGROUND**

As the Court has previously considered a motion in this case, a complete rendition of the facts is unnecessary at this time; such an account can be found in the Court's Order of April 25, 2008. Plaintiffs are seven registered longshoremen at the port of San Francisco-Oakland who have sought transfer under their labor contract to the port of Los Angeles-Long

United States District Court

For the Northern District of California

1   Beach.  They claim that Defendants PMA, ILWU, and ILWU Local 13 have blocked their

2   transfer, in violation of their right to equal treatment under federal labor laws and in breach

3   of the collective bargaining agreement.

4        The employment of longshoremen in California is governed by a coast-wide collective

5   bargaining agreement, the "Pacific Coast Longshore Contract Document" or "PCLCD,"

6   (itself part of a broader agreement, the "Pacific Coast Longshore and Clerks Agreement").

7   The employer shipping, stevedoring, and marine terminal companies are represented by

8   defendant PMA.  The employee longshoremen are represented by Defendant ILWU; ILWU

9   Local 10 represents workers in the Port of San Francisco, and Defendant Local 13 represents

10  workers in the Port of Los Angeles-Long Beach.

11       Plaintiffs allege that ILWU Local 13 has "continuously rebuffed transfer inquiries"

12  from them and blocked their right to transfer.  Third Amended Compl. ("TAC") ¶ 37.  They

13  contend they were denied the right to transfer despite the shortage of longshoremen in the

14  Southern California ports because new registrations "were parceled out on the basis of

15  favoritism or nepotism or for monetary consideration to friends, relatives or other

16  acquaintances of individual officers or former officers of Local 13 ."  TAC ¶ 35.  Plaintiffs

17  allege that "PMA has acquiesced in Local 13's and the International Union's denial of

18  Plaintiffs' rights."  TAC ¶ 55.

19       Plaintiffs filed their complaint in this suit on January 7, 2008.  The third amended

20  complaint asserts four causes of action: breach of collective bargaining agreement in

21  violation of the Labor Management Relations Act, against all Defendants; violation of the

22  Labor-Management Reporting and Disclosure Act, against all Defendants; violation of

23  California public policy–arbitrary exclusion from employment, against Local 13; and

24  injunctive remedy to preserve seniority rights, against all Defendants.  On September 2,

25  2008, the parties engaged in an unsuccessful mediation before Judge Edward A. Infante.

26  Plaintiffs and PMA continued settlement negotiations after that time, and informed the

27  Unions of this fact.  Turman Decl. ¶ 4.  PMA and Plaintiffs entered into a Settlement

28  Agreement and Release of Claims on May 1, 2009.  Among other things, the Settlement

United States District Court

For the Northern District of California

1  Agreement provides for dismissal with prejudice of the claims brought against PMA in

2  exchange for a payment of $25,000, a declaration from PMA's corporate witness designee

3  regarding PMA's interpretation of the transfer rule, a promise that PMA shall recognize

4  injunctive or declaratory relief in this matter, and that PMA will accept service of trial

5  subpoenas.  PMA filed the instant motion on May 29, 2009, seeking a good-faith

6  determination of the settlement from this Court and barring claims for contribution and/or

7  indemnification from the non-settling Defendants in this matter.  PMA additionally seeks a

8  bar on claims for contribution and indemnification from the non-settling Defendants on

9  claims related to the reciprocity agreement in any future litigation.  Also pending before the

10  Court is the motion for summary judgment of the non-settling Union Defendants.

11

12  **LEGAL STANDARD**

13      Under California statute, a court may discharge a settling party from future liability in a

14  case "in which it is alleged that two or more parties are joint tortfeasors or co-obligors on a

15  contract debt" based on "a hearing on the issue of the good faith" of the settlement.  Cal.

16  Code Civ. Pro. § 877.6(a)(1).  "A determination by the court that the settlement was made in

17  good faith shall bar any other joint tortfeasor or co-obligor from any further claims against

18  the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or

19  comparative indemnity, based on comparative negligence or comparative fault."  Cal. Code

20  Civ. Pro. § 877.6(c).

21      In considering this statute, the California Supreme Court has held that courts should

22  consider

23      a rough approximation of plaintiffs' total recovery and the settlor's proportionate
        liability, the amount paid in settlement, the allocation of settlement proceeds
24      among plaintiffs, and a recognition that a settlor should pay less in settlement than
        he would if he were found liable after a trial.  Other relevant considerations include
25      the financial conditions and insurance policy limits of settling defendants, as well
        as the existence of collusion, fraud, or tortious conduct aimed to injure the interests
26      of nonsettling defendants.  Finally, practical considerations obviously require that
        the evaluation be made on the basis of information available at the time of
27      settlement.  [A] defendant's settlement figure must not be grossly disproportionate
        to what a reasonable person, at the time of the settlement, would estimate the
28      settling defendant's liability to be.  The party asserting the lack of good faith, who

3

**United States District Court**

For the Northern District of California

1  has the burden of proof on that issue (§ 877.6, subd. (d)), should be permitted to demonstrate, if he can, that the settlement is so far "out of the ballpark" in relation
2  to these factors as to be inconsistent with the equitable objectives of the statute.

