IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOSE AYALA, et al.,

                Plaintiffs,

     v.

PACIFIC MARITIME ASSOCIATION, et al.,

                Defendants.

NO. C08-0119 TEH

ORDER DENYING AWARD OF COSTS

      This matter came before the Court on December 5, 2011, on Plaintiffs' motion for retaxation of costs. For the reasons discussed below, the Court hereby DENIES an award of costs in this matter.

**BACKGROUND**

      Plaintiffs are registered longshoremen at the port of San Francisco-Oakland, who have sought transfer under their labor contract to the port of Los Angeles-Long Beach. They claimed that defendants International Longshore and Warehouse Union ("ILWU") and ILWU Local 13 ("Local 13") have blocked their transfer, in violation of their right to equal treatment under federal labor laws and in breach of the collective bargaining agreement.

      Following a bench trial held on 10/27/2010, this Court held that Plaintiffs had failed to show that Defendants had violated the collective bargaining agreement or breached their duty of fair representation, and therefore failed to meet their burden. The court entered judgement in favor of the Defendants on 7/26/2010.

      Following the judgment, bills of costs were filed by Defendants ILWU and Local 13, and the taxation of costs was completed on 10/21/2011, establishing costs in the amount of $21,610.65 for Local 13 and $18,161.96 for ILWU, for a total amount of $39,772.61.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 54(d)(1) provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." "By its terms, the rule creates a presumption in favor of awarding costs to a prevailing party, but vests in the district court discretion to refuse to award costs." *Association of Mexican–American Educators v. State of California*, 231 F.3d 572, 591 (9th Cir. 2000).

The presumption is not rigid. *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 284 (1946). In order to overcome the presumption, a losing party must show that to award costs to the prevailing party would be unjust. *Key v. Chrysler Motors Co.*, 128 N.M. 739, 741 (2000). Though broad, the Court's "discretion is not unlimited. A district court must 'specify reasons' for its refusal to award costs." *Mexican-American Educators*, 231 F.3d at 591.

In the Ninth Circuit, there are several factors which may justify denial of costs: "(1) the losing party's limited financial resources; (2) misconduct on the part of the prevailing party; (3) the chilling effect of imposing such high costs on future civil rights litigants; (4) whether the issues in the case were close and difficult; (5) whether the prevailing party's recovery was nominal or partial; (6) whether the losing party litigated in good faith; and (7) whether the case presented a landmark issue of national importance." *Van Horn v. Dhillon*, 2011 WL 66244 at *3 (E.D.Cal., 2011); *see also Quan v. Computer Sciences Corp.*, 623 F.3d 870, 888-89 (9th Cir.2010) (citing *Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir.2003)); *Mexican-American Educators*, 231 F.3d at 592. A finding of misconduct on the part of the prevailing party is not required to deny an award of costs. *Mexican-American Educators*, 231 F.3d at 592. These factors do not limit the reasons why a court may find justice requires denial of costs–the Ninth Circuit, in listing these reasons for denial, did not intend the list to be exhaustive. *Mexican-American Educators,* 231 F.3d at 593.

## DISCUSSION

Of the factors enumerated above, some may immediately be eliminated as inapplicable: a nominal or partial recovery, for example, is not at issue here, nor has misconduct by the prevailing party been an issue in this case. The remaining factors may be divided into three rough categories of inquiry: financial status of the parties, character and qualities of the litigation, and the potential chilling effect.

*1. Financial Factors*

The Plaintiffs argue that the limited financial resources of the Plaintiffs and the disparity between the parties' wealth justifies a denial of costs in this case. The Defendants respond by noting the relatively high income of the Plaintiffs in arguing that Plaintiffs' resources are not so mean as to justify denial of costs, and, furthermore, that the apparent disparity between the parties' wealth is lessened by the not-for-profit and dues-based nature of the Defendant unions.

There is a significant disparity between the financial resources of the individual Plaintiffs and the Defendant unions: the unions have far greater resources than the individuals in this case. However, disparity alone is insufficient to overcome the presumption in favor of awarding costs:

> disparity of wealth between the parties, without additional evidence of the losing party's inability to pay or bad faith of the prevailing party, is not enough to justify a reduction in the cost award. *Cafeteria Operators, L.P. v. Coronado-Santa Fe Assocs.*, 1998-NMCA-005, ¶ 37, 124 N.M. 440, 952 P.2d 435 (upholding the trial court's decision that both parties bear their own costs because the trial court articulated several reasons unrelated to the wealth of the parties). The Court of Appeals, in *Cafeteria Operators*, stated, and this Court agrees, "that a party should not be denied an award of costs simply because it can 'afford to swallow' the expense." *Id.*

*Key v. Chrysler Motors Co.*, 128 N.M. 739, 743 (2000).