3  *Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal. 3d 488, 499-500 (1985) (internal

4  citation and quotation marks omitted).

5  Although the federal courts lack a comparable statute for determinations regarding the

6  propriety of discharging parties based on a partial settlement, the Supreme Court has

7  considered this question and held that it is generally a matter to be determined under federal

8  common law. *See McDermott, Inc. v. AmClyde*, 511 U.S. 202, 207-08 (1994) (holding in

9  admiralty).

10

11  **ANALYSIS**

12  PMA refers both to federal and state law in its motion, seeking the Court's approval of

13  its settlement pursuant to both standards. As a matter of state law, PMA relies on the *Tech-*

14  *Bilt* factors. Under federal law, PMA looks to the rule adopted in the federal courts

15  regarding good-faith settlement approval in class action suits, which requires the courts to

16  consider factors held very similar to those in *Tech-Bilt*:

17  (1) The possible uncollectibility of any larger trial judgment that might be entered against the settling defendants;
18  (2) The adequacy of the settlement amount in light of any uncertainties surrounding the settling defendants' liability;
19  (3) The adequacy of the settlement amount in light of the comparative culpability of the settling defendants; and
20  (4) The participation of a magistrate or judge in the settlement negotiations.

21  *Kirkorian v. Borelli* , 695 F. Supp. 446, 453 (N.D. Cal. 1988).

22  The Unions' opposition to this motion is based solely on state law, and focuses entirely

23  on the issue of collusion. The Unions have therefore conceded the issue of federal law, and

24  the Court need not determine whether the proper standard here is one at federal common law

25  or that recited by the PMA in its motion. As the Ninth Circuit has, in a similar case, confined

26  its analysis of the settlement bar rule to state law where the parties referred only to California

27  law before the trial court, and declined to extend its consideration to the proper federal

28  common law standard to apply, it is appropriate for this Court to do the same. *See Federal*

4

1   *Sav. & Loan Ins. Corp. v. Butler*, 904 F.2d 505, 509, 511 (9th Cir. 1990) (noting that where

2   the motion was brought under California law and the nonsettling defendants opposed based

3   on California law, reliance on California law is appropriate, and observing as well that an

4   early good faith determination "makes eminent good sense").

5       Under California law, on a motion seeking good-faith approval of a settlement and a

6   contribution bar, the burden is on the party asserting the lack of good faith to demonstrate its

7   absence.  Here, PMA has made a preliminary showing that the Plaintiffs' allegations against

8   PMA were minimal, that PMA's liability was uncertain, and that the settlement amount is

9   fair based on PMA's comparative culpability.  The PMA also indicates that settlement

10  negotiations were open to all parties, and that the Unions were on notice that Plaintiffs and

11  PMA continued settlement negotiations following the formal mediation.  Turman Decl. ¶ 4.

12  Beyond these factors that are consistent with *Tech-Bilt*, the Court further notes that the

13  settlement figure does not appear to "be grossly disproportionate to what a reasonable

14  person, at the time of the settlement, would estimate the settling defendant's liability to be."

15  *Tech-Bilt*, 38 Cal. 3d at 499.

16      However, the Unions oppose the motion for settlement approval and a bar on

17  contribution, and therefore bear the burden under California law.  Relying on *Tech-Bilt*, the

18  Unions only argue that the settlement is collusive between Plaintiffs and PMA; the Union

19  Defendants do not otherwise dispute the good-faith nature of the settlement.  The Union

20  Defendants assert collusion by arguing that the settlement "is being used by PMA to avoid a

21  longstanding, written, contractual agreement with the ILWU that it no longer wishes to

22  honor."  Unions' Opp. at 2.  As proof of this collusion, the Union Defendants argue that

23  PMA's settlement reflects a false interpretation of the reciprocity rule that operated between

24  the parties, a mistaken assertion that the reciprocity rule is a purely Union rule, and the

25  repudiation of a mutual provision of the CBA.  The Union Defendants point to minutes from

26  a 1983 meeting that they assert demonstrate a shared understanding of the mutual transfer

27  policy.  However, the Union Defendants offer no authority for how these allegations are

28  indicative of collusion.  Finally, the Unions suggest that to determine the good faith of the

**United States District Court**
For the Northern District of California

5

1    settlement, the Court "must evaluate whether PMA's position in this litigation is consistent

2    with the historical facts upon which the liability of PMA, the ILWU and/or Local 13 could be

3    determined, Yet the Unions offer no authority for this articulation of the Court's current task.