In determining whether the financial resources of a plaintiff are so limited as to justify denying costs, "[t]here are no hard and fast rules for assessing a losing party's indigency or inability to pay; district courts should use their common sense in making this determination." *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 463-64 (3rd Cir.2000). "It is not necessary to find that the plaintiffs in question are currently indigent; rather, the proper inquiry is whether

3

an award of costs might make them so." *Rivera v. NIBCO*, 701 F.Supp.2d 1135, 1143 (E.D.Cal., 2010). Whether the financial resources in question are "of a level sufficient to deny an award of costs can be inferred from the economic circumstances of the plaintiff." *Mansourian v. Bd. of Regents of the Univ. Of Cal. at Davis*, 566 F.Supp.2d 1168, 1171 (E.D.Cal.2008).

Costs have been denied on the basis of financial inability in cases where plaintiffs are unemployed (*see, e.g. Stanley v. University of Southern California*, 178 F.3d 1069 (9th Cir. 1999), overturning an award of costs and remanding to the district court to consider plaintiff's unemployment and present indigent status), sporadically employed and low-income (*Van Horn v. Dhillon*, 2011 WL 66244 at *4 (E.D.Cal. Jan. 10, 2011), finding that plaintiff would be considered indigent on the basis of her earning and employment, but was nevertheless able to pay due to having received a large settlement), earning under $25,000 per year (*Rivera*, 701 F.Supp.2d at 1143) or students and recent graduates with significant student debt and little income (*Mansourian*, 566 F.Supp.2d at 1171).

In the present case, the Plaintiffs have submitted declarations detailing their income, expenses, assets and debt, which disclose annual income of between $84,000 and $156,000 per year. Though their own attorneys' fees may be substantial, on the basis of their present financial resources, they are not unable to pay, nor would they be made indigent by an award of costs. There is, therefore, no financial reason why costs should not be awarded in this case.

*2. Character And Qualities Of The Litigation*

There are three factors which relate to the character and qualities of the litigation recognized by the Ninth Circuit as justifying a denial of costs: whether the claims were meritorious and the suit brought in good faith, whether the issues involved in the case were close or difficult, and whether the litigation itself was of particular importance.

With regards to the first, there has been no indication that the suit was not brought in good faith. The claims in this case may have been ultimately unsuccessful, but they were not without merit: the facts alleged by the Plaintiffs were sufficient to state the claims brought,

and, after a six-day-long bench trial, the claims failed due to Plaintiffs' failure to present evidence sufficient to meet their burden, not due to their claims having been unfounded.[1] The suit was clearly brought in good faith, as indicated by how the matter was pursued by both parties, and the Plaintiffs made meritorious, if unsuccessful claims. Their belief that they may have had a successful suit was reasonable.

With regards to the second, determinations of a case's complexity are generally made by looking to the record for indications that the question involved in the case presented some difficulty and involved significant effort to resolve. *See, e.g. Rivera*, 701 F.Supp.2d at 1144, *Dhillon*, 2011 WL 66244 at *5. The instant case spanned over three years and culminated in six days of trial, at which nearly two hundred exhibits were entered, ten witnesses examined, and several months passed before the judgment issued, the Findings Of Fact And Conclusions Of Law spanning 41 pages in all. The copiousness of the record emphatically demonstrates the closeness and difficulty of the issues involved, which required a great deal of effort and time to resolve.

With regards to the third, a case is considered to be of great importance when the claims involved are subject to closer scrutiny or special interest by the court, or the issues raised in the litigation have ramifications beyond the parties and concerns immediately involved in the litigation. *See Mexican-American Educators*, 231 F.3d at 593 (requiring CBEST testing to teach in California was an issue of "the gravest public importance"); *Stanley,* 178 F.3d at 1080 (an employment discrimination case brought by an individual under the Equal Pay Act raised "important issues and that the answers were far from obvious"); *Rivera*, 701 F.Supp.2d at 1141-42 (employees terminated after failing tests administered only in English raised claims involving "language-based discrimination" which "is often closely aligned with national origin discrimination, and has been recognized as being worthy of close scrutiny by the courts" and therefore, "although ultimately

---

[1] Indeed, many of the claims may have been successful had they been more rigorously supported at trial–nothing indicates that the evidence was nonexistent or even unavailable to the Plaintiffs, and those fatal shortcomings noted by the Court in its judgment were not due to the claims having been unfounded, merely overlooked.

5

unsuccessful, were of substantial public importance."; *Washburn v. Fagan*, 2008 WL 361048 at *2 (N.D.Cal. Feb.11, 2008) (civil rights claims against the San Francisco police department raised "important issues" and produced "great public concern for the issues underlying Defendants' behavior").