4         The Union Defendants have failed to discharge their burden on this matter.  Their

5    argument amounts to bare assertions of collusion without facts or evidence that would

6    support such a claim.  Such assertions are inadequate to prevail on this motion.  The Court

7    observes that the Defendants' possessing mere differing positions on the meaning and import

8    of the reciprocity policy does not evidence collusion; different defendants may assert

9    different interests and possess factual disputes in litigation without the presence of collusion.

10   Rather, public policy favors Courts' encouragement of settlements, whether complete or

11   partial.  *See Neverkovec v. Fredericks*, 74 Cal. App. 4th 337, 345 n.4 (1999) ("The courts

12   have striven to apply the [joint tortfeasors] statute to accommodate the goals of equitable

13   sharing among tortfeasors and encouragement of settlement.").  PMA's explanation of its

14   conclusion that further litigation did not serve its interests is persuasive in the absence of

15   evidence demonstrating collusion or a lack of good faith.  *See* PMA's Mot. at 8 ("For its own

16   good faith, non-collusive reasons, PMA made a business decision that it was time to stop

17   litigating the case.  PMA's settlement with the Plaintiffs does not admit any liability or

18   wrongdoing on the part of any defendant, settling or non-settling.").  Cognizant of the

19   considerable costs associated with federal litigation, the Court finds this claim plausible.

20   Accordingly, in the absence of proof of collusion, the Court finds that PMA and the Plaintiffs

21   reached the settlement in good faith.

22        PMA further seeks a bar on contribution or indemnification in "the event [of] *future*

23   suits [] brought against the Unions by other longshore workers regarding the reciprocal

24   transfer policy."  PMA's Mot. at 15 (emphasis in the original).  The Unions claim that this

25   too is evidence of collusion, but make no argument about how such a request for remedy

26   demonstrates collusive behavior.  Whereas the strong public policy encouraging settlement

27   persuades the Court of the solid rationale of approving the instant settlement and barring the

28   Unions from seeking contribution or indemnification from PMA as to the suits of the Ayala

United States District Court
For the Northern District of California

6

United States District Court

For the Northern District of California

1  Plaintiffs, PMA fails to justify its claim that the Court should extend the bar to future suits as

2  well.  Whereas a bar on indemnification and contribution here encourages settlement

3  between PMA and the Plaintiffs, a bar on future indemnification accomplishes no purpose

4  among the instant parties.  Rather, it asks the Court to sign away the claims of future litigants

5  as against PMA.  The case on which the PMA relies, *United States v. International*

6  *Brotherhood. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO*,

7  907 F.2d 277, 281 (2nd Cir. 1990), holds that a "district judge can legitimately assert

8  comprehensive control over" a case, including by enjoining non-parties, in order to

9  "effectuate and prevent the frustration of" the orders of the court.  Even if this case were

10  controlling on this Court, which it is not, the PMA has presented no argument regarding how

11  the failure to enjoin future contribution or indemnification will effectuate and prevent the

12  frustration of the orders of this Court.  Accordingly, the Court declines to exercise its

13  authority over the allocation of damages claims in future litigation against these Defendants.

14  The holding in this case is thus restricted to the claims of Plaintiffs Ayala, Whitten, Phillips,

15  Torres, Linarez, Stafford, and Lawton, and only bars the non-settling Union Defendants from

16  seeking contribution and/or indemnification from PMA in this lawsuit.

17

18  **CONCLUSION**

19      For the reasons set forth above, PMA's Motion for Good Faith Settlement

20  Determination and Order Barring Claims for Contribution and Indemnification is GRANTED

21  IN PART and DENIED IN PART.  As to this case, the Court finds that the settlement

22  between Plaintiffs and PMA was reached in good faith.  Accordingly, the non-settling Union

23  Defendants are precluded from bringing claims for contribution or indemnification against

24  PMA, and PMA's Motion is GRANTED.  However, to the extent that PMA seeks an order

25  barring claims for contribution or indemnification by the non-settling Defendants against

26  PMA in the case of future litigation, PMA's Motion is DENIED.  The hearing currently

27  scheduled for July 6, 2009 on this motion is VACATED.  In light of the vacation of the

28

1   hearing, the requests of Local 13 and Plaintiffs to appear telephonically at the July 6 hearing

2   are moot.

3

4   **IT IS SO ORDERED.**

5   Dated: July 1, 2009

6   THELTON E. HENDERSON, JUDGE
    UNITED STATES DISTRICT COURT

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

8