Here, the claims raised by the Plaintiffs involve the duty of a labor union to fairly represent its members and adhere to the terms of a collective bargaining agreement. Specifically, the Plaintiffs claimed that favoritism and failure to respond to member requests constituted a breach of the agreement, and, more importantly for the purposes of the present inquiry, that arbitrary, discriminatory, bad-faith decision-making and conduct on the part of the union breached the duty of fair representation owed by labor organizations to their members. This duty is not specific to the individual unions involved in this case, but is

> a judicially established rule imposed on labor organizations because of their status as the exclusive bargaining representative for all the employees in a given bargaining unit. The duty of fair representation exists because a single labor organization represents the interests of all employees within a unit, and if individual employees are not to be deprived of all effective means of protecting their own interests, it must be the duty of the representative organization to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. The burden of proving a breach of the duty of fair representation is on the plaintiff.

*Beck v. UFCW, Local 99*, 506 F.3d 874, 878-79 (quotations and citations omitted).

The universality of the duty of fair representation gives the issues raised in the instant case the potential to have an impact well beyond the seven individual plaintiffs, and even beyond the members of the unions involved–this is an issue of national importance, capable of impacting labor unions and their members nationwide. Not only is the potential impact of the case significant, the relationship involved is of special import–labor organizations are uniquely empowered to impact the lives of their members, and the exclusivity and high-stakes nature of the concerns involved underscores the import of the issues arising in this context. This is, in short, a case of great importance raising issues of significant public concern.

6

*3. Potential Chilling*

Where an award of costs could "lead to a harsh result that could chill...litigants from vindicating important rights" a denial of costs is appropriate. *Mansourian*, 566 F.Supp.2d at 1171–72.[2]

Relatively small awards have been found not to bear sufficient potential for chilling to justify denying costs. *See Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir.2003) ($5,310.55); *Estate of Le Blanc v. City of Lindsay*, 2007 WL 2900515, at *3 (E.D.Cal. Sept. 28, 2007) ($8,460.21); *Sorgen v. City of San Francisco*, 2007 WL 521235, at *3–4 (N.D.Cal. Feb. 15, 2007) ($4,987); *Ardalan v. Monterey Institute of Int'l Studies*, 2004 WL 2047593, at *3–4 (N.D.Cal. Sept. 14, 2004) ($2,838.35).

Where the costs are larger, however, the potential chilling effect has been considered substantial enough to justify denying an award of costs. *See Mexican–American Educators*, 231 F.3d at 591 ($216,443.67); *Bowoto v. Chevron Corp.*, 2009 WL 1081096, at *2 (N.D.Cal. Apr. 22, 2009) ($485,159.49); *Washburn*, 2008 WL 361048, at *2 ($16,268.71).

Plaintiffs argue that an award of costs in this case could serve to discourage workers from bringing suit against their unions, even where they may have important, meritorious claims, due to the fear of having to pay costs, should their suit prove unsuccessful. Given the amount of the award in question, which is well above the award denied in *Washburn* (and

---

[2]Though this factor has traditionally been invoked in civil rights cases, it is very much intertwined with the import of the case, and the two factors are often intertwined. *See, e.g. Stanley,* 178 F.3d at 1080. The civil rights context is special in that the claims and issues involved are almost without exception of great import, as they involve violation of fundamental rights and often raise concerns relating to the mistreatment of one or several groups, and therefore necessarily have the potential for greater impact and are of elevated public concern. The consideration of a potential chilling effect is intended to ensure that important litigation is not at risk of being discouraged or impaired by potential plaintiffs' fear of costs should their suit prove unsuccessful. For those cases outside the civil rights arena but nonetheless having great importance, the capacity for broader impact and of public concern, there is no reason why chilling ought not be considered as a factor in the Court's decision regarding costs. This is a case in which the chilling factor is applicable, as it raises the same concerns traditionally involved in a civil rights case. Those concerns being present here, this factor is appropriate for the Court's consideration.

7

1  close to the costs denied in *Rivera*[3] in terms of the portion of costs each plaintiff could
2  potentially bear), the potential to discourage future litigants from seeking to protect important
3  rights should not be overlooked.

**CONCLUSION**

This is a case brought in good faith, with meritorious claims that involved close, difficult issues. The importance of these issues is substantial. Awarding the costs sought by Defendants in this case would discourage union members from seeking to protect important rights by bringing suit against their labor union. This combination of factors is a sufficient basis for denying costs. *Mexican–American Educators*, 231 F.3d at 592. The award of costs sought by Defendants is therefore DENIED.

**IT IS SO ORDERED.**

Dated: 12/14/2011

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

---

[3] In *Rivera*, the costs totaled $84,434.40, but, divided among 23 plaintiffs, came to $3,671.06 for each. Here, the total cost of $39,772.61 would come to $3,571.43 for each of the seven Plaintiffs.

8